CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

Chlopak, Leonard, Schechter & Associates, Inc.
1850 K Street, N, Suite 5??
Washington, DC 20036

**05-0009199**

*Plaintiff*

vs.

Civil Action No. _____

Daniel G. Hill
4141 N. Henderson Road, #218
Arlington, VA 22203

*Defendant*

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W. between 9:00 a.m. and 4:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Gregory B. Craig
_____
Name of Plaintiff's Attorney
Williams & Connolly, LLP          By _____
725 Twelfth Street, NW                  (Deputy Clerk)
_____
Address
Washington, DC 20005

202-434-5000                      Date _____
_____
Telephone

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98          NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1161) or the Neighborhood Legal Services (682-2700) for help or.come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

Chlopak, Leonard, Schechter & Associates, Inc.
1050 K Street, NW, Suite 550
Washington, DC 20036

*Plaintiff*

05-0009193

vs.                                                      Civil Action No. _____

AgustaWestland, Inc.
2231 Crystal Drive, Suite 1114
Arlington, VA 22202

*Defendant*

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W. between 9:00 a.m. and 4:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Gregory B. Craig
**Name of Plaintiff's Attorney**

Williams & Connolly LLP                              By _____

725 Twelfth Street, NW
**Address**                                          Deputy Clerk

Washington, DC 20005

202-434-5000                                         **Date** _____
**Telephone**

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPAÑOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM170

Form CV(6)-456/Mar.'98          **NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.**

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

CHLOPAK, LEONARD, SCHECHTER & ASSOCIATES, INC.

    Vs.

AGUSTAWESTLAND INC.

C.A. No.     2005 CA 009199 B

## INITIAL ORDER

    Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

    (1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

    (2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

    (3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive reading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

    (4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge as an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

    (5) Upon advice that the date noted below is inconvenient for any party or counsel, the Civil Assignment Office (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

                                   Chief Judge Rufus G. King, III

Case Assigned to: Judge ANNA BLACKBURNE-RIGSBY
Date:  November 28, 2005
Initial Conference: 9:30 am, Friday, March 03, 2006
Location:  Courtroom B-52
          409 E Street, NW
          WASHINGTON, DC 20001

Caio.doc

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### Civil Division

|  |  |  |
|---|---|---|
| CHLOPAK, LEONARD, SCHECHTER AND ASSOCIATES, INC. 1850 M Street, NW Suite 550 Washington, DC 20036, | ) ) ) ) ) ) ) |  |
| Plaintiff | ) ) | Civil Action No._____ |
| v. | ) ) |  |
| AGUSTAWESTLAND INC. 2231 Crystal Drive Suite 1114 Arlington, VA 22202, | ) ) ) ) ) |  |
| DANIEL G. HILL 4141 N. Henderson Road # 219 Arlington, VA 22203 | ) ) ) ) ) |  |
| Defendants. | ) ) |  |

### RULE 7.1(a) DISCLOSURE STATEMENT OF PLAINTIFF

Pursuant to Rule 7.1 (a) of the District of Columbia Superior Court Rules of Civil Procedure, Plaintiff Chlopak, Leonard, Schechter and Associates, Inc. hereby represents that it is a nongovernmental corporate party, and that it is wholly owned by Gavin Anderson & Company Worldwide, Inc., a corporation that is wholly owned by Omnicom, Inc. No publicly held corporation owns ten percent or more of the stock of Omnicom, Inc.

LAW OFFICES
ILLIAMS & CONNOLLY LLP
25 TWELFTH STREET, N.W.
WASHINGTON, D.C. 20005

AREA CODE 202
434·5000

Respectfully submitted,

Gregory B. Craig (D.C. Bar #164640)

WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029

Attorney for Plaintiff, Chlopak, Leonard, Schechter and
Associates, Inc.

**SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

CHLOPAK, LEONARD,        )
SCHECHTER AND ASSOCIATES,    )
INC.                )
1850 M Street, NW        )
Suite 550            )
Washington, DC 20036,        )
                )
        Plaintiff        )
                )
    v.            )
                )
AGUSTAWESTLAND INC.        )
2231 Crystal Drive        )
Suite 1114            )
Arlington, VA 22202,        )
                )
DANIEL G. HILL            )
4141 N. Henderson Road        )
# 219            )
Arlington, VA 22203        )
                )
        Defendants.        )
                )

RECEIVED
Civil Clerk's Office

NOV 2 8 2005

Superior Court of the
District of Columbia
Washington, D.C.

05-0009193

Civil Action No._____
(Jury Trial Demanded)

LAW OFFICES
ILLIAMS & CONNOLLY LLP
25 TWELFTH STREET, N.W.
WASHINGTON, D.C. 20005

AREA CODE 202
434-5000

## COMPLAINT FOR DAMAGES

1.    Chlopak, Leonard, Schechter and Associates, Inc. ("CLS") brings this civil

action for breach of contract, tortious interference with a contract, and civil

conspiracy against its former client, AgustaWestland Inc. ("Agusta"), and its former

employee, Daniel G. Hill ("Mr. Hill").

2.    This action arises out of Mr. Hill's departure from his employment at CLS

and his subsequent employment at Agusta.

3.     By employing Mr. Hill, Agusta has breached the anti-poaching covenant of its February 12, 2004 Agreement with CLS.

4.     By working as an employee for Agusta, Mr. Hill is in violation of the Non-Disclosure and Non-Competition Agreement executed by Mr. Hill on April 1, 2002 in favor of CLS.

5.     By inducing Mr. Hill to breach the non-competition covenant of his agreement with CLS, Agusta has tortiously interfered with the agreement between Mr. Hill and CLS.

6.     By inducing Agusta to breach the anti-poaching covenant of its agreement with CLS, Mr. Hill has tortiously interfered with the agreement between Agusta and CLS.

7.     By conspiring to enter into a prohibited employer-employee relationship with knowledge that each party was subject to a restrictive agreement with CLS, Mr. Hill and Agusta engaged in a civil conspiracy.

## THE PARTIES

8.     Plaintiff CLS is a corporation organized under the laws of the District of Columbia with its principal place of business in the District of Columbia.  CLS is in the business of performing communications and marketing services including public relations, advertising, public affairs issue management, research and lobbying on behalf of its clients.

9.     Defendant Agusta is a corporation organized under the laws of the State of Delaware with its principal place of business in the Commonwealth of Virginia.

2

Agusta is in the business of designing, manufacturing and marketing helicopters, and is a former client of CLS.

10.    Defendant Mr. Hill is a resident and citizen of the Commonwealth of Virginia and a former employee of CLS.  Mr. Hill is currently employed at Agusta.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over the defendants pursuant to D.C. Code Ann. § 13-423 in that each of plaintiff's causes of action arises from defendants' transaction of business in this jurisdiction, defendants caused the tortious acts alleged herein in this jurisdiction, and defendants regularly do or solicit business and derive substantial revenue from services rendered in the District of Columbia.

## FACTS

12.    CLS is in the business of performing communications and marketing services including public relations, advertising, public affairs issue management, research and lobbying on behalf of its clients.

13.    In an effort to protect its own trade secrets and proprietary business methods as well as its clients' confidences, CLS requires its employees to execute a Non-Disclosure and Non-Competition Agreement (the "Agreement"), barring them from disclosing or making available any confidential and proprietary information made known to them during the course of their employment.

14.    The Agreement further bars employees from soliciting or handling "the event marketing, public relations, advertising, sales promotion, market research or

government relations business" of any current CLS client or former CLS client who had been a client during the twelve months prior to the employee's termination.

15.    In a further effort to protect its clients and itself, CLS enters into contracts with its clients that prohibit the client from employing or offering employment to a CLS employee. This prohibition extends twelve months after the end of an employee's affiliation with CLS, and for twelve months after a client has terminated its contract with CLS.

16.    Mr. Hill became an employee of CLS on April 1, 2002.

17.    On April 1, 2002, Mr. Hill executed a Non-Disclosure and Non-Competition Agreement (the "Hill Agreement") with CLS. (A copy of the agreement between Mr. Hill and CLS is attached hereto as Exhibit A.)

18.    The Hill Agreement provides that for a period of twelve months from the date of his termination, Mr. Hill shall not "solicit or handle . . . on behalf of any other person, firm or corporation, the event marketing, public relations, advertising, sales promotion, market research or government relations business of any person or entity which is a client of [CLS] or has been a client of [CLS] during the twelve (12) month period prior to the date of the termination of employment with [CLS]." Exhibit A, ¶ 2.

19.    The Hill Agreement provides that CLS will be irreparably harmed should Mr. Hill violate either the covenant not to compete or the non-disclosure covenant, and that in the case of a breach or attempted breach, "a remedy at law for any breach or attempted breach of [the Agreement] will be inadequate, and [Mr. Hill agrees] that

[CLS] shall be entitled to exercise all remedies available to it, including specific

performance and injunctive and other equitable relief." Exhibit A, ¶ 4.

20.    Agusta became a client of CLS in February, 2004.

21.    On February 13, 2004, Agusta entered into an Agreement (the "Agusta

Agreement") with CLS to provide the terms of their business relationship. (A copy

of the Agusta Agreement is attached as Exhibit B.)

22.    The Agusta Agreement provides that Agusta will not "offer employment to, or

employ, a CLS employee for its own or another's benefit . . . either while the

employee is employed by CLS, or for a period of one year after the employee ceases

to be employed by CLS." Exhibit B, ¶ 8.

23.    The Agusta Agreement further provides that, should CLS or Agusta hire an

employee of the other as prohibited by the agreement and the above provision be

counter to employment laws, "the employing party agrees to pay the other,

simultaneous with such employment, an amount equal to 1.5 times the employee's

total annual compensation in respect of the prior calendar year." Exhibit B, ¶ 8.

24.    When Agusta became a client, Mr. Hill was assigned to work with Agusta on

behalf of CLS. Using CLS' resources, following CLS' practices and employing CLS'

business methods, Mr. Hill represented Agusta. Having learned the secrets of CLS'

success and benefited from training from and experience working with CLS

personnel, Mr. Hill's departure means that CLS has lost time and effort it invested

in Mr. Hill's training and preparation. Agusta's decision to employ Mr. Hill harms

CLS because (1) CLS has lost an employee – Dan Hill – that CLS has trained and

prepared; and (2) Agusta has access – through Dan Hill -- to CLS' expertise and experience and to CLS' services without having to compensate CLS.

25.    Agusta terminated its business relationship with CLS on March 4, 2005.

26.    Mr. Hill resigned from his position with CLS on March 15, 2005, at which time CLS reminded Mr. Hill of his confidentiality and non-competition obligations under the Hill Agreement in a memorandum.

27.    Based on information and belief, Mr. Hill is now employed at Agusta, knowingly conducting activities that are explicitly prohibited under the terms of the Hill Agreement, including event marketing, public relations, advertising, sales promotion, market research or government relations business for Agusta.

28.    Mr. Hill's employment at Agusta is in direct violation of his obligations under the Hill Agreement, as he is conducting these prohibited activities within twelve months of the date of his resignation from CLS.

29.    Agusta's employment of Mr. Hill is in direct violation of its obligations under the Agusta Agreement, as Agusta knowingly employed Mr. Hill within twelve months of his resignation from his employment at CLS.

30.    CLS has notified both Mr. Hill and Agusta that Mr. Hill's employment by Augusta constituted a breach of both the Hill Agreement and the Agusta Agreement.  Specifically, on September 29, 2005, counsel for CLS sent a letter via certified mail to each of Mr. Hill and Mr. Stephen Moss, the President of Agusta. Each letter notified the recipients of CLS's objections to Mr. Hill's employment with Agusta.

31.    On October 25, 2005, counsel for Agusta and Mr. Hill informed counsel for CLS that Mr. Hill's employment at Agusta would continue.

32.    Agusta and Mr. Hill, based on information and belief, knowingly conspired to breach both the Agusta Agreement and the Hill Agreement by wrongfully arranging for Mr. Hill to become an employee of Agusta, where he would provide Agusta with services that he provided on behalf of CLS when Agusta was a client of CLS.

33.    Agusta offered an employment position to Mr. Hill despite its knowledge that Mr. Hill had a valid and binding agreement with CLS that prohibited him from accepting a position with a client or former client of CLS.  Agusta intentionally and improperly interfered with Mr. Hill's performance of the Hill Agreement, inducing Mr. Hill to fail to perform his obligations contained therein.

34.    On information and belief, Mr. Hill offered his services to Agusta for a significantly lower rate than CLS charged for comparable services in exchange for employment at Agusta, thereby intentionally and improperly interfering with the business relationship between CLS and Agusta.

35.    Mr. Hill accepted an employment position with Agusta despite his knowledge that Augusta had a valid and binding agreement with CLS that prohibited it from employing a current or former employee (whose termination was within the previous twelve months) of CLS.  Mr. Hill intentionally and improperly interfered with Agusta's performance of the Agusta Agreement, inducing Agusta to fail to perform its obligations contained therein.

7

36.     Mr. Hill's knowledge of Agusta's business and unique needs, which he gained during his tenure at CLS, allows him to provide services directly for Agusta that previously were provided by CLS.   Mr. Hill's actions deprived CLS of the economic benefit of its arrangement with Agusta.

37.     In addition, Mr. Hill's employment at Agusta forced CLS to search for a replacement for Mr. Hill's position and engage in the expensive and lengthy process of training that individual.

## COUNT I
### (Breach of Contract – Mr. Hill)

38.     CLS repeats and incorporates by reference the allegations in paragraphs 1 through 37 as if fully set forth herein.

39.     Based on the foregoing allegations, Mr. Hill is in breach of the covenant not to compete and the non-disclosure covenant in the Hill Agreement.

40.     Mr. Hill's employment with Agusta has already damaged CLS, and his continued employment with Agusta will cause further irreparable harm to CLS.

41.     WHEREFORE, as to Count I, CLS prays for judgment against Mr. Hill for (i) liquidated damages as set forth in the Hill Agreement, (ii) reasonable attorneys fees incurred by CLS in seeking and obtaining relief herein, and (iii) any other and further relief this Court may deem just and proper.

## COUNT II
### (Breach of Contract – Agusta)

42.     CLS repeats and incorporates by reference the allegations in paragraphs 1 through 37 as if fully set forth herein.

43.    Based on the foregoing allegations, Agusta is in breach of the covenant not to hire CLS employees in the Agusta Agreement.

44.    Agusta's employment of Mr. Hill has already damaged CLS, and his continued employment by Agusta will cause further irreparable harm to CLS.

45.    WHEREFORE, as to Count II, CLS prays for judgment against Agusta for (i) liquidated damages as set forth in the Agusta Agreement, (ii) reasonable attorneys fees incurred by CLS in seeking and obtaining relief herein, and (iii) any other and further relief this Court may deem just and proper.

## COUNT III
### (Tortious Interference with Contract – Mr. Hill)

46.    CLS repeats and incorporates by reference the allegations in paragraphs 1 through 37 as if fully set forth herein.

47.    Based on the foregoing allegations, Mr. Hill has tortiously interfered with Agusta's performance of its obligations under the Agusta Agreement.

48.    Mr. Hill's actions have resulted in damages to CLS in an amount to be determined at trial.

49.    WHEREFORE, as to Count III, CLS prays for judgment against Mr. Hill for (i) compensatory damages in an amount to be determined at trial, and (ii) any other and further relief this Court may deem just and proper.

## COUNT IV
### (Tortious Interference with Contract – Agusta)

50.    CLS repeats and incorporates by reference the allegations in paragraphs 1 through 37 as if fully set forth herein.

51.    Based on the foregoing allegations, Agusta has tortiously interfered with Mr. Hill's performance of his obligations under the Hill Agreement.

52.    Agusta's actions have resulted in damages to CLS in an amount to be determined at trial.

53.    WHEREFORE, as to Count IV, CLS prays for judgment against Agusta for (i) compensatory damages in an amount to be determined at trial, and (ii) any other and further relief this Court may deem just and proper.

### COUNT V
### (Civil Conspiracy to Breach Each Contract – Mr. Hill and Agusta)

54.    CLS repeats and incorporates by reference the allegations in paragraphs 1 through 37 as if fully set forth herein.

55.    Based on the foregoing allegations, Agusta and Mr. Hill have conspired to and combined to breach the valid and binding restrictive covenants in the Hill Agreement and the Agusta Agreement and deprive CLS of the benefits contained therein.

56.    Mr. Hill's and Agusta's actions have resulted in damages to CLS in an amount to be determined at trial.

57.    WHEREFORE, as to Count V, CLS prays for judgment against Mr. Hill and Agusta for (i) compensatory damages in an amount to be determined at trial, and (ii) any other and further relief this Court may deem just and proper.

### JURY DEMAND

58.    Pursuant to Rule 38(b) of the Superior Court Rules of Civil Procedure, CLS hereby demands a trial by jury on its Complaint for Damages.

Respectfully Submitted,

Dated:  November 28, 2005          WILLIAMS & CONNOLLY LLP

By:  _Gregory B. Craig_

Gregory B. Craig  (D.C. Bar  164640)

725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

Attorney for Plaintiff, Chlopak, Leonard,
Schechter and Associates, Inc.

11

# Exhibit A

# Hill Agreement

**CLS**

CHLOPAK
LEONARD
SCHECHTER
AND
ASSOCIATES

www.clsdc.com

## NON-DISCLOSURE AND NON-COMPETITION AGREEMENT

AGREEMENT dated as of April 1, 2002  between Chlopak, Leonard, Schechter & Associates, Inc., a District of Columbia corporation with its principal office at 1850 M Street, N.W., Suite 550, Washington, D.C.  20037, its successors and assigns (collectively, the "Employer"), and Daniel Hill (the "Employee"), in consideration of the Employee's continuation of employment by the Employer.

1.      **Non-Disclosure of Confidential and Proprietary Information**.  The Employee acknowledges and agrees that his employment will involve exposure and access to highly confidential and sensitive areas of both the Employer's professional service business and the Employer's clients' ("Clients") businesses (collectively, "Confidential and Proprietary Information"), including, without limitation, proprietary information relating to the relationship between the Employer and Client, and their procedures and techniques which are used in the conduct of the Employer and Clients' businesses, intellectual property, costs and prices for providing services, client budgets and needs and other data and information regarding operations, assets, liabilities (absolute and contingent), business plans, personnel, prospects and other information which is known only by, and/or trade secrets proprietary to, the Employer, and Clients, their shareholders and affiliates.

Confidential and Proprietary Information shall not be deemed to include any information that: (i) is in the public domain at the time of the disclosure; or (ii) enters the public domain after the time of disclosure by any means other than breach of this Agreement or any other agreement binding the Employee.

1850 M Street NW  Suite 550  Washington, DC 20036     •     220 East 42nd Street  Suite 408  New York, NY 10017
Phone: (202) 289 5900  Fax: (202) 289 4141                    Phone: (212) 515 1908  Fax: (212) 515 1976

*A Gavin Anderson Company*

CLS

CHLOPAK
LEONARD
SCHECHTER
AND
ASSOCIATES

www.clsdc.com

The Employee shall use his best efforts to protect from disclosure to persons not authorized to receive such information all Confidential and Proprietary Information that comes to the attention of the Employee while employed by the Employer.  The Employee shall not at any time during employment or thereafter, regardless of the reason for which the Employee's employment terminates, disclose or make available directly or indirectly, or use for the benefit of the Employee or any person or entity other than the Employer any Confidential and Proprietary Information which the Employee has knowledge of or access to while employed by the Employer.  However, the Employee shall not be in breach of this Agreement in the event he discloses Confidential and Proprietary Information as required (i) by applicable law, (ii) by compulsory process, or (iii) in order to defend his legal rights, provided, however, that he shall, to the extent lawful and feasible, give prior notice of such anticipated disclosure to the Employer and reasonably cooperate in any effort by the Employer to prevent or limit such disclosure.

2.      **Non-Solicitation**.  Following the termination of Employee's employment for any reason, Employee shall not for a period of twelve (12) months from the date of such termination, (a) solicit any employee of the Employer, to leave such employ to enter the employ of Employee or of any person, firm or corporation with which Employee is then associated or (b) solicit or handle on Employee's own behalf or on behalf of any other person, firm or corporation, the event marketing, public relations, advertising, sales promotion, market research or government relations business of any person or entity which is a client of Employer or has been a client of Employer during the twelve (12) month period prior to the date of the termination of employment with the Employer.

3.      **Enforceability**.  If at the time of enforcement of any provision of this Agreement, a court shall hold that the duration or scope restriction of any provision hereof is

1850 M Street NW  Suite 550  Washington, DC 20036    - 2 -    220 East 42nd Street  Suite 408  New York, NY 10017
Phone: (202) 289 5900  Fax: (202) 289 4141          Phone: (212) 515 1908  Fax: (212) 515 1976

*A Gavin Anderson Company*



CLS

CHLOPAK
LEONARD
SCHECHTER
AND
ASSOCIATES

www.clsdc.com

unreasonable under circumstances now or then existing, the parties hereto agree that the maximum duration or scope reasonable under the circumstances shall be substituted by the court for the stated duration or scope.

4.    **Irreparable Harm**.  Employee acknowledges that any breach by him of the provisions of this Agreement shall cause irreparable harm to the Employer and that a remedy at law for any breach or attempted breach of this Agreement will be inadequate, and agrees that the Employer shall be entitled to exercise all remedies available to it, including specific performance and injunctive and other equitable relief, in the case of any such breach or attempted breach.

Employee represents and warrants that the execution and delivery of this Agreement will neither conflict with, nor result in a breach of, an agreement (including without limitation any employment agreement) to which Employee is a party or by which he may be bound or affected.  Employee further represents and warrants that he has full right, power and authority to enter into and carry out the provisions of this Agreement.

5.    **Waiver of Breach**.  The waiver by the Employer of a breach of any provisions of this Agreement by the Employee shall not operate or be construed as a waiver of any subsequent breach by the Employee.  No waiver shall be valid unless in writing and signed by the Employer.

6.    **Assignment**.  The rights and obligation of the Employer under this Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of the Employer.

1850 M Street NW  Suite 550  Washington, DC 20036    3 - ·    220 East 42nd Street  Suite 408  New York, NY 10017
Phone: (202) 289 5900  Fax: (202) 289 4141                   Phone: (212) 515 1908  Fax: (212) 515 1976

*A Gavin Anderson Company*



7.  **Entire Agreement**. This Agreement contains the entire understanding of the parties relating to the subject matter hereof. It may not be changed orally but only by an agreement in writing signed by both parties.

8.  **Governing Law**. This Agreement has been made under and shall be governed by the Laws of the District of Columbia.

In witness whereof the parties have executed this Agreement as of the date first above written.

EMPLOYEE

By:

Name  Daniel C. Hill

CHLOPAK, LEONARD, SCHECHTER & ASSOCIATES, INC.

By:

Name  Robert D Chlopak

Title:  CEO

1850 M Street NW  Suite 550  Washington, DC 20036   4 - •    220 East 42nd Street  Suite 408  New York, NY 10017
Phone: (202) 289 5900  Fax: (202) 289 4141              Phone: (212) 515 1908  Fax: (212) 515 1976

*A Gavin Anderson Company*

# Exhibit B

# Agusta Agreement



CHLOPAK
LEONARD
SCHECHTER
AND
ASSOCIATES

www.clsdc.com

February 12, 2004

Stephen Moss
President
AgustaWestland Inc.
2231 Crystal Drive
Suite 1114
Arlington, VA 22202

Dear Mr. Moss:

This letter is designed to serve as an agreement between us as we begin working together on your strategic communications issues. We look forward to working with you on this project, and further developing the scope of work to be performed at our meeting on Friday.

This letter sets forth the terms of our 'Agreement':

1.  Effective February 12, 2004 until May 12, 2004, AgustaWestland Inc. (hereafter, AW) will retain the professional services of Chlopak, Leonard, Schechter and Associates, Inc., in partnership with Bairds USA, LLC (hereafter, "CLS") as communications counselors. This contract can be extended beyond May 12, 2004, with a simple letter of agreement amending this contract between the parties.

2.  During the period of this agreement, CLS will work closely with AW to provide strategic advice and counsel, create and produce communications materials as needed, distribute materials to and interface with the media, and provided communication services as directed by the client.

3.  In consideration for the above described services, AW agrees to compensate CLS at a fixed fee of $60,000 per calendar month. Fees for partial months will be prorated accordingly. Fees shall be invoiced and are payable within 30 days

4.  CLS will treat all documents as confidential. In the process of providing to AW the services encompassed by this contract, CLS may receive or may otherwise obtain confidential information, the disclosure of which beyond AW, its authorized agents, and CLS, is not authorized. CLS will not disclose or use any confidential information, in any form, for any purpose except with AW's express, written prior approval. Information that is or becomes available in the public domain through no fault of CLS

1850 M Street NW  Suite 550  Washington, DC 20036     •     220 East 42nd Street  Suite 408  New York, NY 10017
Phone: (202) 289 5900  Fax: (202) 289 4141              Phone: (212) 515 1908  Fax: (212) 515 1976

_A Gavin Anderson Company_

or any of CLS's employees, or is not acquired by CLS or CLS's employees from FPC or from sources known by CLS or CLS's employees to be in breach of a confidentiality agreement with AW, will not be deemed confidential information that is subject to the provisions of this paragraph. This provision will survive beyond the conclusion or termination of this contract.

5. CLS will be entitled to bill all reasonable out-of-pocket expenses each month. Fax service is provided for a fee of $.75 per page and copy service is provided for a fee of $.25 per page. Telephone service is provided at-cost, plus applicable taxes and administrative fees.

6. CLS will bill all collateral material, advertising production, and outsourced services at cost, plus a 17.65% industry standard management fee. CLS shall be entitled to receive a 50% deposit, in advance, for all approved collateral material and production expenses. For advertising placement, CLS will charge a commission based on the standard industry rate of 15%.

7. AW will indemnify and hold harmless CLS, its partners, principals, agents and employees (hereinafter "Indemnified Parties") from and against any losses, damages, claims, liabilities and expenses (including, without limitation, as a result of third party demands, legal proceedings or law suits, or requests or subpoenas served on any Indemnified Party for information, reports, data, or releases), including reasonable attorneys fees and expenses, suffered by Indemnified Parties as a result of the services rendered by Indemnified Parties in the course of this engagement or as a result of Indemnified Party's reasonable use of, or reasonable reliance upon, any information or materials (whether or not in writing) furnished or approved by AW or its specifically authorized representatives for use by any Indemnified Party, whether or not any Indemnified Party prepares or participates in the preparation of such materials, provided however, that this provision shall not apply to any losses suffered by Indemnified Parties that are determined in a final judgment by a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Party seeking indemnification hereunder. This provision shall survive the termination of this agreement and shall continue to bind both parties.

8. AW agrees it will not offer employment to, or employ, a CLS employee for its own or another's benefit, either directly or through affiliates, subsidiaries, agents, sub-contractors or other related parties, either while the employee is employed by CLS, or for a period of one year after the employee ceases to be employed by CLS. This obligation shall remain in effect during the life of this agreement and for one year after the end of this agreement. CLS agrees to be bound by an identical obligation with regard to employees of AW. In the event that this provision may be deemed to be counter to employment laws, and one party to this agreement directly or indirectly employs an employee of the other, the employing party agrees to pay the other, simultaneously with such employment, an amount equal to 1.5 times the employee's total annual compensation in respect of the prior calendar year.

9.  All notices, requests, demands and other communications which are required or may be given under this Agreement shall be in writing and shall be deemed to have duly been given if delivered personally or mailed, first class mail, postage prepaid, return receipt requested, or by any other express delivery technique calling for receipted delivery, as follows:

If to CLS:

Chlopak, Leonard, Schechter and Associates, Inc.
Attn: Robert A. Chlopak
1850 M Street, NW
Suite 550
Washington, DC 20036
(202) 289-5900
Fax: (202) 289-4141

If to AW:

AgustaWestland Inc.
Attn: Stephen Moss
AgustaWestland Inc.
2231 Crystal Drive
Suite 1114
Arlington, VA 22202

(703) 243-0885
Fax: (703) 243-7733

or to such other address as either party shall have specified by notice in writing to the other party. All such notices, requests, demands and communications shall be deemed to have been received on the date of delivery or on the next business day if sent by a nationally recognized overnight courier service.

10. This Agreement constitutes the entire agreement between the parties hereto and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter contained herein.

11. This Agreement shall be governed by, and construed in accordance with, the laws of the District of Columbia.

12. The terms and conditions of this contract may not be altered, changed or amended except by mutual written agreement of AW and CLS or as otherwise expressly provided for in this agreement.

13. This agreement may be terminated without cause by either CLS or AW upon receiving written notification at least 30 days prior to the intended date of termination, providing all fees and expenses have been paid in full through the 30 day termination period. Upon the termination of this Agreement, this Agreement shall cease to have any further effect (except as pertains to the provisions of this Agreement which specifically survive its termination).

Your signature and return to us of an original copy of this letter shall constitute acceptance of the terms defined herein.

Once again, thank you for this opportunity and your confidence in CLS.  We look forward to working with you.

Sincerely,

_____          2-12-04
Robert A. Chlopak                                        Date
President
Chlopak, Leonard, Schechter and
Associates, Inc.

Accepted;

_____          2-13-04
Stephen Moss                                              Date
President
AgustaWestland, Inc.

CC: