## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **CHLOPAK, LEONARD, SCHECHTER AND ASSOCIATES, INC.** | ) ) ) ) | |
| **Plaintiff** | ) ) | **Civil Docket No.: 1:05-cv-02389-GK** |
| **v.** | ) ) | **Judge Gladys Kessler** |
| **AGUSTAWESTLAND, INC., et al.** | ) ) | **Oral Argument Requested** |
| **Defendants.** | ) ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## PLAINTIFF'S MOTION TO DISMISS
## DEFENDANT AGUSTAWESTLAND, INC.'S COUNTERCLAIMS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 1

ARGUMENT ........................................................................................................ 2

I.      AGUSTA FAILS STATE A CLAIM FOR BREACH OF CONTRACT. ...................... 2

II.     COUNTERCLAIMS TWO AND THREE ARE DEFICIENT BECAUSE
        THEY DO NOT SATISFY THE HEIGHTENED PLEADING
        REQUIREMENTS OF RULE 9(B). .................................................................. 5

        A.      The Fee Structure Established in the Agreement Governed the Agusta-
                CLS Relationship. ............................................................................ 5

        B.      Counterclaims Two and Three Fail To Meet the Pleading
                Requirements of Rule 9(b). ............................................................... 7

                1.      Agusta's Claim for Intentional Misrepresentation Fails To
                        Meet the Pleading Requirements of Rule 9(b). .......................... 7

                2.      Agusta's Claim for Unjust Enrichment Fails To Meet the
                        Pleading Requirements of Rule 9(b) with Regard to Claims that
                        Contain Averments of Fraud. ................................................... 9

III.    AGUSTA'S COUNTERCLAIM FOR BREACH OF FIDUCIARY DUTY
        FAILS TO STATE A CLAIM. ...................................................................... 10

CONCLUSION .................................................................................................. 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

Bancoult v. McNamara, 227 F. Supp. 2d 144 (D.D.C. 2002)............................................12

* Brege v. Lakes Shipping Co., 225 F.R.D. 546 (E.D. Mich. 2004) .............................9, 10

Church of Scientology International v. Eli Lilly & Co., 848 F. Supp. 1018
        (D.D.C. 1994) ...........................................................................................11, 12

Grumman Allied Industries, Inc. v. Rohr Industries, Inc., 748 F.2d 729 (2d Cir.
        1984) ..................................................................................................................12

* High v. McLean Financial Corp., 659 F. Supp. 1561 (D.D.C. 1987)..........................8, 9

Jacobsen v. Oliver, 201 F. Supp. 2d 93 (D.D.C. 2002) ........................................................4

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507
        U.S. 163 (1993)..............................................................................................2, 3

Lee v. Flintkote Co., 593 F.2d 1275 (D.C. Cir. 1979)..........................................................4

Marshall County Health Care Authority v. Shalala, 988 F.2d 1221 (D.C. Cir.
        1993) ....................................................................................................................4

OPIC v. Industria de Pesca, N.A., Inc., 920 F. Supp. 207 (D.D.C. 1996)...................11, 13

Regency Communications Inc. v. Cleartel Communications Inc., 160 F. Supp. 2d
        36 (D.D.C. 2001) ...............................................................................................11

Rodi v. Southern New England School of Law, 389 F.3d 5 (1st Cir. 2004) .......................9

* Steele v. Isikoff, 130 F. Supp. 2d 23 (D.D.C. 2000)....................................................11, 12

United States ex rel. Joseph v. Cannon, 642 F.2d 1373 (D.C. Cir. 1981) .......................8, 9

Vess v. Ciba-Geigy Corp., 317 F.3d 1097 (9th Cir. 2003) ..............................................7, 9

## STATE CASES

Bragdon v. Twenty-Five Twelve Associates L.P., 856 A.2d 1165 (D.C. 2004) ................5

Hahn v. University of the District of Columbia, 789 A.2d 1252 (D.C. 2002)....................6

Hopper v. Financial Management System, Inc., No. 96-456, 1997 WL 31101
        (D.D.C. Jan. 23, 1997) .........................................................................................11, 13

Pyne v. Jamaica Nutrition Holdings Ltd., 497 A.2d 118 (D.C. 1985)................................8

**FEDERAL STATUTES**

2 U.S.C.A. § 1605(4) (West 2005) ...................................................................................4

Fed. R. Civ. P. 9(b) ....................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)................................................................................. *passim*

Lobbying Disclosure Act of 1995 § 4, 2 U.S.C.A. § 1603 (West 2005) ............................3

**MISCELLANEOUS**

Deluxe Black's Law Dictionary 626 (6th ed. 1990)...........................................................10

Restatement (Second) of Torts § 551(2) (1965) ...............................................................11

26 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts §
    69.23 at 595 (4th ed. 2003) .......................................................................................12

5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1297
    (3d ed. 2004) ............................................................................................................9

## INTRODUCTION

Pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure, the plaintiff – Chlopak, Leonard, Schechter and Associates, Inc. ("CLS") – respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss the four counterclaims asserted by defendant AgustaWestland, Inc. ("Agusta").[1]

## BACKGROUND

CLS initiated this lawsuit against Agusta and Daniel G. Hill ("Mr. Hill") after learning of Mr. Hill's employment at Agusta. Mr. Hill's decision to work for Agusta and Agusta's decision to hire Mr. Hill were in blatant violation of written agreements in place between CLS and Agusta on the one hand and between CLS and Mr. Hill on the other.  The following facts are not in dispute:  Mr. Hill is a former employee of CLS, and Agusta is a former client of CLS.  Compl. ¶¶ 16, 20.  Mr. Hill executed a Non-Disclosure and Non-Competition Agreement when he began his employment at CLS.  Compl. ¶ 17.  Under this agreement, Mr. Hill promised that he would not perform services similar to the work he was doing at CLS for any present or former clients for a period of time after his employment with CLS ended.  Compl. ¶ 18.  Mr. Hill's current employment at Agusta – a former client of CLS – is in clear breach of this agreement.

At the inception of their business relationship, CLS and Agusta entered into a written agreement to identify and establish the terms of their business relationship (the "Agreement," a copy of which is attached to the Complaint as Exhibit B).  Compl. ¶ 21.  The Agreement provided that Agusta (and its affiliates) would refrain from employing a present or former employee of CLS for a period of one year after the employee's departure from CLS.  Compl. ¶¶ 21-22.  The terms of the Agreement are clear and unambiguous.  Despite the clarity of these

---

[1] The co-defendant, Daniel G. Hill, has included no counterclaims in his Answer to CLS' complaint.

agreements, and notwithstanding CLS' good faith effort to secure compliance with the

agreements, Agusta continues to employ Mr. Hill.  With no other option than to ask the Court to

enforce the Agreement, CLS filed its Complaint in the Superior Court of the District of

Columbia on November 28, 2005.  Agusta and Mr. Hill removed the case to this Court on

December 13, 2005.  Now, in response to the Complaint, Agusta has brought four counterclaims

that have nothing to do with the issues in the underlying case.  These counterclaims are without

merit.  They are deficient as a matter of law, and they should be dismissed.

## ARGUMENT

Agusta's counterclaims fail to state a claim.[2]  As a matter of law, the unambiguous terms

of the underlying Agreement between Agusta and CLS refute and negate each of Agusta's

counterclaims.  In addition, two of the four counterclaims are based in fraud and are accordingly

subject to the heightened pleading standards of Rule 9(b).  Agusta's pleadings fall far short of

meeting these requirements.  In addition, Agusta's counterclaims rely on the Court's willingness

to accept wholesale revision of the terms of the underlying Agreement.  Agusta asks this Court to

construe the Agreement in a manner contrary to the plain meaning of the text, to insert new terms

into the Agreement, and to enter a finding that the Agreement was not in effect for the duration

of the relationship.  The counterclaims should be dismissed because they fail to state a claim

under Rule 12(b)(6), and because they fail to meet the pleading requirements of Rules 8 and 9(b).

## I.     AGUSTA FAILS STATE A CLAIM FOR BREACH OF CONTRACT.

Agusta's first counterclaim – i.e., that CLS breached the confidentiality provision of the

Agreement – fails as a matter of law because, in this counterclaim, Agusta fails to plead any facts

that, if true, would constitute a breach of the Agreement.  Agusta alleges that CLS used a slide

---

[2] For purposes of this motion only, CLS treats as true the factual allegations set forth in Agusta's counterclaims.  See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993).

presentation that "contained (1) the Agusta company logo; and (2) a description of the services rendered by CLS." Countercls. ¶ 13. Agusta goes on to allege that CLS supplemented the slide presentation by orally communicating in detail the services it provided to Agusta and the ways it provided these services. Id. These facts show only that CLS disclosed the existence and nature of the Agusta-CLS relationship, which was – and is – a matter of public record and therefore not subject to the confidentiality terms of the Agreement. Even if the relationship had not been public, CLS' disclosure of these facts could not amount to a breach of the Agreement because the Agreement does not contemplate that the existence and nature of the relationship constituted confidential information. For these reasons, the Court should dismiss Agusta's breach of contract counterclaim for failure to state a claim under Rule 12(b)(6).

*First*, Agusta's allegation that CLS disclosed the existence of the Agusta-CLS relationship fails because this was public information, and therefore was not subject to the confidentiality provision of the Agreement. The Agreement provides, "Information that is or becomes *available in the public domain* through no fault of CLS or any of CLS's employees, or is not acquired by CLS or CLS's employees from [Agusta] or from sources known by CLS or CLS's employees to be in breach of a confidentiality agreement with [Agusta], *will not be deemed confidential information that is subject to the provisions of this paragraph*." ¶ 4 (emphasis added). The Agusta-CLS relationship was a matter of public record as of December 16, 2004, at which time the nature of CLS' services required the filing of a Lobby Registration Form with offices of the U.S. Congress. Lobbying Disclosure Act of 1995 § 4, 2 U.S.C.A. § 1603 (West 2005). A copy of CLS' Lobbying Registration Form (LD-1) (the "LD-1") is

attached as Exhibit 1.[3]  This public filing discloses that CLS and Agusta entered into a business

relationship, pursuant to which CLS would provide "Public Relations & Public Affairs Services"

to Agusta in the areas of defense and aviation/aircraft/airlines, with the goal of "Building

[Agusta]'s profile in the U.S."  LD-1.  This information was available to the public as of

December 16, 2004.  Therefore, under the plain terms of the Agreement, Agusta cannot claim

that CLS' alleged use of Agusta's logo and CLS' description of the services it provided to

Agusta, both in 2005, breached the confidentiality provisions of the underlying Agreement.

Countercls. ¶ 13.

      *Second*, even if the fact of the relationship was not public, Agusta's allegations fail

because the confidentiality provision did not, as a matter of law, extend to the existence of the

Agusta-CLS relationship.  As a preliminary matter, the Agreement does not provide that the

relationship was to remain confidential.  See Lee v. Flintkote Co., 593 F.2d 1275, 1280 (D.C.

Cir. 1979) (the District of Columbia recognizes "the 'plain meaning' canon of contract

interpretation").  Further, the notion that CLS' representation of Agusta would or could be

confidential is specious.  CLS is a company that is in the business of providing "communications

and marketing services including public relations, advertising, public affairs issue management,

research and lobbying on behalf of its clients."  Compl. ¶ 8.  In defining their relationship, the

parties agreed that CLS would "create and produce communicating materials . . ., distribute

materials to and interface with the media" on Agusta's behalf.  Agreement ¶ 2.  This kind of

service cannot be performed in private.  It involves public relations which, in turn, requires

---

[3] The Court may consider the LD-1 in deciding this motion to dismiss because it is a matter of
public record.  See 2 U.S.C.A. § 1605(4) (West 2005) (requiring the Secretary of the Senate and
the Clerk of the House of Representatives to make these forms "available for public inspection
and copying"); Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1222 (D.C. Cir.
1993) ("The district court may . . . examine matters of public record in ruling on a Rule 12(b)(6)
motion."); Jacobsen v. Oliver, 201 F. Supp. 2d 93, 110 (D.D.C. 2002).

communicating with the public.  The Agreement demonstrates that both parties clearly understood that Agusta had hired CLS to communicate about Agusta *with third parties*.  It is simply illogical to assume that, without some explicit contractual provision to the contrary, the existence of the Agusta-CLS relationship would remain confidential.  See Bragdon v. Twenty-Five Twelve Assoc. L.P., 856 A.2d 1165, 1170 (D.C. 2004) (refusing to interpret a contract so as to "include a provision in the Agreement that is plainly not there").  CLS' disclosure of Agusta's logo and CLS' general description of the services it provided are facts that go to the existence of their relationship.  Nothing more is alleged.  Nothing more is disclosed.  Under the plain and unambiguous terms of the contract, such conduct does not constitute a breach of the Agreement, and allegations of such conduct do not state a cause of action.

The bottom line is this:  Agusta has failed to allege any facts that, if true, might constitute a breach of the Agreement.  For that reason alone, this court should dismiss Agusta's first counterclaim.

## II.    COUNTERCLAIMS TWO AND THREE ARE DEFICIENT BECAUSE THEY DO NOT SATISFY THE HEIGHTENED PLEADING REQUIREMENTS OF RULE 9(B).

### A.    The Fee Structure Established in the Agreement Governed the Agusta-CLS Relationship.

Agusta's second and third counterclaims – for unjust enrichment and intentional misrepresentation of billing statements – are without merit.  The terms of the Agreement are clear:  CLS was entitled to $60,000 per month compensation for the services that it rendered to Agusta.  Agreement ¶ 3.  That Agreement remained in effect through March, 2005.  CLS collected $553,800 in compensation for ten months of work for Agusta, Countercls. ¶¶ 20, 26, almost $50,000 less than that to which it was entitled under the Agreement.  As a matter of law,

these facts do not state a claim of either unjust enrichment or intentional misrepresentation of billing statements.

Agusta claims that the Agreement expired. Answer, ¶ 25. But Agusta's allegation, on this score, is resolved by reference to established principles of contract law in the District of Columbia. Those principles hold that, if the parties to an agreement continue to perform their duties and provide the requisite services beyond the expiration date of an agreement, the terms of that initial agreement will be deemed as binding.[4] That is what happened here. The Agreement provided for a three-month term, which lapsed on May 12, 2004. Agreement ¶ 1. After the Agreement lapsed – as Agusta acknowledged – "CLS continued to provide services on a month-to-month basis" until the Agusta-CLS relationship was formally terminated in March, 2005. Countercls. ¶ 11. Agusta does not claim that Agusta and CLS agreed to a new business relationship governed by a new or modified Agreement. Countercls. ¶ 10. Under the general principles of contract law discussed above, the terms of the Agreement, including the fee structure, remained in effect through the termination of the relationship. Agusta was therefore bound to pay, and CLS was entitled to collect, the agreed-upon $60,000 per month plus expenses contemplated in the Agreement. Agreement ¶¶ 3, 5-6.

As to the alleged "overbilling," the Agreement authorized CLS to claim a larger fee than the fee that was actually paid by Agusta for the period of May 12, 2004 through March 4, 2005. CLS billed Agusta for $553,800 – and Agusta paid CLS that sum – for services rendered during

---

[4] See Hahn v. Univ. of D.C., 789 A.2d 1252, 1258 (D.C. 2002) ("When a contract lapses but the parties to the contract continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or through conduct, that it no longer wishes to continue to be bound thereby, or both parties mutually intend that the terms not survive." (quoting Luden's, Inc. v. Local Union No. 6, 28 F.3d 347, 355-56 (3d Cir. 1994))).

the ten months at issue. Countercls. ¶¶ 20, 26. The Agreement required Agusta to pay – and authorized CLS to collect – $600,000 plus expenses for CLS' services. Absent some factual allegation that CLS claimed more than was authorized, there is no way – as a matter of law – that CLS could have "overbilled" Agusta. The amount that is alleged in the Counterclaim is, by contractual definition, not an "overbilling." For that reason, the court should conclude that Agusta's allegations of unjust enrichment and intentional misrepresentation of billing statements should be dismissed for failure to state a claim.

**B.      Counterclaims Two and Three Fail To Meet the Pleading Requirements of Rule 9(b).**

The claims set forth in counterclaims Two and Three – the unjust enrichment and the intentional misrepresentation of billing statements – are allegations of fraud. Agusta says that CLS knowingly and intentionally misstated the amount and nature of the services it provided to Agusta and sent bills to Agusta that it knew were unjustified and excessive. Countercls. ¶¶ 23, 28, 29. Agusta is careful throughout its counterclaims, however, never to use the word "fraud." As the Ninth Circuit pointed out in a case where a party similarly pled fraudulent facts without using the word "fraud," "the pleading requirements of Rule 9(b) cannot be evaded simply by avoiding the use of that magic word." Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1108 (9th Cir. 2003). Rule 9(b)'s heightened pleading requirements apply to both the unjust enrichment and the intentional misrepresentation claims. Agusta has not satisfied the heightened pleading requirements with respect to either counterclaim, and therefore both should be dismissed.

**1.      Agusta's Claim for Intentional Misrepresentation Fails To Meet the Pleading Requirements of Rule 9(b).**

Agusta's third counterclaim, that CLS intentionally misrepresented amounts on its billing statements, is a fraud-based claim, and must therefore be pled with particularity under Rule 9(b). This Court has previously held that, "[i]ntentional misrepresentation is . . . an essential element

of the tort of fraud, not a separate tort in itself."  High v. McLean Fin. Corp., 659 F. Supp. 1561,

1566 n.4 (D.D.C. 1987) (citing Pyne v. Jam. Nutrition Holdings Ltd., 497 A.2d 118 (D.C.

1985)).  Agusta's claim is therefore subject to the Rule 9(b) requirement that "[i]n all averments

of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with

particularity."  Fed. R. Civ. P. 9(b).  This standard requires Agusta to "state the time, place and

content of the false misrepresentations, the fact misrepresented and what was obtained or given

up as a consequence of the fraud."  United States ex rel. Joseph v. Cannon, 642 F.2d 1373, 1385

(D.C. Cir. 1981) (quotation omitted).  These standards governing the pleading of fraud are

neither aspirational nor optional.  Measured against these standards, Agusta's vague and

conclusory claims of fraudulent behavior fail miserably.

Put simply, Agusta fails to supply the requisite particularity with respect to the critical

"who," "what," "where" and "when" that must be included in any proper allegation of fraud.  As

for the "*who*," Agusta claims that CLS – a non-human entity – "knew" that its billing statements

were inaccurate, that CLS "knew" that Agusta would rely on them, and that CLS "intentionally

misrepresented" its statements.  Countercls. ¶¶ 28-30.  These pleadings fall woefully short of the

requirement that they "specify the individual who made such misrepresentations."  High, 659 F.

Supp. at 1566.  As for the "*what*" and the "*where*," Agusta is once again general and its pleading

is insufficient.  It claims simply that its own review of unspecified "billing statements" reveals

that CLS overbilled Agusta and misrepresented the services it had performed.  Countercls. ¶¶ 27,

29.  With regard to the "*when*" these intentional misrepresentations took place, Agusta references

a nearly ten-month period, from May 12, 2004 through March 4, 2005, with no indication as to

which CLS bills contained misstatements of the services it had rendered.  Countercls. ¶¶ 26-27.

Without a doubt, these allegations are a far cry from stating the "time, place and content of the

false misrepresentations." <u>Cannon</u>, 642 F.2d at 1385. In sum, Agusta's cursory allegations do not satisfy its burden of "put[ting] a defendant on notice of precisely what he or she must defend against," <u>High</u>, 659 F. Supp. at 1566, as it must to survive Rule 9(b) scrutiny.

**2.    Agusta's Claim for Unjust Enrichment Fails To Meet the Pleading Requirements of Rule 9(b) with Regard to Claims that Contain Averments of Fraud.**

Agusta's second counterclaim, that CLS was unjustly enriched by overbilling Agusta, should also be subject to the heightened pleading requirements of Rule 9(b) because the allegation is grounded in fraud. Ordinarily, a claim for unjust enrichment would not be subject to Rule 9(b) because fraud is not a required element of the claim. However, to the extent that an allegation in a pleading "contains 'an averment of fraud,' whether as part of a fraud claim or as an element of a non-fraud claim, the 'averment of fraud' must be stated with the requisite particularity." <u>Brege v. Lakes Shipping Co.</u>, 225 F.R.D. 546, 549 (E.D. Mich. 2004) (citing <u>Vess</u>, 317 F.3d 1097); <u>Rodi v. S. New Eng. Sch. of Law</u>, 389 F.3d 5, 15-16 (1st Cir. 2004). <u>See also</u> 5A Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1297 (3d ed. 2004) ("[W]hen the complaint alleges both fraudulent and non-fraudulent conduct . . . the circumstances of the latter must be pleaded under Rule 9(b).").

In <u>Brege</u>, the court dismissed a counterclaim based on an unjust enrichment theory for failure to satisfy Rule 9(b) with regard to claims that were grounded in fraud. 225 F.R.D. at 549. In dismissing the claim for failure to plead sufficiently under Rule 9(b) by specifying the time, place and content of the alleged misrepresentation that gave rise to the unjust enrichment, the court noted, "[f]raud allegations may damage a defendant's reputation regardless of the cause of action in which they appear, and they are therefore properly subject to Rule 9(b) in every case." <u>Id.</u> The same concerns arise in this case. As in <u>Brege</u>, Agusta's vague and unsupported allegations of fraudulent behavior by CLS in overbilling for its services are harmful to its

reputation as a top communications firm.  Agusta's allegations that CLS "knowingly" overbilled

CLS and retained the overpayment while having "knowledge" that the billings were excessive

are, at their core, allegations that CLS engaged in fraudulent behavior.  Countercls. ¶¶ 23-24.  As

a result, they are "averments of fraud" and should therefore be dismissed for failure to meet the

heightened pleading requirements of Rule 9(b).

## III.    AGUSTA'S COUNTERCLAIM FOR BREACH OF FIDUCIARY DUTY FAILS TO STATE A CLAIM.

Agusta's fourth and final counterclaim – i.e., that CLS breached its fiduciary duty to

Agusta – is legally unfounded, and should be dismissed under Rule 12(b)(6) for failure to state a

claim.  As a preliminary matter, parties are not considered fiduciaries – and do not become

fiduciaries – merely by entering into a standard, arms-length business relationship in which one

party provides specified services to another party.  Even allowing for the theoretical possibility

that a fiduciary relationship might be created and a fiduciary duty might arise in such a situation,

Agusta's claim falls short because it fails to allege any facts that would give rise to the existence

of a fiduciary relationship.  There is no allegation that the parties intended to enter into a

fiduciary relationship, and there is no allegation that, in the course of CLS' performance of its

contractual obligations to Agusta, CLS somehow acquired the duties and obligations of a

fiduciary.  Agusta's fourth counterclaim fails as a matter of law, and it should be dismissed.

*First*, the nature of the Agusta-CLS relationship does not resemble, in any way, shape or

form, the type of relationship that might give rise to fiduciary obligations.  A fiduciary

relationship is one in which "confidence is reposed on one side, and domination and influence

result on the other."  Deluxe Black's Law Dictionary 626 (6th ed. 1990).  Relationships that are

intrinsically fiduciary in nature include those of "executor of an estate and its beneficiary, a bank

and an investing depositor, and those of physician and patient, attorney and client, priest and

parishioner, partners, tenants in common and guardian and ward." Restatement (Second) of

Torts § 551(2)(a) cmt. f (1965). Fiduciary obligations may theoretically arise out of a

relationship that is defined by contract, but those that obligations typically arise in the context of

a "suretyship or guaranty, insurance and joint adventure." Id. This Court has steadfastly

declined to import fiduciary obligations into a contract where, as is the case here, a party fails to

allege any special facts or circumstances that might give rise to an implied fiduciary duty. See

Regency Commc'ns Inc. v. Cleartel Commc'ns Inc., 160 F. Supp. 2d 36, 42 (D.D.C. 2001) (no

fiduciary relationship between customer and telephone service provider where both entered into

contract at arms-length); OPIC v. Industria de Pesca, N.A., Inc., 920 F. Supp. 207, 210 (D.D.C.

1996) (no fiduciary relationship between a debtor and a creditor in a contractual relationship);

Hopper v. Fin. Mgmt. Sys., Inc., No. 96-456, 1997 WL 31101, *5-*6 (D.D.C. Jan. 23, 1997) (no

fiduciary relationship between two business entities that had entered into an arms-length

contract).[5]

      This Court should be particularly wary of Agusta's unsupported claims. Agusta offers no

factual evidence – and makes no factual allegations – to support its legal conclusion that "[b]ased

---

[5] While this Court has held that it might be *possible* for a public relations and management firm
to be a fiduciary to its client, Church of Scientology International v. Eli Lilly & Company, 848 F.
Supp. 1018, 1027-28 (D.D.C. 1994), this Court later clarified that the existence of a fiduciary
relationship, while a "fact-intensive" issue, must sufficiently allege the necessary legal elements
in order to state a claim. See Steele v. Isikoff, 130 F. Supp. 2d 23, 36-37 (D.D.C. 2000)
(distinguishing Church of Scientology and dismissing a fiduciary duty claim as a matter of law
where plaintiff failed to allege sufficient facts to establish the possibility of a fiduciary
relationship). Unlike CLS, the firm in Church of Scientology provided "ongoing" and
"substantial" services to its client, essentially managing its public affairs for several years in a
manner that likely extended beyond the terms of the contract. 848 F. Supp. at 1023-1025.
Alleging nothing that approaches the nature of the relationship at issue in Church of Scientology
and instead relying on the existence of a contract between the two parties, Agusta's fiduciary
duty claim fails as a matter of law.

upon the Agreement, CLS was accountable to Agusta as a fiduciary."[6]  Countercls. ¶35.  Instead, Agusta alleges that the terms of the contract – along with the mere *existence* of the contract – are sufficient to give rise to a fiduciary duty.  It is well settled, however, that "the mere existence of a contractual relationship is ordinarily insufficient to give rise to a fiduciary duty."  Steele v. Isikoff, 130 F. Supp. 2d 23, 36-37 (D.D.C. 2000) (citing Church of Scientology Int'l, 848 F. Supp. 1018, 1028 (D.D.C. 1994)); see also Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729, 739 (2d Cir. 1984).  This Court has held that to survive a motion to dismiss, the plaintiff must allege something beyond a mere legal conclusion to suggest that "through the past history of the relationship and their conduct, [the parties] extended the relationship beyond the limits of the contractual obligations."  Steele, 130 F. Supp. 2d at 36-37 (recognizing that the issue was a "fact-intensive question," but holding nonetheless that the plaintiff's "bare allegation" was insufficient to support an inference that a fiduciary relationship existed).

As in Steele, Agusta's allegations that CLS owed fiduciary duties to Agusta are fatally deficient.  Unlike the plaintiff in Steele, who alleged that the relationship at issue was fiduciary both because of the agreement to keep her statements confidential and because of the reporter's "status as a professional journalist," Agusta relies solely on the existence of the Agreement, and its boilerplate confidentiality provision, for its claim.  Id.; Countercls. ¶ 35.  But the existence of a confidentiality provision in an Agreement does not, standing alone, make out a fiduciary relationship.  Id.; 26 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 69.23 at 595 (4th ed. 2003) (It is not the law that "any relationship or transaction in which one party reposes trust or confidence in another will establish a fiduciary . . . relationship."); see

---

[6] In deciding whether Agusta has stated a claim for purposes of Rule 12(b)(6), this Court does not need to accept this legal conclusion as true.  Bancoult v. McNamara, 227 F. Supp. 2d 144, 146 n.2 (D.D.C. 2002) (the court need not accept "inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations" in deciding a motion to dismiss).

OPIC, 920 F. Supp. at 210 (rejecting a claim that a fiduciary duty was born out of a contract where defendant failed to identify any "special circumstances" or facts to show that a "special relationship of trust or confidence" existed); Hopper, 1997 WL 31101, at *6 (rejecting a fiduciary duty claim where the relationship between the parties was purely contractual). Without any allegation of special facts or circumstances governing Agusta's business relationship with CLS, Agusta's naked claim that CLS had a fiduciary obligation under the Agreement is insufficient to withstand scrutiny under Rule 12(b)(6). This fourth and final counterclaim should accordingly be dismissed.

## **CONCLUSION**

For the foregoing reasons, CLS respectfully requests that the Court dismiss Agusta's counterclaims with prejudice.

Respectfully Submitted,

Dated: January 9, 2006                WILLIAMS & CONNOLLY LLP


By:＿＿＿＿＿＿ /s/ Gregory B. Craig ＿＿＿＿＿
    Gregory B. Craig  (D.C. Bar  164640)

725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

Attorney for Plaintiff, Chlopak, Leonard,
Schechter and Associates, Inc.

13

# EXHIBIT 1

# LD-1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of January, 2006, I caused to be served the foregoing

Plaintiff's Motion to Dismiss Defendant AgustaWestland, Inc.'s counterclaims upon all counsel

of record, a copy thereof by the Court's Electronic Case Filing system and via first class mail,

postage prepaid:

David A. Holzworth
Lepon Holzworth & Kato PLLC
1225 19th Street, N.W., #500
Washington, D.C. 20036
Tel: (202) 857-0242
Fax: (202) 857-0189

*Attorney for Defendants*

By:    ___/s/ Gregory B. Craig_____
            Gregory B. Craig

1