UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHLOPAK, LEONARD,<br>SCHECHTER AND ASSOCIATES, INC.<br>　　　Plaintiff and<br>　　　Counterclaim Defendant,<br><br>v.<br><br>AGUSTAWESTLAND, INC.<br>　　　Defendant and<br>　　　Counterclaim Plaintiff,<br><br>And<br><br>DANIEL G. HILL<br>　　　Defendant. | Civil Docket No.: 1:05-cv-02389-GK<br>Judge Gladys Kessler |

DEFENDANT/COUNTERCLAIM PLAINTIFF'S MEMORANDUM
OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF/COUNTERCLAIM DEFENDANT'S
MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................... ii

INTRODUCTION ................................................................................................... 1

BAGKROUND ...................................................................................................... 2

ARGUMENT .......................................................................................................... 3

    A.    Standard of Review ............................................................................ 3

    B.    In Count I, Agusta Has Properly and Sufficiently Pled that CLS Breached the Confidentiality Clause of the Agreement by Unauthorized Use of Agusta's Logo and Case Study in a Sales Pitch to a Prospective Client........................ 4

    C.    In Counts II and III, Agusta Has Properly and Sufficiently Pled Intentional Misrepresentation of Billing Statements and Unjust Enrichment Arising from CLS' Failure to Disclose an Unearned Finder's Fee and Over Billing...................... 7

    D.    In Count IV, Agusta Has Properly and Sufficiently Pled a Breach of Fiduciary Duty by Unauthorized Use of Agusta's Logo and Case Study in a Sales Pitch to a Prospective Client................................................................. 10

    CONCLUSION................................................................................. 12

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Berg v. First Am. Bankshares, Inc.*, 599 F. Supp. 500 (D.D.C. 1984) .................... 4

*\* Church of Scientology Int'l v. Eli Lilly & Co.*,
   848 F. Supp. 1018 (D.D.C. 1994) ............................................................ 11

*Ciralsky v. CIA*, 355 F.3d 661 (D.C. Cir. 2004) ............................................ 10

*Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996) ..................................... 10

*Holy Land Found. For Relief & Dev. v. Ashcroft*,
   219 F. Supp. 2d 57 (D.D.C. 2002) ........................................................ 3, 8

*Johnson v. Computer Tech. Serv., Inc.*, 670 F. Supp. 1036 (D.D.C. 1987) ............ 3, 6-7

*Lee v. Flintkote Co.*, 593 F.2d 1275 (D.C. Cir. 1979) ....................................... 7

*McCready v. Columbia/HCA Healthcare Corp.*,
   251 F. Supp. 2d 114 (D.D.C. 2003) ........................................................ 9

*Mekuria v. Washington Metro. Area Transit Auth.*, 975 F. Supp. 1 (D.D.C. 1997) ..... 6

*PDK Labs, Inc. v. Reno*, 134 F. Supp. 2d 24 (D.D.C. 2001) .............................. 3

*Semon v. Ledecky*, 326 F. Supp. 2d 68 (D.D.C. 2004) .................................... 8

*Simmons v. Abruzzo*, 49 F.3d 83 (2d Cir. 1995) ........................................... 9

*Sinclair v. Kleindienst*, 711 F.2d 291 (D.C. Cir. 1983) ..................................... 3

*Steele v. Isikoff*, 130 F. Supp. 2d 23 (D.D.C. 2000) .................................. 11, 12

*U.S. v. Philip Morris, Inc.*, 156 F. Supp. 2d 1 (D.D.C. 2001) ............................ 4

*U.S. ex rel. Harri v. Bernad*, 275 F. Supp. 2d 1 (D.D.C. 2003) ......................... 9

*Whitaker v. Thompson*, 239 F. Supp. 2d 43 (D.D.C. 2003) .............................. 3

**STATE CASES**

*Bragdon v. Twenty Five Twelve Assoc. L.P.*, 856 A.2d 1165 (D.C. 2004) ............. 7

*Hahn v. Univ. of D.C.*, 789 A.2d 1252 (D.C. 2002) .................................................. 7

## STATUTES

Fed. R. Civ. P. 8(a)(2) ............................................................................................ 3, 8

Fed. R. Civ. P. 9 ......................................................................................................... 1

Fed. R. Civ. P. 9(b) ................................................................................................... 10

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 3

## MISCELLANEOUS

Public Relations Society of America, *PRSA Member Code of Ethics*
(Public Relations Society of America 2000) ......................................................... 5, 6

**INTRODUCTION**

On January 9, 2005, Plaintiff/Counterclaim Defendant Chlopak, Leonard, Schechter and Associates, Inc. (CLS) moved to dismiss all counts of AgustaWestland, Inc.'s (Agusta) counterclaim for failure to state a claim upon which relief can be granted and for failure to plead unjust enrichment and intentional misrepresentation with the requisite particularity required by Fed. R. Civ. P. 9. On the contrary, the breach of contract and breach of fiduciary duty counts of Agusta's well-pled counterclaim specifically allege the facts of CLS's violation of a confidentiality provision in order to make a sales pitch to a prospective client. Ironically, CLS relied on the same confidentiality clauses, which it now dismisses as "boilerplate," to justify its claim for liquidated damages. Further, Agusta's count for fraudulent over billing, also a breach of fiduciary duty, is sufficiently pled in view of the limited 13-month duration of the agency relationship, the failure of CLS to disclose an excessive "finder's fee" for which no work was performed, and the two or three CLS principals responsible for billing Agusta. CLS can not credibly feign ignorance.[1] Nevertheless, Agusta has separately filed with the clerk a First Amended Counterclaim that name names and narrows the time frame of the malfeasance. The Motion to Dismiss should be denied.

---

[1] Initial Disclosures were made in the case on January 17, 2006. Agusta's disclosures included accounting records and identified the CLS people who are the most knowledgeable about the facts of the fraudulent over billing, non-disclosure of the unearned finder's fee and the sales pitch that violated the confidentiality provision of the Agreement.

1

## BACKGROUND

On November 28, 2005, CLS commenced this action against Defendants Agusta and Daniel G. Hill (Mr. Hill) for breach of contract, tortious interference with contract, and civil conspiracy. Compl. ¶ 1. On December 19, 2005, Agusta and Mr. Hill answered and Agusta counterclaimed against CLS for breach of contract, unjust enrichment, intentional misrepresentation of billing statements, and breach of fiduciary duty. Countercl. ¶ 1.

Agusta's claims arise from the same February 13, 2004 service agreement (the Agreement) upon which CLS predicates its suit. The Agreement expressly requires CLS to treat all Agusta documents as confidential and expressly prohibits CLS from disclosure or use of any confidential information for any purpose except with Agusta's express, written prior approval. *See,* Agreement ¶ 4. The Agreement further provides that the confidentiality provision survives beyond the termination of the Agreement. *Id.*; Countercl. ¶ 7. At all material times, Stephen C. Moss, President of Agusta repeatedly emphasized the importance of complete confidentiality as to the nature and scope of CLS's services. Countercl. ¶ 8. After the Agreement lapsed on May 12, 2004, CLS continued to provide services on a month-to-month basis until March 4, 2005, at which time Agusta terminated its business relationship with CLS. Countercl. ¶ 11.

In August 2004, Mr. Hill brought to the attention of Peter Schechter and Michael Fox of CLS that the firm was over billing Agusta for services rendered on a month-to-month basis. First Amended Countercl ¶ 18. CLS, nevertheless, made no immediate fee adjustment, and failed to make an appropriate adjustment when a partial adjustment was finally made. Countercl. ¶ 12. In November 2005, after all services to Agusta had been

2

terminated, CLS prepared and used a slide presentation to solicit clients that contained: (1) the Agusta company logo; and (2) a description of the nature and scope of services rendered by CLS. Principals of CLS who made the presentations also orally described in significant detail the actual services rendered to Agusta and the ways in which the services were rendered. CLS did not notify Agusta of its intention to solicit other clients by using the Agusta's name and case studies and did not obtain prior written approval from Agusta. Countercl. ¶ 13.

**ARGUMENT**

    **A. Standard of Review**

In reviewing a Rule 12(b)(6) motion, a court must accept as true all factual allegations in the non-movant's pleadings. *PDK Labs, Inc. v. Reno,* 134 F. Supp. 2d 24, 32-33 (D.D.C. 2001), citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Sinclair v. Kleindienst,* 711 F.2d 291, 293 (D.C. Cir. 1983). Furthermore, a court must construe the factual allegations of a pleading "in the light most favorable to [the non-moving party]," *see, Johnson v. Computer Tech. Serv., Inc.,* 670 F. Supp. 1036, 1038 (D.D.C. 1987), and grant the non-moving party "the benefit of all inferences that can be derived from the facts alleged." *See, Whitaker v. Thompson,* 239 F. Supp. 2d 43, 47 (D.D.C. 2003), citing *Shear v. National Rifle Ass'n of Am.,* 606 F.2d 1251, 1253 (D.C.Cir. 1979). To survive a Rule 12(b)(6) motion, Agusta need only provide "a short and plain statement of the claim and the grounds on which it rests." *See,* Fed. R. Civ. P. 8(a)(2); *Holy Land Found. For Relief & Dev. v. Ashcroft,* 219 F. Supp. 2d 57, 75 (D.D.C. 2002), citing *Conley,* 355 U.S. at 47.

Agusta need not show that it will prevail on the merits of the instant case, but only that it properly stated a claim. *See id.*

CLS, as the moving party, must show "beyond doubt that [Agusta] can prove no set of facts in support of [its] claim which would entitle [Agusta] to relief." *U.S. v. Philip Morris, Inc.,* 156 F. Supp. 2d 1, 3 (D.D.C. 2001), *citing Conley,* 355 U.S. at 45-46. Put another way, CLS "bears a heavy burden of persuasion." *See, Berg v. First Am. Bankshares, Inc.,* 599 F. Supp. 500, 502 (D.D.C. 1984).

> **B. In Count I, Agusta Has Properly and Sufficiently Pled that CLS Breached the Confidentiality Clause of the Agreement by Unauthorized Use of Agusta's Logo and Case Study in a Sales Pitch to a Prospective Client.**

CLS argues that CLS's disclosure of the existence and nature of the relationship between Agusta and CLS is a matter of public record and, therefore, cannot be subject to the confidentiality provision of the Agreement. Pl.'s Mem. Supp. Dismiss at 3. CLS further argues that the Agreement itself did not contemplate that the existence and nature of their relationship constituted confidential information. *Id.*

CLS has set up a strawman. Agusta nowhere alleges that the mere existence and general nature ("public relations") of their relationship constitutes confidential information. Agusta does allege a breach of contract arising from CLS's *unauthorized* disclosure of specific and sensitive information about Agusta in a case study pitch to a potential client. The sales pitch included, but was not limited to, the content, methods and processes of services rendered by CLS to Agusta. *See,* Countercl. ¶¶ 8 &13.

CLS misplaces reliance on the *authorized* filing of a Lobby Registration Form (LD-1) that contains only a very general description of the service, i.e., "Public Relations &

4

Public Affairs Services" in order to "[build] the Company's profile in the U.S." *See,* Pl.'s Mem. Supp. Dismiss at 3-4 and Ex. 1. In contrast to the ***unauthorized*** sales pitch, the single sentence appearing on the LD-1 form is extremely vague and general. The LD-1 form contains nothing about methods or processes employed to achieve a specific result. The information that CLS disclosed in the case study slide-show and sales pitch to its potential client went well beyond a general characterization of the relationship.[2]

Under the Member Code of Ethics of the Public Relations Society of America, a professional organization consisting of public relations and communication firms and specialists, members shall:

- Safeguard the confidences and privacy rights of present, former, and prospective clients and employees.
- Protect privileged, confidential, or insider information gained from a client or organization.
- Immediately advise an appropriate authority if a member discovers that confidential information is being divulged by an employee of a client company or organization.

*See,* Public Relations Society of America, *PRSA Member Code of Ethics* 12 (Public Relations Society of America 2000), attached as Exhibit 1.

The PRSA Member Code of Ethics appears to be the basis for the confidentiality clauses in the Agreement. The Code also establishes a standard of care for members and

---

[2] The Court may fairly infer from the facts pled that CLS's use of the unauthorized case study, especially including the unauthorized use of Agusta's trademarked logo, had the foreseeable effect of inducing the client prospect to believe that Agusta was providing a strong recommendation for CLS. Following discovery, Agusta may again amend its counterclaim if it determines that an intellectual property rights infringement has occurred.

also more broadly for all companies in the industry.[3] CLS's disclosure of the nature and scope of the services and the methods employed in rendering services on behalf of Agusta destroyed the trust and confidence that Agusta placed in CLS.

By moving to dismiss, CLS would have the Court decide, at this early juncture and without any factual discovery or briefing on the merits, fact dependant issues of contract interpretation and the existence of a breach.  CLS contends that the Agreement itself permits unfettered disclosure, reciting the clause requiring CLS to "create and produce communications materials ... distribute materials to and interface with the media." *See,* Pl.'s Mem. Supp. Dismiss at 4 *quoting* Agreement ¶ 2.  However, CLS omits from its quotation of paragraph 2 of the Agreement the significant condition that distribution be made "*as directed by the client.*" (emphasis added).  *See,* Agreement ¶ 2. ("distribute materials to and interface with the media, provided [sic] communication services *as directed by the client*"). (emphasis added).  On a motion to dismiss, the parties are bound by Agusta's allegation that Agusta never ***directed, approved***, or ***authorized*** CLS to disclose the nature and scope of their relationship to future CLS prospects in a sales pitch.

Whether or not Agusta provided any prior approval, authorization or specific direction for CLS to disclose any of the confidential information is a contested factual issue, which should not be resolved on a motion to dismiss.  *See, Mekuria v. Washington Metro. Area Transit Auth.,* 975 F. Supp. 1, 7 (D.D.C. 1997) (It is axiomatic that the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted); *Johnson,*

---

[3] Agusta believes that CLS is a member of the PRSA and intends to show that the PRSA Member Code of Ethics establishes a fiduciary standard that CLS breached in making its sales pitch.

6

670 F. Supp. at 1038 (A court must construe the facts and allegations in a pleading in the light most favorable to the non-moving party).

CLS's reliance on *Lee v. Flintkote Co.*, 593 F.2d 1275 (D.C. Cir. 1979) and *Bragdon v. Twenty Five Twelve Assoc. L.P.*, 856 A.2d 1165 (D.C. 2004) is misplaced. *See,* Pl.'s Mem. Supp. Dismiss at 4-5. Disclosure of the mere existence of the Agusta-CLS relationship is not the issue here. Agusta has pled sufficiently more substantial disclosure by CLS -- disclosure of the ways in which CLS actually rendered services to Agusta -- in violation of the confidentiality provision of the Agreement. A mere reference to "the 'plain meaning' cannon of contract interpretation" will not sustain CLS's motion to dismiss. A contested factual issue remains as to whether Agusta gave CLS "express, written prior approval" to use its logo and case study in a sales pitch. *See, infra* p.5-6.

### C. In Counts II and III, Agusta Has Properly and Sufficiently Pled Intentional Misrepresentation of Billing Statements and Unjust Enrichment Arising from CLS' Failure to Disclose an Unearned Finder's Fee and Over Billing.

CLS argues, contrary to Agusta's factual allegations, that the $60,000 per month fee schedule set for the three months of the Agreement continued in effect after the three month Agreement expired and until Agusta terminated its business relationship with CLS in March 2005. Pl.'s Mem. Supp. Dismiss at 5-6. Thus, CLS concludes that Agusta should have paid approximately $600,000 for the ten month period from May 12, 2004 through March 4, 2005, not $553,800 that Agusta actually paid. *Id.*

The failure of CLS to accept Agusta's factual allegations should be the end of the issue. However, CLS did not invoice $60,000 per month after the expiration of the initial contract period. *Hahn v. Univ. of D.C.*, 789 A.2d 1252, 1258 (D.C. 2002), provides that,

7

when a contract lapses, "the material terms of the prior contract will survive intact *unless either one of the parties clearly and manifestly indicates, through words or through conduct, that ... both parties mutually intend that the terms not survive.*" (emphasis added.) Despite its own invoices to the contrary, CLS may attempt to prove that the words or conduct of parties caused the terms to survive, but CLS cannot have that fact intensive issue decided on a motion to dismiss. In addition, Agusta has alleged that CLS has charged an unfair amount: (1) for the undisclosed and unearned finder's fee hidden in the three $60,000 monthly payments; and (2) for the actual services rendered for the ten months following the expiration of the three-month Agreement. Those are both factual disputes that cannot be decided on a motion to dismiss.

CLS further argues that the intentional misrepresentation of billing statements and unjust enrichment claims should be subjected to the heightened pleading requirements of Rule 9(b). Pl.'s Mem. Supp. Dismiss at 7. Even if a claim for unjust enrichment were subject to Rule 9(b)'s heightened pleading standards, "[t]o survive a motion to dismiss, a complaint need only provide 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests." *See,* Fed. R. Civ. P. 8(a)(2); *Holy Land Found. For Relief & Dev.,* 219 F. Supp. 2d at 75. Rule 9(b)'s heightened pleading standards do "not abrogate Rule 8's general requirements that a pleading contain a short and plain statement of the claim, and that each averment be simple, concise, and direct ... alleging all of the requisite elements for the cause of action invoked." *See, Semon v. Ledecky,* 326 F. Supp. 2d 68, 74 (D.D.C. 2004).

CLS faults Agusta for failing to name individuals involved in the over billing and the exact dates when the over billing occurred. Rule 9(b) does not require such a degree of specificity under the facts of this case where the duration of the relationship was relatively brief (13 months) and the number of CLS principals involved and responsible for billing was relatively small (two or three). Nevertheless, Agusta has separately filed a First Amended Complaint that name names and narrows the time frame when the malfeasance occurred. Agusta's First Amended Counterclaim alleges that Mr. Hill informed Peter Schechter and Michael Fox of CLS that CLS was over billing for services rendered for the period after the termination of the Agreement, thereby pleading its intentional misrepresentation and unjust enrichment claims with sufficient particularity. *U.S. ex rel. Harri v. Bernad*, 275 F. Supp. 2d 1, 8 (D.D.C. 2003) (stating that Rule 9(b) does not require "a detailed description of each and every false claim" when the fraud takes place over many years).

Agusta has satisfied the essential purpose of the pleading standard, which is to give CLS fair notice so that CLS can prepare for trial. *See, McCready v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 114, 116 (D.D.C. 2003) ("The main purpose of Rule 9(b) is to ensure that defendants have adequate notice of the charges against them to prepare a defense"); *see also, Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995), *citing* 2A *Moore's Federal Practice* ¶ 8.13, at 8-58 (2d ed. 1994) ("The function of pleadings under the Federal Rules is to give fair notice of the claim asserted. Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of

res judicata, and identify the nature of the case so it may be assigned the proper form of trial").

Even if the Court were to find that Agusta failed to plead its initial counterclaim with particularity pursuant to Fed. R. Civ. P. 9(b), this finding does not justify dismissal with prejudice. *See, Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996), *citing Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) ("Failure to plead fraud with particularity likewise does not support a dismissal with prejudice. To the contrary, leave to amend is 'almost always' allowed to cure deficiencies in pleading fraud"). When fraud has not been sufficiently pled, the Court should grant leave to further amend. *See, Ciralsky v. CIA*, 355 F.3d 661, 671 n.10 (D.C. Cir. 2004), *citing Simmons,* 49 F.3d at 86-87 (Courts should give leave to amend, rather than dismiss, a complaint that fails to comply with Rule 8(a), especially when the complaint states an intelligible claim that is not frivolous on its face).

**D. In Count IV, Agusta Has Properly and Sufficiently Pled a Breach of Fiduciary Duty by Unauthorized Use of Agusta's Logo and Case Study in a Sales Pitch to a Prospective Client.**

Agusta alleged the existence of a fiduciary duty between CLS and Agusta based on the nature of consulting services rendered by CLS to Agusta, and the confidential entrustment of information and material to CLS in order to obtain "strategic advice and counsel" from CLS for matters related to a sensitive government procurement contract. *See,* Countercl. ¶¶ 34-35.

CLS argues that Agusta relied "solely on the existence of the Agreement, and its boilerplate confidentiality provision" for a breach of fiduciary claim. Pl.'s Mem. Supp.

Dismiss at 12. Agusta need not plead more. CLS should not diminish the gravity of the breach by characterizing the confidentiality agreement as "boilerplate." After all, CLS relies heavily on the so-called boilerplate in the same Agreement and the related boilerplate in the Hill Agreement as the basis for all or part of its claims. However, Agusta does not solely rely on the confidentiality provision of the Agreement. Agusta specifically alleges that the so-called boilerplate provision was central to entrusting CLS with the specific task contemplated by the relationship. *See,* Countercl. ¶ 8. Agusta further alleges that the confidential activities subject to the agreement were repeatedly noted and discussed by Agusta and CLS throughout the duration of the initial three-month Agreement as well as the continuing relationship for the next ten months. *Id.*[4]

Where one party "is under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation," a fiduciary relationship exists. *See Church of Scientology Int'l v. Eli Lilly & Co.,* 848 F. Supp. 1018, 1028 (D.D.C. 1994), *citing* Restatement (Second) Torts § 874. In *Church of Scientology Int'l,* defendant held itself out to plaintiff as knowledgeable in the area of public relations and promised to provide plaintiff with ongoing public relations and public affairs counsel. *Church of Scientology Int'l.,* 848 F. Supp. at 1028. CLS mistakenly reads *Steele v. Isikoff,* 130 F. Supp. 2d 23 (D.D.C. 2000) as limiting *Church of Scientology Int'l.* Pl.'s Mem. Supp. Dismiss at 11-12. *Steele* involved an alleged verbal contract between a news magazine reporter and a person interviewed by him for an article. In determining that there was no fiduciary duty

---

[4] *See, infra* pp. 5-6 for the discussion of the standard of care for handling client confidences established by the PRSA Member Code of Ethics.

11

and distinguishing *Church of Scientology Int'l*, the court in *Steele* focused on the absence of a relationship between the parties in the *Steel* case where one is expecting the other to advise him or her or take care of his or her affairs. *Steele*, 130 F. Supp. at 37. The factual circumstances of this case bear no similarity to those of *Steele*, but squarely fit those of *Church of Scientology Int'l*. Defendant/Counterclaim Plaintiff has sufficiently pled the existence of a fiduciary relation and breach of that duty by CLS.

## CONCLUSION

For the foregoing reasons, the CLS' Motion to Dismiss Defendant/Counterclaim Plaintiff AgustWestland, Inc.'s Counterclaim should be denied.

Respectfully submitted,

By: _____
David A. Holzworth (D.C. Bar 322966)
Hiromi Maruyama (D.C. Bar 484098)
LEPON HOLZWORTH & KATO PLLC
1225 19th Street, N.W., #500
Washington, D.C. 20036
Tel: (202) 857-0242
Fax:(202) 857-0189

Counsel for Defendant/Counterclaim Plaintiff

Date: Jan 20, 2006

12