UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHLOPAK, LEONARD,<br>SCHECHTER AND ASSOCIATES, INC.<br>1850 M. Street, NW, Suite 550<br>Washington, DC 20036<br><br>    Plaintiff and<br>    Counterclaim Defendant,<br><br>v.<br><br>AGUSTAWESTLAND, INC.<br>2231 Crystal Drive, Suite 1114<br>Arlington, VA 22202<br><br>    Defendant and<br>    Counterclaim Plaintiff,<br><br>and<br><br>DANIEL G. HILL<br>4141 N. Henderson Road, #219<br>Arlington, VA 22203<br><br>    Defendant. | Civil Docket No.: 1:05-cv-02389-GK |

### ANSWER OF DEFENDANTS AGUSTAWESTLAND, INC.
### AND DANIEL G. HILL AND FIRST AMENDED COUNTERCLAIM OF
### AGUSTAWESTLAND, INC.

Defendants AgustaWestland, Inc. (Agusta) and Daniel G. Hill (Mr. Hill) answer the allegations of the complaint in the above captioned action as follows:

**BACKGROUND**

1. Does not require an admission or denial, but to the extent that an answer is required, the allegation is denied.

2. Does not require an admission or denial, but to the extent that an answer is required, the allegation is denied.

3. The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied.

4. The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied. Denied as to the date of execution of the Agreement.

5. The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied.

6. The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied.

7. The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied.

**THE PARTIES**

8. As to the first sentence, defendants do not have information sufficient to answer whether or not plaintiff Chlopak, Leonard, Schechter and Associates, Inc. (CLS) is organized under the laws of the District of Columbia. The remaining allegations are admitted.

9. Admitted, except that Agusta is not in the business of designing and manufacturing helicopters.

10. Admitted, except that Mr. Hill is not employed at Agusta. Defendants affirmatively state that Mr. Hill is employed by Agusta's parent company, AgustaWesltand North America, Inc. (AWNA)

**JURISDICTION AND VENUE**

11. Denied that defendants caused any tortious acts in this jurisdiction and denied that either defendant derives substantial revenue from services rendered in the District of Columbia. The remaining allegations are admitted.

**FACTS**

12. Admitted.

13. Defendants do not have sufficient information to admit or deny the allegations as to the purposes that plaintiff had in mind when it required employees to sign the referenced agreements. The defendants also lack sufficient information to admit or deny any allegations as to contracts with employees other than Mr. Hill. To the extent that an answer is required, the allegations are denied.

14. Admitted that the paragraph correctly quotes part of the Agreement, but all allegations characterizing the Agreement are denied.

15. Defendants do not have sufficient information to admit or deny allegations as to the purposes that plaintiff had in mind when it required clients to sign the referenced agreements. The defendants also lack sufficient information to admit or deny any allegations as to contracts with clients other than Agusta. To the extent that an answer is required, the allegations are denied.

16. Admitted.

17. Denied as to the date of execution of the Agreement. Admitted that a copy of the Agreement is attached as Exhibit A.

18. Admitted that the paragraph correctly quotes part of the Agreement, but allegations characterizing the Agreement are denied. The Agreement speaks for itself.

19. Admitted that the paragraph correctly quotes part of the Agreement, but allegations characterizing the Agreement are denied. The Agreement speaks for itself.

20. Admitted.

21. Admitted.

22. Admitted that the paragraph correctly quotes part of the Agreement, but allegations characterizing the Agreement are denied. The Agreement speaks for itself.

23. Admitted that the paragraph correctly quotes part of the Agreement, but allegations characterizing the Agreement are denied. The Agreement speaks for itself.

24. First sentence admitted. The remaining allegations in the paragraph are denied. Defendants affirmatively allege that Mr. Hill brought capability and experience to CLS that CLS did not have and that Mr. Hill received no new substantive training during the three years he worked with CLS.

25. Admitted as to the date of termination of business relationship. Agusta affirmatively alleges that the contract at issue expired by its own terms on May 12, 2004.

26. Denied. Mr. Hill affirmatively states that he gave notice to CLS on February 17, 2005. Admitted that CLS provided Mr. Hill with the memorandum. Mr. Hill affirmatively states that CLS asked him to sign the memorandum, but he declined to do so.

27. Denied that Mr. Hill is employed at Agusta. Mr. Hill is employed at AWNA. Defendants affirmatively allege that the duties performed by Mr. Hill in his position at AWNA are not now and never have been substantially the same as the services

performed for Agusta when he worked with CLS. All other allegations of the paragraph are denied.

28. The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied.

29. The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied.

30. Admitted as to the date of the notice, but denied as to all allegations contained in the notice.

31. Admitted.

32. The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied.

33. The allegations are legal conclusions and do not require admission or denial, but to the extent that an answer is required, the allegations are denied.

34. The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied. Defendants affirmatively allege that the duties performed by Mr. Hill in his position at AWNA are not now and never have been substantially the same as the services performed for Agusta when he worked with CLS.

35. The allegations are legal conclusions and do not require admission or denial, but to the extent that an answer is required, the allegations are denied.

36. Denied. Defendants affirmatively allege that the duties performed by Mr. Hill in his position at AWNA are not now and never have been substantially the same as the services performed for Agusta when he worked with CLS.

37. Denied.

## COUNT I

### (Breach of Contract – Mr. Hill)

38. Defendants repeat and incorporate herein by reference answers to paragraph 1 through 37.

39. Denied.

40. Denied.

41. The allegation does not require an admission or denial, but to the extent that an answer is required, the allegation is denied.

## COUNT II

### (Breach of Contract – Agusta)

42. Defendants repeat and incorporate herein by reference answers to paragraph 1 through 37.

43. Denied.

44. Denied.

45. The allegation does not require an admission or denial, but to the extent that an answer is required, the allegation is denied.

## COUNT III

### (Tortious Interference With Contract – Mr. Hill)

46. Defendants repeat and incorporate herein by reference answers to paragraph 1 through 37.

47. Denied.

48. Denied.

49. The allegation does not require an admission or denial, but to the extent that an answer is required, the allegation is denied.

## COUNT IV

### (Tortious Interference with Contract – Agusta)

50. Defendants repeat and incorporate herein by reference answers to paragraph 1 through 37.

51. Denied.

52. Denied.

53. The allegation does not require an admission or denial, but to the extent that an answer is required, the allegation is denied.

## COUNT V

### (Civil Conspiracy to Breach Each Contract -- Mr. Hill and Agusta)

54. Defendants repeat and incorporate herein by reference answers to paragraph 1 through 37.

55. Denied.

56. Denied.

57. The allegation does not require an admission or denial, but to the extent that an answer is required, the allegation is denied.

The remainder of the complaint does not require either admission or denial. To the extent that an answer is required, the allegations are denied.

## AFFIRMATIVE DEFENSES

FIRST AFFIRMATIVE DEFENSE

All of Plaintiff's claims seeking equitable relief are barred by laches.

SECOND AFFIRMATIVE DEFENSE

All of Plaintiff's claims are barred by the doctrine of unclean hands.

THIRD AFFIRMATIVE DEFENSE

All of Plaintiff's alleged damages, if suffered, were due solely to the acts or omissions of the Plaintiff for which Defendants have no responsibility.

FOURTH AFFIRTMATIVE DEFENSE

All of Plaintiff's alleged damages, if suffered, are barred for failure of the Plaintiff to mitigate damages.

FIFTH AFFIRMATIVE DEFENSE

All of Plaintiff's alleged damages, if suffered, are barred to the extent that Plaintiff is unable to establish harm caused by the Defendants' conduct.

SIXTH AFFIRMATIVE DEFENSE

Defendants affirmatively allege that any duties or obligations which Plaintiff claims were owed by Defendants have been performed, satisfied, and discharged.

SEVENTH AFFIRMATIVE DEFENSE

Each of Plaintiff's five causes of action fails to state a claim for which relief may be granted.

EIGHTH AFFIRMATIVE DENFENSE

The provisions of the Agreements that Plaintiff seeks to enforce are void as contrary to public policy.

Defendants demand strict proof of all claims against them, and declare that they intend to and do rely on all defenses, which are applicable or may become applicable or available herein including but not limited to any and all additional legal and equitable defenses determined during the course of discovery.

WHEREFORE, Defendants respectfully request that this Court dismiss the Complaint and grant to Defendants attorney's fees, costs, and such other relief as the Court deems just and proper.

**FIRST AMENDED COUNTERCLAIM BY COUNTERCLAIM PLAINTIFF AGUSTAWESTLAND, INC. AGAINST COUNTERCLAIM DEFENDANT CHLOPAK, LEONARD, SCHECHTER AND ASSOCIATES, INC.**

**NATURE OF CLAIM**

1. This counterclaim is an action for recovery of compensatory and punitive damages from Counterclaim Defendant Chlopak, Leonard, Schechter and Associates, Inc. (CLS) for breach of contract, unjust enrichment, intentional misrepresentation in billing for services and breach of fiduciary duty.

**THE PARTIES**

2. Counterclaim Plaintiff AgustaWestland, Inc. (Agusta) is a Delaware corporation primarily engaged in marketing helicopters. Agusta's principal place of business is in Arlington, Virginia.

3. Counterclaim Defendant CLS is a corporation organized and existing under the laws of the District of Columbia and has its principal place of business in the District of Columbia. During the relevant period of time, CLS solicited and performed consulting services for Agusta in Arlington, Virginia.

**JURISDICTION AND VENUE**

4. Jurisdiction of this Court arises from 28 U.S.C. §1332, in that the amount in controversy exceeds $100,000 and there is diversity of citizenship between counterclaim plaintiff and counterclaim defendant. This Court also has supplemental jurisdiction under 28 U.S.C.§ 1367.

5. Venue is proper under 28 U.S.C. §1391(a).

**FACTUAL ALLEGATIONS**

6. On February 13, 2004, Agusta entered into an agreement (the Agreement) with CLS to obtain consulting services on strategic communications matters related to a government procurement contract. The term of the Agreement was three (3) months, from February 12, 2004 until May 12, 2004, at a fixed fee of $60,000 per month. Exhibit A, attached, at ¶ 1 & 3.

7. The Agreement provides that CLS will "treat all documents as confidential" and will "not disclose or use any confidential information, in any form, for any purpose except with [Agusta]'s express, written prior approval." The Agreement further provides that the confidentiality provision will "survive beyond the conclusion or termination of this contract." Exhibit A, at ¶ 4.

8. During the negotiation of the terms of the Agreement and during the subsequent provision of services by CLS to Agusta during the three month term of the Agreement and afterwards, Stephen C. Moss, President of Agusta during the relevant time, repeatedly emphasized the importance of complete confidentiality as to the nature and scope of CLS' services.

9. On May 12, 2004, the Agreement lapsed by its own terms. Exhibit A at ¶ 1.

10. On April 6, 2004, CLS sought to renew and extend the Agreement under a new fee schedule. Agusta declined to extend the Agreement beyond the termination date of May 12, 2004.

11. After the Agreement lapsed on May 12, 2004, CLS continued to provide services on a month-to-month basis until March 4, 2005, at which time Agusta terminated its business relationship with CLS.

12. In August 2004, **Mr.** Hill brought to the attention of **Mr. Peter Schechter, and Mr. Michael Fox of** CLS that the firm was overbilling Agusta for services rendered on a month-to-month basis. CLS, nevertheless, made no immediate fee adjustment, and failed to make an appropriate adjustment when a partial adjustment was finally made.

13. **On or about November 18,** 2005, after all services to Agusta had been terminated, CLS prepared and used a slide presentation to solicit clients that contained: (1) the Agusta company logo; and (2) a description of the services rendered by CLS. Upon information and belief, principals of CLS who made the presentations also orally described in significant detail the actual services rendered to Agusta and the ways in which the services were rendered. CLS did not notify Agusta of its intention to solicit other clients by using the Agusta name and case studies and did not obtain prior written approval from Agusta to do so.

## COUNT I

### (Breach of Contract)

14. Counterclaim Plaintiff Agusta re-alleges and incorporates by reference the allegations in paragraph 1 through 13.

15. On February 13, 2004, Agusta entered into the Agreement with CLS to obtain consulting services on strategic communications matters related to a government procurement contract for the term of three (3) months until May 12, 2004.

16. Agusta remitted to CLS more than $180,000 in payment on invoices for services rendered during the three month term of the Agreement.

17. Among other relevant terms, the Agreement provided that CLS would "treat all documents as confidential" and would "not disclose or use any confidential information, in any form, for any purpose except with [Agusta]'s express, written prior approval." The Agreement further provided that this provision would "survive beyond the conclusion or termination of this contract."

18. **In November 2005, CLS used Agusta's logo and name in soliciting a prospective client, and disclosed the nature and scope of specific services rendered to Agusta in detail, and the procedures or techniques employed by, or activities undertaken by, CLS on behalf of Agusta.**

19. By using and distributing the information about Agusta in CLS's promotional presentations for its potential clients without Agusta's express, written prior approval, CLS violated Paragraph 4, the confidentiality provision, of the Agreement.

WHEREFORE, Counterclaim Plaintiff Agusta prays for compensatory damages in an amount to be proven at trial equal to or exceeding the total amount of fees paid to CLS under the three month Agreement and on a month-to-month basis after the termination of the Agreement, costs including reasonable attorney's fees, pre- and post-judgment interest at the legal rate, and such other relief as this Court deems just and equitable, including an injunction.

## COUNT II

### (Unjust Enrichment)

20. Counterclaim Plaintiff Agusta re-alleges and incorporates by reference the allegations in paragraph 1 through 19.

21. For the period of time from May 12, 2004 through March 4, 2005, Agusta paid CLS a total of $553,800 for consulting services rendered by CLS to Agusta in connection with one or more government procurement contracts.

22. Based on a review of the billing invoices and the services rendered, CLS overbilled Agusta by an amount equal to or exceeding $250,000.

23. **In August 2004, Mr. Hill brought to the attention of Mr. Peter Schechter, and Mr. Michael Fox of CLS that the firm was overbilling Agusta for services rendered on a month-to-month basis. CLS, nevertheless, made no immediate fee adjustment, and failed to make an appropriate adjustment when a partial adjustment was finally made.**

24. The overpayment made by Agusta to CLS conferred a benefit upon CLS in the amount equal to or exceeding $250,000, which is the difference between the amount of money that Agusta actually paid to CLS and the amount of money that Agusta should have paid to CLS based on the actual services rendered by CLS to Agusta for services related to the government procurement contracts.

25. CLS knowingly billed and accepted the unearned benefits in the amount equal to or exceeding $250,000 conferred upon CLS by Agusta during this period.

26. CLS's retention of the overpayment made by Agusta while CLS had knowledge of **overbilling** makes it inequitable for CLS to retain the excessive charges billed to and paid by Agusta.

WHEREFORE, Counterclaim Plaintiff Agusta prays for compensatory damages in the amount equal to or exceeding $250,000, costs including reasonable attorney's fees, pre-

and post-judgment interest at the legal rate, and such other relief as this Court deems just and equitable.

## COUNT III

### (Intentional Misrepresentation of Billing Statements)

27. Counterclaim Plaintiff Agusta re-alleges and incorporates by reference the allegations in paragraph 1 through 26.

28. For the period of time from May 12, 2004 through March 4, 2005, CLS billed Agusta a total of $553,800 for consulting services related to one or more government procurement contracts.

29. Based on a review of the billing invoices and the services rendered, CLS overbilled Agusta by an amount equal to or exceeding $250,000.

30. CLS knew that the invoices to Agusta did not accurately reflect the amount of time and services that CLS actually rendered on one or more projects for Agusta. In fact, in August 2004, Mr. Hill brought to the attention of Mr. Peter Schechter, and Mr. Michael Fox of CLS that the firm was overbilling Agusta for services rendered on a month-to-month basis. CLS, nevertheless, made no immediate fee adjustment, and failed to make an appropriate adjustment when a partial adjustment was finally made.

31. CLS intentionally misrepresented to Agusta that CLS performed service as indicated on the statements submitted to Agusta that CLS did not, in fact, provide.

32. CLS knew that Agusta would rely on the accuracy and truthfulness of the billing statements in making payments to CLS.

33. Agusta in fact relied upon the accuracy and truthfulness of the billing statements provided by CLS and paid to CLS $553,800.

34. Agusta has been damaged in the amount equal to or exceeding $250,000. The damages directly resulted from the intentional misrepresentations made in the billing statements.

WHEREFORE, Counterclaim Plaintiff Agusta prays for compensatory damages equal to or exceeding $250,000, costs including reasonable attorney's fees incurred by Agusta in seeking and obtaining relief herein, pre- and post-judgment interest at the legal rate and punitive damages in an amount to be proven at trial, and such other relief as this Court deems just and equitable.

## COUNT IV

### (Breach of Fiduciary Duty)

35. Counterclaim Plaintiff Agusta re-alleges and incorporates by reference the allegations in paragraph 1 through 34.

36. During the terms of the Agreement and during the subsequent provision of services by CLS to Agusta under the Agreement and afterwards, Agusta was a client of CLS. Agusta retained CLS to obtain professional consulting services on strategic communications matters in connections with one or more government procurement contracts.

37. Based upon the Agreement, CLS was accountable to Agusta as a fiduciary. As a fiduciary, CLS owed Agusta a duty to act for the benefit of Agusta with loyalty and good faith, without any self-interest or self-dealing.

38. In August 2004, Mr. Hill brought to the attention of Mr. Peter Schechter, and Mr. Michael Fox of CLS that the firm was overbilling Agusta for services rendered on a month-to-month basis. CLS, nevertheless, made no immediate fee adjustment, and failed to make an appropriate adjustment when a partial adjustment was finally made.

39. In 2004 and 2005, CLS failed to disclose to Agusta a "fee-sharing" or "referral fee" arrangement between CLS and its partner under the Agreement which provided no benefit to Agusta.

40. In November 2005, CLS used Agusta's logo and name in soliciting a prospective client, and disclosed the nature and scope of specific services rendered to Agusta in detail, and the procedures or techniques employed by, or activities undertaken by, CLS on behalf of Agusta.

41. CLS used and distributed confidential information about Agusta in its promotional presentations for its potential clients without Agusta's express, written prior approval in violation of Paragraph 4, the confidentiality provision of the Agreement.

42. CLS knowingly overbilled Agusta for services rendered by an amount equal to or exceeding $250,000.

43. CLS breached its fiduciary duty to Agusta by using confidential information about Agusta for promotional purposes, by overbilling Agusta for services rendered, and by failing to disclose a fee sharing arrangement that conferred no benefit on Agusta in willful disregard of its fiduciary duty towards Agusta.

44.     By virtue of CLS's breach of its fiduciary duty owed to Agusta, Agusta suffered damages equal to or exceeding the total amount of fees paid to CLS .

WHEREFORE, Counterclaim Plaintiff Agusta prays for compensatory damages in the amount equal to or exceeding $733,800, the total amount of fees paid to CLS under the three month Agreement and on a month-to-month basis after the termination of the Agreement, costs including reasonable attorney's fees, pre- and post judgment interest at the legal rate, punitive damages in an amount to be proven at trial, and such other relief as this Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

The Defendants and Counterclaim Plaintiff further demand a trial by jury of all issues so triable as a matter of right.

Respectfully submitted,

By: _____
David A. Holzworth (D.C. Bar 322966)
Hiromi Maruyama (D.C. Bar 484098)
LEPON HOLZWORTH & KATO PLLC
1225 19th Street, N.W., #500
Washington, D.C. 20036
Tel: (202) 857-0242
Fax:(202) 857-0189
Counsel for the Defendant/Counterclaim Plaintiff

Dated: 1/19 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendants' Answer and Defendant/Counterclaim Plaintiff's First Amended Counterclaim was mailed by first class mail, postage pre-paid on ___Jan. 20___, 2006 to the following:

>Gregory B. Craig, Esq.
>Williams & Connolly, LLP
>725 12th Street, N.W.,
>Washington, DC 20005
>
>Counsel for Plaintiff/Counterclaim Defendant

_____