**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **CHLOPAK, LEONARD, SCHECHTER AND ASSOCIATES, INC.** | ) ) ) ) | |
| Plaintiff | ) ) | Civil Action No.: 05-2389 (GK) |
| v. | ) ) | Judge Gladys Kessler |
| **AGUSTAWESTLAND, INC., et al.** | ) ) ) | Next Scheduled Deadline: Status Conference, Feb. 24, 2006, 9:30 AM |
| Defendants. | ) ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS AND MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS**

# TABLE OF CONTENTS

INTRODUCTION ........................................ 1

BACKGROUND ........................................ 1

ARGUMENT ........................................ 1

I. AGUSTA FAILS TO STATE A CLAIM IN ITS ORIGINAL AND AMENDED COUNTERCLAIM FOR BREACH OF CONTRACT. ........................................ 2

II. AGUSTA'S SECOND AND THIRD ORIGINAL AND AMENDED COUNTERCLAIMS ARE DEFICIENT BECAUSE THEY FAIL TO STATE A CLAIM AND DO NOT SATISFY THE HEIGHTENED PLEADING REQUIREMENTS OF RULE 9(B). ........................................ 5

A. The Fee Terms of the Agreement Governed During the Duration of the Relationship. ........................................ 5

B. Original and Amended Counterclaims Two and Three Fail To Meet the Pleading Requirements of Rule 9(b). ........................................ 7

III. AGUSTA'S ORIGINAL AND AMENDED COUNTERCLAIM FOR BREACH OF FIDUCIARY DUTY FAILS TO STATE A CLAIM. ........................................ 10

CONCLUSION ........................................ 13

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

Anderson v. USAA Casualty Ins. Co., 221 F.R.D. 250, 255 (D.D.C. 2004) ......................9

Church of Scientology Int'l v. Eli Lilly & Co., 848 F. Supp. 1018 (D.D.C. 1994).....11, 12

* Cooper v. First Gov't Mortgage & Investors Corp., 206 F. Supp. 2d 33 (D.D.C. 2002) ................................................................................................................................4, 11

High v. McLean Fin. Corp., 659 F. Supp. 1561 (D.D.C. 1987) .........................................9

Holy Land Found. for Relief & Dev. v. Ashcroft, 219 F. Supp. 2d 57 (D.D.C. 2002) ..................................................................................................................................8

In re Burlington Coat Factory Sec. Litig., 114 F. 3d 1410, 1434 (3d Cir. 1997) .............10

OPIC v. Industria de Pesca, N.A., Inc., 920 F. Supp. 207 (D.D.C. 1996).........................10

Quijano v. Eagle Maint. Servs., Inc., 952 F. Supp. 1 (D.D.C. 1997) ..................................4

Semon v. Ledecky, 326 F. Supp. 2d 68 (D.D.C. 2004) .......................................................8

* Steele v. Isikoff, 130 F. Supp. 2d 23 (D.D.C. 2000)..................................................10, 12

T St. Dev., L.L.C. v. Dereje & Dereje, No. CIV. A. 05-524(GK), 2005 WL 3466651 (D.D.C. Dec. 19, 2005).................................................................................4

United States ex rel. Harris v. Bernad, 275 F. Supp. 2d 1 (D.D.C. 2003) ..........................8

United States v. John McShain, Inc., 258 F.2d 422 (D.C. Cir. 1958) .................................4

Zandford v. Nat'l Ass'n of Sec. Dealers, Inc., 19 F. Supp. 2d 4 (D.D.C. 1998) .................8

**STATE CASES**

Hahn v. Univ. of D.C., 789 A.2d 1252 (D.C. 2002) ...........................................................5

**FEDERAL STATUTES**

Fed. R. Civ. P. 9(b) .................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6)............................................................................................ *passim*

## INTRODUCTION

Pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure and the Court's January 25, 2006 Order, the plaintiff – Chlopak, Leonard, Schechter and Associates, Inc. ("CLS") – respectfully submits this Reply to Defendant's Opposition to Plaintiff's Motion to Dismiss Defendant's Counterclaims and Memorandum in Support of its Motion to Dismiss the First Amended Counterclaims.

## BACKGROUND

On January 9, 2006, CLS filed a Motion to Dismiss Defendant's Counterclaims.[1] In that Motion, CLS argued that Agusta's Counterclaim was deficient and should be dismissed because it failed to state a claim under Rule 12(b)(6) and failed to plead with sufficient particularity as required by Rule 9(b). On January 20, 2006, Agusta submitted a First Amended Counterclaim and, at the same time, filed a Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Dismiss. On January 25, 2006, the Court issued an Order stating that "Plaintiff need not file a new Motion to Dismiss for the Amended Counterclaim" but shall instead "file a Reply in support of its Motion which shall incorporate any new information or argument relating to the Amended Counterclaim." This is that Reply.

## ARGUMENT

In an apparent effort to address the deficiencies in its original Counterclaim, Agusta has submitted a First Amended Counterclaim that adds two factual allegations: (1) Agusta claims that CLS's alleged disclosure of confidential information about its representation of Agusta occurred in November, 2005; and (2) Agusta claims that Mr. Hill, while an employee at CLS, informed two CLS employees that CLS was over-billing Agusta. Am. Countercls. 18, 23, 30,

---

[1] For a general statement of the case, CLS refers the Court to the "Background" section of its Memorandum of Law in Support of its Motion to Dismiss Defendant's Counterclaims.

38, 40. Agusta's amendments – aimed at correcting the self-evident deficiencies in the original counterclaims – do not do the job they were intended to accomplish. They suffer from the same maladies that afflicted the original Counterclaim and, for the same reasons, should be dismissed.[2] Moreover, Agusta's sparse additions to the Counterclaim only highlight – and further expose – the fact that Agusta is unable to allege facts that would allow these claims to go forward. Even if the Court assumes, as it must, that all of Agusta's factual allegations are true, Agusta has failed to state a claim upon which relief can be granted.

Agusta's opposition is unconvincing. The pig's ear remains intact with no silk purse in sight. For one thing, Agusta – throughout its argument – improperly relies upon facts that are not contained in any of Agusta's pleadings. For another, Agusta's effort to portray purely legal issues as factual disputes is transparent and unavailing. And finally, it is remarkable that Agusta chooses not to respond to the bulk of CLS's arguments. With respect to those arguments that it does address, Agusta offers no legal authority to support bold and incorrect assertions as to the state of the law. For all the same reasons that the Court, as a matter of law, would have dismissed Agusta's original Counterclaim, it should dismiss Agusta's First Amended Counterclaim.

## I.     AGUSTA FAILS TO STATE A CLAIM IN ITS ORIGINAL AND AMENDED COUNTERCLAIM FOR BREACH OF CONTRACT.

Agusta's First Amended Counterclaim fails to state a claim for breach of contract. Even with the amendments, Agusta has not alleged any facts that support Agusta's claim that CLS disclosed information subject to the confidentiality clause of the Agreement. Rather, Agusta

---

[2] Agusta's decision to amend its counterclaims has not in any way weakened or undermined any of CLS's arguments. In fact, *all* of CLS's arguments in its original Motion to Dismiss and in the supporting Memorandum are as pertinent to the First Amended Counterclaim as to the Original and are incorporated by reference.

2

asserts – and then relies upon – several alleged "facts" that do not appear in the pleadings and then attempts to portray the core legal issue – i.e., what the Agreement actually says on this subject – as a question of fact.  The text of the confidentiality provision of the Agreement is unambiguous.  The meaning of the language is clear and plain and readily understandable.  There is no factual question here.  It is a legal issue ready for the Court to consider and ripe for resolution.

In the First Amended Counterclaim, Agusta has added only *one* new "factual" allegation to its breach of contract claim.  Agusta now alleges that in November of 2005, CLS described to a third party the nature and scope of the services it rendered to Agusta and the procedures and techniques it used to do so.  Am. Countercls. ¶ 18.  Such a "disclosure," however, is not prohibited by the Agreement.  The relevant language of the Agreement is plain for all to see and understand.  The confidentiality provision states – simply – that CLS may not disclose (i) documents and (ii) confidential information that CLS "may receive or may otherwise obtain" while providing services to Agusta.  See Agreement ¶ 4.  This is a standard confidentiality provision, drafted to protect against the disclosure of proprietary information that the client – any client – might share with CLS during the representation.  A bare statement that CLS disclosed "the procedures or techniques" that *CLS* used in representing Agusta does *not* allege that CLS disclosed (i) documents or (ii) confidential information that CLS received or obtained *from* Agusta or from some source other than Agusta in the course of CLS's work for Agusta.  Am. Countercls. ¶ 18.  To the extent that Agusta believes that CLS's alleged "disclosures" included either documents or confidential information covered by Paragraph 4 of the Agreement, it has failed to plead as much in its counterclaim.

In arguing against dismissal, Agusta improperly includes additional "facts" that are not alleged in the First Amended Counterclaim.[3] When considering whether Agusta has satisfied its burden of alleging facts sufficient to constitute a breach of Agusta's Agreement with CLS, the Court should not consider "facts" that appear in the argument but do not appear in the First Amended Counterclaim.[4] Such "facts" must not be allowed to play any role in the resolution of a challenge to the sufficiency of the underlying claim.

Agusta argues that the interpretation of the Agreement and whether Agusta authorized CLS's alleged disclosures are questions of fact. Agusta Mem. Opp. 6. With regard to the first issue, Agusta is simply wrong: the interpretation of a contract is a question of law, not fact. United States v. John McShain, Inc., 258 F.2d 422, 424-25 (D.C. Cir. 1958); Quijano v. Eagle Maint. Servs., Inc., 952 F. Supp. 1, 4 (D.D.C. 1997); see also CLS Mem. Supp. 4. As for the latter issue, whether Agusta authorized CLS to make the alleged "disclosures" is not an issue at this stage of the litigation. CLS contends only that, *as a matter of law*, Agusta has failed to plead any facts that, if true, would amount to a breach of the confidentiality provision of the Agreement. Agusta has not answered this argument, and the amendments to its breach of

---

[3] Agusta supplements its pleadings in its opposition to the motion to dismiss with the following: (i) the information that CLS disclosed in its presentation was "sensitive" and "went well beyond a general characterization of the relationship"; (ii) the PRSA Member Code of Ethics "appears to be the basis for the confidentiality clauses [sic] in the Agreement"; and (iii) "Agusta believes that CLS is a member of the PRSA." Agusta Mem. Opp. 4-6. None of this information is contained in either of Agusta's pleadings.

[4] This Court has held that relying upon facts that are not a part of the pleadings may convert the motion to dismiss into a motion for summary judgment. T St. Dev., L.L.C. v. Dereje & Dereje, No. CIV. A. 05-524(GK), 2005 WL 3466651, *3 (D.D.C. Dec. 19, 2005) (Kessler, J.). CLS believes that such a conversion would be inappropriate at this time, and therefore respectfully requests that instead, the Court simply disregard the additional factual pleadings contained in Agusta's memorandum of law. See Cooper v. First Gov't Mortgage & Investors Corp., 206 F. Supp. 2d 33, 36 (D.D.C. 2002) (in ruling on a motion to dismiss, the court "disregards all unsupported factual statements presented by the defendant").

contract counterclaim do not correct the problem. Because Agusta's breach of contract counterclaim fails to satisfy the requirements of Rule 12(b)(6), that counterclaim should be dismissed.

II. **AGUSTA'S SECOND AND THIRD ORIGINAL AND AMENDED COUNTERCLAIMS ARE DEFICIENT BECAUSE THEY FAIL TO STATE A CLAIM AND DO NOT SATISFY THE HEIGHTENED PLEADING REQUIREMENTS OF RULE 9(B).**

   A. **The Fee Terms of the Agreement Governed During the Duration of the Relationship.**

The second and third counterclaims – for unjust enrichment and intentional misrepresentation of billing statements – are fatally deficient and remain so even after the amendments. Agusta's amended counterclaims do not allege any fact that would support Agusta's claim that the fee terms of the Agreement no longer governed the CLS-Agusta relationship during the time of the alleged over-billing. If the fee terms of the Agreement remained intact during the period of CLS's work for Agusta, CLS cannot, *as a matter of law*, have over-billed Agusta for the amount alleged. See CLS Mem. Supp. 5-7. As CLS pointed out in its initial memorandum, established principles of contract law apply to this situation. The terms of CLS's Agreement with Agusta remained intact after the Agreement's expiration unless either CLS or Agusta "clearly and manifestly indicate[d] . . . that it no longer wishe[d] to continue to be bound thereby, or both parties mutually intend[ed] that the terms not survive." Hahn v. Univ. of D.C., 789 A.2d 1252, 1258 (D.C. 2002). Agusta makes no factual allegation in its pleadings that would allow a fact finder to infer or conclude that either party believed that the payment terms of the Agreement were no longer in effect. Agusta's lone allegation is that "CLS sought to renew and extend the Agreement under a new fee schedule," and that "Agusta declined to extend the Agreement." This statement does not allege – as a factual matter – that the payment terms of the initial Agreement were no longer in effect and had somehow been

5

terminated.  In fact, the First Amended Counterclaim contains no such allegation.  While Agusta has alleged that it declined to accept a new fee schedule, there is no factual allegation to support any claim that Agusta "clearly and manifestly indicate[d] that it no longer wished to continue to be bound [by the original fee terms of the original agreement]."  Am. Countercls. ¶ 10.  The terms of the Agreement are straightforward:  CLS is entitled to a fee of $60,000 per month plus expenses.  Agreement ¶¶ 3, 5.  Thus, during the ten-month period for which Agusta claims it was over-billed, CLS was entitled under the Agreement to a fee of $600,000 plus expenses.  As a matter of law, CLS could not have over-billed Agusta for the amount alleged in its second and third counterclaims.

Agusta's response to this argument is incoherent.  Agusta argues first that CLS's claim that the payment terms of the Agreement remained in effect is "contrary to Agusta's factual allegations."  Agusta Mem. Opp. 7.  But *where* are the "factual allegations" in Agusta's First Amended Counterclaim and *what* precisely are the "factual allegations" that defeat CLS's argument?  Agusta does not identify – and CLS is unable to locate – any such allegations that support this statement.  Agusta then resorts to the tactic of arguing "facts" that are not contained in the underlying counterclaim.[5]  Such "facts" are irrelevant as a matter of law.  Finally, Agusta asserts that the issue of whether the parties *intended* for the payment terms to survive is "fact intensive" and cannot be decided in the context of a motion to dismiss.  Id. at 8.  Agusta's effort to transform a purely legal question into a factual dispute comes as no surprise.  CLS's argument in support of the motion to dismiss has nothing whatsoever to do with the parties' intentions with respect to the continued applicability of the underlying Agreement.  It has everything to do with

---

[5] Agusta states that "CLS did not invoice $60,000 per month after the expiration of the initial contract period."  Agusta Mem. Opp. 7.  CLS has scoured both the counterclaims and the amended counterclaims to find any such allegation, to no avail.

6

whether, as a matter of law, those terms continued to govern the relationship between the parties in the absence of any factual allegation that the parties intended for the terms of the Agreement to change. CLS has argued that, *as a matter of law and based upon the allegations set forth in Agusta's own pleadings,* the payment terms of the Agreement remained in effect. If that legal conclusion is correct, CLS could not have over-billed Agusta – as a matter of law – in the amount that is alleged. See CLS Mem. Supp. 5-7. Agusta's amendment does not address this insufficiency in its pleadings. The Court should dismiss the amended claims of unjust enrichment and intentional misrepresentation of billing statements because, under Rule 12(b)(6), they fail to state a claim.

### B. Original and Amended Counterclaims Two and Three Fail To Meet the Pleading Requirements of Rule 9(b).

In addition, Agusta's second and third counterclaims are deficient – even as amended – because they do not satisfy the requirement of particularity set forth in Rule 9(b). In its effort to preserve its amended counterclaims, Agusta alleges that CLS submitted billing statements that were "fraudulent." See Agusta Mem. Opp. 1, 9. In making that argument, Agusta concedes that the particularity requirements of Rule 9(b) apply to Agusta's counterclaims for unjust enrichment and intentional misrepresentation of billing statements. Nor does Agusta make any assertion in its Opposition that, for some reason, Rule 9(b) does not apply. CLS accordingly proceeds on the assumption that Rule 9(b) does apply, and the Court should view CLS's argument – that these two counterclaims are pled with insufficient particularity – through the prism of Rule 9(b).

Agusta ignores Rule 9(b) and claims instead that, because of the circumstances of the Agusta-CLS relationship, a more relaxed standard should apply. Whatever that standard might be, says Agusta, its pleadings are adequate. More specifically, Agusta asserts that, "Rule 9(b) does not require such a degree of specificity . . . where the duration of the relationship was

7

relatively brief (13 months) and the number of CLS principals involved and responsible for billing was relatively small (two or three)." Agusta Mem. Opp. 9. But there is absolutely no authority to support Agusta's statement of the law. Agusta does not cite, and CLS is unable to locate, a single case – or any other kind of legal authority, for that matter – to support this novel statement of the law. The only case that Agusta cites stands for a proposition that would actually cut *against* Agusta under the circumstances of this case. Id., citing United States ex rel. Harris v. Bernad, 275 F. Supp. 2d 1, 8 (D.D.C. 2003) (the court allowed a slightly relaxed standard under Rule 9(b) because *it was a securities case where the alleged fraud consisted of a complex scheme and "lasted for a number of years"*) (emphasis added). Contrary to Agusta's unsupported theory that this case qualifies for some exception to the applicability of Rule 9(b), it is settled law that Rule 9(b) requires that a party plead "the time, place and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud." Zandford v. Nat'l Ass'n of Sec. Dealers, Inc., 19 F. Supp. 2d 4, 9 (D.D.C. 1998) (Kessler, J.) (quotations omitted). As CLS has previously pointed out, this standard requires that Agusta specifically identify the "who," "what," "where" and "when" in the fraudulent behavior alleged. See id.; CLS Mem. Supp. 8-9.[6]

Even after amending its counterclaims, Agusta's pleadings still fall woefully short of meeting Rule 9(b)'s requirements. The sole new addition to its counterclaim is this: "Mr. Hill brought to the attention of Mr. Peter Schechter, and Mr. Michael Fox of CLS that the firm was

---

[6] Agusta argues that the Rule requires *nothing* beyond Rule 8's requirement that a complaint provide "a short and plain statement of the claim." See Agusta Mem. Opp. 8-10. This analysis renders Rule 9(b) meaningless, and is obviously contrary to settled law. This is confirmed by the fact that the two cases Agusta cites for this proposition provide no legal support for the argument. See Holy Land Found. for Relief & Dev. v. Ashcroft, 219 F. Supp. 2d 57, 75 (D.D.C. 2002) (Kessler, J.) (Rule 9(b) is neither cited nor discussed), aff'd, 333 F. 3d 156 (D.C. Cir. 2003); Semon v. Ledecky, 326 F. Supp. 2d 68, 74 (D.D.C. 2004) (compared to Rule 8, Rule 9(b) requires parties to plead "a higher degree" of notice regarding fraud claims).

8

over-billing Agusta for services rendered on a month-to-month basis." Am. Countercls. ¶ 30; Agusta Mem. Opp. 9.  Although these allegations add new detail to a conversation that Agusta alleges took place at CLS, they provide no information about CLS's alleged "knowing" and "intentional" misrepresentation of the *services* it provided to Agusta on an unidentified billing statement.[7]  See Am. Countercls. ¶¶ 22, 29 ("Based on a review of the *billing invoices* . . . CLS overbilled Agusta."), 31 ("CLS intentionally misrepresented to Agusta that CLS performed service *as indicated on the statements* submitted to Agusta that CLS did not, in fact, provide.") (emphasis added).  Agusta's First Amended Counterclaim does not provide the necessary information, and CLS is still left in the dark as to the details of the fraud that Agusta is alleging: Who was the person at CLS who "knowingly" and "intentionally" made misrepresentations on billing statements?  What specific misrepresentations were made in the billing statements?  Which services described on the billing statements were described but not provided?  Where, specifically, were the misrepresentations made?  When did CLS issue these fraudulent billing statements?  See Anderson v. USAA Casualty Ins. Co., 221 F.R.D. 250, 255 (D.D.C. 2004) (dismissing plaintiff's negligent misrepresentation claim for failure to satisfy Rule 9(b) because the complaint "leaves [the defendant] clueless as to the time, place and content of its alleged misrepresentations").  Agusta has failed to satisfy its burden of "put[ting] a defendant on notice of precisely what he or she must defend against," as it must to survive Rule 9(b) scrutiny.  High v. McLean Fin. Corp., 659 F. Supp. 1561, 1566 (D.D.C. 1987); see CLS Mem. Supp. 7-10.  The counterclaims for unjust enrichment and intentional misrepresentation of billing statements should accordingly be dismissed.

---

[7] This factual allegation – i.e., that CLS, in its billing statement, intentionally misrepresented the services it performed – is the basis for Agusta's claims of unjust enrichment and intentional misrepresentation of billing statement

Agusta argues that, even if this Court finds that it has failed to meet the pleading requirements of Rule 9(b), it is entitled to amend its pleadings yet again. Agusta Mem. Opp. 10. Agusta's failure to allege – with the necessary particularity – the facts and details of the fraudulent billing statements demonstrates that Agusta is unable to point to *any* specific evidence to support its allegation that CLS intentionally misrepresented its services in its billing statements. Agusta should not be given a third bite of the apple. See In re Burlington Coat Factory Sec. Litig., 114 F. 3d 1410, 1434 (3d Cir. 1997) (discussing the general principle that courts ordinarily deny leave to amend when amendment is futile and the pleader could never meet Rule 9(b)'s pleading standards).

### III. AGUSTA'S ORIGINAL AND AMENDED COUNTERCLAIM FOR BREACH OF FIDUCIARY DUTY FAILS TO STATE A CLAIM.

Agusta's First Amended Counterclaim alleges that CLS breached its fiduciary duty to Agusta. Even in its amended form, the counterclaim fails to allege facts sufficient to establish the existence of a fiduciary relationship, and it too should be dismissed under Rule 12(b)(6) for failure to state a claim. See CLS Mem. Supp. 10-13. The Agusta-CLS relationship – which is an arms-length relationship between client and service provider – is not one that is a traditional fiduciary relationship. Accordingly, to state a claim for breach of fiduciary duty, the pleader must include factual allegations – beyond conclusory legal statements – that describe special circumstances that gave rise to a fiduciary duty. See CLS Mem. Supp. 10-12; Steele v. Isikoff, 130 F. Supp. 2d 23, 36-37 (D.D.C. 2000) (holding that, to survive a motion to dismiss, the plaintiff must allege something beyond a mere legal conclusion to suggest that a fiduciary duty was born out of an arms-length business relationship); OPIC v. Industria de Pesca, N.A., Inc., 920 F. Supp. 207, 210 (D.D.C. 1996) (dismissing a breach of fiduciary duty claim where the

10

party failed to allege the basis for finding a fiduciary relationship because it did not identify "special circumstances" that would operate to create a fiduciary obligation).

Instead of alleging facts that might support the existence of a fiduciary relationship, however, Agusta simply lists a series of allegations as to how CLS violated the nonexistent fiduciary duty.[8] See Am. Countercls. ¶¶ 38-40. Agusta bases its counterclaim for breach of fiduciary duty on (i) the fact that Agusta was a client of CLS – a fact not in dispute – and (ii) the existence of an Agreement between the parties – which, similarly, is not in dispute. Id. ¶¶ 36-37. In response to CLS's claim that the fiduciary duty counterclaim is deficient as a matter of law, Agusta's only defense is that "Agusta need not plead more." Agusta Mem. Opp. 11. This is a misstatement of settled law. As CLS pointed out in its initial memorandum, Agusta's factual allegations – even as amended – fall far short of creating a reasonable inference that a fiduciary relationship existed between the parties. Without alleging such a factual basis, the counterclaim cannot survive a motion to dismiss.

Agusta's discussion of Church of Scientology and Steele highlights Agusta's fundamental misunderstanding of CLS's arguments. Agusta reports the basic facts of each case and concludes, "The factual circumstances of this case . . . squarely fit those of Church of Scientology Int'l." Agusta Mem. Opp. 12. In Church of Scientology, the Court considered whether there was sufficient factual evidence – not in dispute – to establish the existence of a fiduciary relationship *in the summary judgment phase of the case*. Church of Scientology Int'l v.

---

[8] Once again, Agusta alleges facts that do not appear in the body of the First Amended Counterclaim. Agusta argues, for example, that it sought representation by CLS for matters related to a "sensitive" government procurement contract, and that the confidentiality provision of the Agreement was "central to entrusting CLS with the specific task contemplated by the relationship." Agusta Mem. Opp. 10, 11. As these facts are absent from the pleadings, they are not relevant in considering the motion to dismiss. Cooper v. First Gov't Mortgage & Investors Corp., 206 F. Supp. 2d 33, 36 (D.D.C. 2002).

11

Eli Lilly & Co., 848 F. Supp. 1018, 1028 (D.D.C. 1994).  The opinion in Church of Scientology has absolutely nothing to do with the sufficiency of the *pleadings*, and it is a mystery why Agusta would think it had any applicability to the issues raised by CLS's motion to dismiss under Rule 12(b)(6).  Steele, on the other hand, was a case in which the Court *did* address the pleading requirements for a breach of fiduciary duty claim.  There, the Court held that – as CLS discussed in its initial memorandum – to survive a motion to dismiss, the plaintiff must allege sufficient facts, beyond a mere legal conclusion, to suggest that, "through the past history of the relationship and their conduct, [the parties] extended the relationship *beyond* the limits of the contractual obligations."  Steele, 130 F. Supp. 2d at 36-37 (emphasis added).  Alleging the existence of something *beyond* the limits of the contractual obligation is necessary.  Alleging the existence of a contractual relationship is insufficient.  Agusta has made no factual allegation – even in its First Amended Counterclaim – that would support its claim that CLS became a fiduciary when it signed its Agreement with Agusta.  As a matter of law, Agusta has failed to state a claim for breach of fiduciary duty, and the counterclaim should be dismissed.

## **CONCLUSION**

For all the foregoing reasons, CLS respectfully requests that the Court dismiss Agusta's Counterclaims and First Amended Counterclaims with prejudice.

                                                Respectfully Submitted,

Dated: February 3, 2006            WILLIAMS & CONNOLLY LLP


                                                By: /s/ Gregory B. Craig
                                                    Gregory B. Craig (D.C. Bar 164640)

                                              725 Twelfth Street, N.W.
                                              Washington, DC 20005
                                              Telephone: (202) 434-5000
                                              Fax: (202) 434-5029

                                              Attorney for Plaintiff, Chlopak, Leonard,
                                              Schechter and Associates, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of February, 2006, I caused to be served the foregoing Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Dismiss Defendant's Counterclaims and Memorandum in Support of its Motion to Dismiss Defendant's First Amended Counterclaims upon all counsel of record, a copy thereof by the Court's Electronic Case Filing system:

>David A. Holzworth
>Lepon Holzworth & Kato PLLC
>1225 19th Street, N.W., #500
>Washington, D.C. 20036
>Tel: (202) 857-0242
>Fax: (202) 857-0189
>
>*Attorney for Defendants*

By:   /s/ Gregory B. Craig
          Gregory B. Craig