UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHLOPAK, LEONARD,<br>SCHECHTER AND ASSOCIATES, INC.<br>    Plaintiff and<br>    Counterclaim Defendant,<br><br>v.<br><br>AGUSTAWESTLAND, INC.<br>    Defendant and<br>    Counterclaim Plaintiff,<br><br>And<br><br>DANIEL G. HILL<br>    Defendant. | Civil Docket No.: 1:05-cv-02389-GK<br>Judge Gladys Kessler<br>Next Scheduled Event: Status Conference<br>February 24, 2006, 9:30 AM |

DEFENDANT/COUNTERCLAIM PLAINTIFF'S SURREPLY TO
PLAINTIFF/COUNTERCLAIM DEFENDANT'S REPLY TO
DEFENDANT/COUNTERCLAIM PLAINTIFF'S OPPOSITION TO
PLAINTIFF/COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS
DEFENDANT/COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES............................................................................. ii

INTRODUCTION ..........................................…........................................... 1

ARGUMENT .................................................................................................. 1

    I.    AGUSTA STATES A CLAIM IN ITS ORIGINAL AND AMENDED COUNTERCLAIM FOR BREACH OF CONTRACT..................... 1

    II.    AGUSTA'S SECOND AND THIRD CLAIMS OF THE ORIGINAL AND AMENDED COUNTERCLAIM STATE A CLAIM, AND AGUSTA'S INTENTIONAL MISREPRESENTATION CLAIM SATISFIES THE PLEADING REQUIREMENT OF RULE 9(b)..... 4

        A.    Agusta Pled That the Fee Terms of the Agreement Expired by the Express Language of the Agreement............ 4

        B.    Agusta Has Met Rule 9(b) Requirements for Pleading Fraud…………………………………………….. 5

    III.    AGUSTA HAS STATED A CLAIM FOR BREACH OF FIDUCIARY DUTY………………………………………………… 6

    CONCLUSION………………………………………………………….. 7

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018 (D.D.C. 1994)... 6, 7

*Harbor Ins. Co., v. Schnabel Found. Co., Inc.*,
  946 F.2d 930 (D.C. Cir. 1991).................................................. 2

*Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 2d 182 (D.D.C. 2001)................. 3

*Phillips v. Bureau of Prisons*, 591 F.2d 966 (D.C. Cir. 1979)..................... 3

*Ry Labor Executives Ass'n v. Nat'l R.R. Passenger Corp.*,
  691 F. Supp. 1516 (D.D.C. 1988)............................................ 4

*Steele v. Isikoff*, 130 F. Supp. 2d 23 (D.D.C. 2000)............................. 6, 7

*U.S. v. Bouchey*, 860 F. Supp. 890 (D.D.C. 1994)................................ 4, 6

*U.S. ex rel. Harris v. Bernad*, 275 F. Supp. 2d 1 (D.D.C. 2003)................. 3

*Zandford v. Nat'l Ass'n of Sec. Dealers, Inc*, 19 F. Supp. 2d 4 (D.D.C. 1998)...... 5

## STATE CASES

*Hahn v. Univ. of D.C.*, 789 A.2d 1252 (D.C. 2002)............................... 5

*Howard Univ. v. Best*, 484 A.2d 958 (D.C. 1984)................................. 2

*Intercounty Const. Corp. v. D.C.*, 443 A.2d 29 (D.C. 1982)....................... 2

*Rastall v. CSX Transp., Inc.*, 697 A.2d 46 (D.C. 1997).......................... 2

*Sagalyn v. Found. for Pres. of Historic Georgetown*,
  691 A.2d 107 (D.C. 1997).................................................. 2

## STATUTES

Fed. R. Civ. P. 9(b).......................................................... 4-6

Fed. R. Civ. P. 12(b)(6)...................................................... 3

## MISCELLANEOUS

Public Relations Society of America, PRSA Member Code of Ethics
(Public Relations Society of America 2000).................................................... 3

**INTRODUCTION**

Chlopak, Leonard, Schechter and Associates, Inc. (CLS), in its 17-page reply brief, rehashed the same failed arguments advanced in its initial 19-page memorandum in support of its motion to dismiss AgustaWestland, Inc. (Agusta)'s counterclaim. CLS's feigned ignorance of the facts alleged as to the place, time, contents, and persons responsible for billing misrepresentations and breach of contractual and fiduciary duties to maintain confidences, has worn thin with the retelling. The motion to dismiss should be denied.

**ARGUMENT**

**I.   AGUSTA STATES A CLAIM IN ITS ORIGINAL AND AMENDED COUNTERCLAIM FOR BREACH OF CONTRACT.**

CLS fails to improve upon the insufficient argument made in its initial memorandum in support of its motion to dismiss Agusta's counterclaim for breach of contract. CLS Br. at 3. CLS again relies on a strained reading of a portion of the "text" of the confidentiality provisions, but ignores Agusta's factual allegations of the ***context***: (1) Stephen Moss's explicit requests for complete confidentiality as to the nature and scope of CLS's services at the time the three-month contract was signed; (2) the critical language of the confidentiality provision requiring Agusta's express prior approval for any disclosure; and (3) the failure of CLS to even notify, much less obtain approval, for use of Agusta's logo and case study for the purpose of soliciting other clients. *See,* Am. Countercl. ¶¶ 8, 13, 17-19.

CLS then proceeds to read into the contract an extremely narrow characterization of information that would be covered by "a standard confidentiality provision." CLS Reply Br. at 3. In contrast, the courts start with a determination of what a reasonable person in

1

the position of the parties would have thought the disputed language meant. *See, Intercounty Const. Corp. v. D.C.*, 443 A.2d 29, 32 (D.C. 1982) *cited in Sagalyn v. Found. for Pres. of Historic Georgetown*, 691 A.2d 107, 111 (D.C. 1997). A reasonable person is: (1) presumed to know the circumstances surrounding the making of the contract; and (2) bound by the usages of the term which either party knows or has reason to know and the course of conduct of the parties. *Sagalyn*, 691 A.2d at 111-12. Agusta has pled that Stephen Moss communicated and emphasized to CLS that the nature and scope of CLS's services was extremely sensitive and confidential information. *See,* Am. Countercl. ¶8. Under the paragraph 4 of the Agreement, CLS must not disclose or use any confidential information that "CLS may receive or may ***otherwise obtain***." (emphasis added). A factual issue arises if a contract is susceptible to more than one interpretation. Factual disputes may not be resolved through a motion to dismiss. *See, Harbor Ins. Co., v. Schnabel Found. Co., Inc.*, 946 F.2d 930, 934 (D.C. Cir. 1991), *citing Howard Univ. v. Best*, 484 A.2d 958, 966-67 (D.C. 1984) (The resolution of the ambiguity [in a contract] under District of Columbia law is for the trier of fact); *Rastall v. CSX Transp., Inc.*, 697 A.2d 46, 51 (D.C. 1997) (An ambiguity in a contract is for the factfinder to resolve.)

CLS plainly errs in asserting that Agusta must plead that "CLS's alleged 'disclosures' included either documents or confidential information covered by Paragraph 4 of the Agreement." CLS Reply Br. at 3.[1] Agusta has alleged a breach and specified that the breach consisted of a case study, including methods and processes used to achieve specific objectives for Agusta. Nothing more is required. Agusta's breach of contract

---

[1] If Agusta were to allege specific disclosures in a complaint publicly available on the Court's docket, Agusta would be destroying the confidentiality it is trying to protect.

2

claim is not subject to the standards of specificity for a criminal indictment or even fraud. It is enough that Agusta has alleged a breach of confidentiality.

CLS accuses Agusta of including "additional 'facts' that are not alleged in the First Amended Counterclaim." CLS Reply Br. at 4. These so-called additional facts appear to be related to the characterization of CLS's disclosure of confidential information, a reference to the PRSA Member Code of Ethics, and a footnote that Agusta believes CLS is a member of the PRSA. CLS Reply Br. at 4. Agusta has alleged that the nature and scope of CLS's services to Agusta was important confidential information subject to the confidentiality provision of the Agreement. *See,* Am. Countercl. ¶8. CLS's presentation disclosed in significant detail the actual services rendered to Agusta and the ways in which the services were rendered. It went beyond the general characterization of the relationship. *See,* Am. Countercl. ¶13. The Court, in reviewing a Rule 12(b)(6) motion to dismiss, may consider facts of which judicial notice may be taken and documents that are both referenced in the Complaint and central to the Plaintiff's claim. *See, U.S. ex rel. Harris v. Bernad,* 275 F. Supp. 2d 1, 5 (D.D.C. 2003), *citing Phillips v. Bureau of Prisons,* 591 F.2d 966, 969 (D.C. Cir. 1979) and *Lipton v. MCI Worldcom, Inc.,* 135 F. Supp. 2d 182,186 (D.D.C. 2001). Judicial notice may properly be taken of the PRSA Member Code of Ethics as a standard of conduct that bears on the meaning of the confidentiality provisions in the Agusta and Hill contracts. In any event, neither the existence of the PRSA Member Code of Ethics nor CLS's membership in PRSA need be alleged in the counterclaim for Agusta to survive a motion to dismiss.

CLS also accuses Agusta of presenting the interpretation of a contract as a question of fact. CLS Reply Br. at 4. Contrary to CLS's dogmatic assertion, the interpretation of a

contract often raises issues of fact or mixed issues of fact and law. Those factual issues can arise when, as here: (1) terms of the contract may require reference to the customs and usages of the business or trade; (2) the conduct of the parties need be examined to determine whether certain terms of the contract expired or were continued by consent; or (3) a provision of the contract imports, or needs to be construed in light of, an industry standard of performance. *See, Ry Labor Executives Ass'n v. Nat'l R.R. Passenger Corp.*, 691 F. Supp. 1516, 1519 (D.D.C. 1988) (It is a question of fact whether a practice or custom has become part of the contract by implication through long-standing observance or acquiescence of the parties.)

## II. AGUSTA'S SECOND AND THIRD CLAIMS OF THE ORIGINAL AND AMENDED COUNTERCLAIM STATE A CLAIM, AND AGUSTA'S INTENTIONAL MISREPRESENTATION CLAIM SATISFIES THE PLEADING REQUIREMENT OF RULE 9(b).

### A. Agusta Pled That the Fee Terms of the Agreement Expired by the Express Language of the Agreement.

CLS continues to argue that Agusta's unjust enrichment claim is subject to the heightened pleading requirements of Rule 9(b). CLS Reply Br. at 5. As a matter of law, Agusta is not required to meet Rule 9(b) requirements for its unjust enrichment claim merely because some of the same facts support Agusta's intentional misrepresentation claim. Unjust enrichment is a quasi-contract claim. It is not subject to the same Rule 9(b) pleading standards as fraud and misrepresentation. *See, e.g., U.S. v. Bouchey*, 860 F. Supp. 890, 894 (D.D.C. 1994) (The Court held, without applying Rule 9(b) standards, that a claim of unjust enrichment was sufficiently alleged where the Plaintiff pled that the Defendant was unjustly enriched to the detriment of the Plaintiff by charging inflated rates for consulting services.)

CLS then rehashes its argument that "as a matter of law" the $60,000 per month billing arrangement under the three-month Agreement automatically carried over to the remaining ten months of the relationship. CLS Br. at 5. The case law that CLS cites requires a finding of fact, properly made at trial or after discovery upon a motion for summary judgment, that either CLS or Agusta "clearly and manifestly" indicated that the terms were no longer binding. CLS Reply Br. at 5, citing *Hahn v. Univ. of D.C.*, 789 A.2d 1252, 1258 (D.C. 2002). The case does not establish a pleading requirement. At most, it creates a burden of proof that can be met or not at a later stage in the proceedings. A fair inference that Agusta clearly and manifestly indicated that it did not intend to be bound by the payment terms of the three-month Agreement may be drawn from Agusta's factual allegation that Agusta declined to renew and extend the Agreement. In addition, Agusta alleges that it paid $553,800 to CLS for ten months following the expiration of the three-month Agreement. *See, e.g.* Am. Countercl. ¶21. CLS claims that it was due $600,000. An inference may be drawn that CLS also conceded that it was not owed $60,000 per month regardless of whether it did any work to earn the money. The pleading is more than adequate. CLS is, once again, arguing with a strawman and ignoring the facts alleged.

**B. Agusta Has Met Rule 9(b) Requirements for Pleading Fraud.**

Agusta's First Amended Counterclaim alleges "the time, place and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud." CLS Reply Br. at 8, citing *Zandford v. Nat'l Ass'n of Sec. Dealers, Inc*, 19 F. Supp. 2d 4, 9 (D.D.C. 1998) (Kessler J.). In order to comply with Rule 9(b), a complaint need not allege with specificity every element of its cause of action *if the complaint contains allegations from which an inference may be drawn that evidence on*

5

***the essential elements will be produced***. *See, Bouchey,* 860 F. Supp. at 893. (emphasis added). The Plaintiff in *Bouchey* pled that: (1) Defendants defrauded the government beginning in early 1988 and continuing until May 1990; (2) invoices and payments integral to the alleged scheme were processed in Washington, DC; and (3) invoices resulted in overcharges of $120,000 that were paid and divided among the Defendants. The Court held that the specificity requirement of Rule 9(b) was met. *See, id.* Agusta has alleged ten months – instead of 24 months – of false billing statements, an undisclosed and unearned finder's fee, the money billed and unearned by CLS, and knowledge by certain CLS partners of the misrepresentation on billing statements. *See,* Am. Countercl. ¶¶28-30, 34, 39. Nothing more need be alleged.

### III.     AGUSTA HAS STATED A CLAIM FOR BREACH OF FIDUCIARY DUTY.

CLS attempts to distinguish *Church of Scientology Int'l v. Eli Lilly & Co.,* 848 F. Supp. 1018 (D.D.C. 1994), on the grounds that the court reviewed and applied the law of the District of Columbia on the formation of a fiduciary relationship in the context of denying a summary judgment motion against the proponent of the relationship, rather than in the context of a motion to dismiss. CLS Reply Br. at 11. One wonders how that distinction makes a difference. CLS undertook to be an agent for Agusta, and specifically undertook the duty to protect confidences entrusted to it by Agusta. That relationship has been alleged. CLS seems to argue that the inclusion of the duty to maintain confidences in the contractual agreement somehow relieves CLS of handling those confidences as a fiduciary. CLS has cited no case law that supports such an odd result.

CLS again relies on *Steele v. Isikoff,* 130 F. Supp. 2d 23 (D.D.C. 2000) as the basis for the absence of fiduciary relationship in our case. *Steele,* however, is about a

6

relationship between a reporter and his/her source. In *Steele,* the Plaintiff's contact with the Defendant reporter was limited to several short telephone calls and one face-to-face meeting. The Court in *Steele* focused on this limited interaction. *See, Steele,* 130 F. Supp. 2d at 37. In contrast, the Agusta-CLS consultant-client relationship lasted for 13 months and the confidentiality provisions expressly continued in force after the expiration of the three-month Agreement. The consultant-client relationship "spanned over two and one half years and entailed the performance of 'substantial services' to the client" in *Church of Scientology Int'l. Id.*

*Church of Scientology Int'l* held that a fiduciary relationship exists where one party "is under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation." *See Church of Scientology Int'l,* 848 F. Supp. at 1028, *citing* Restatement (Second) Torts § 874. Agusta alleged that: (1) CLS was a public relations consulting company; (2) Agusta retained CLS to obtain professional consulting services on strategic communications matters in connection with one or more government procurement contracts; and (3) Agusta emphasized to CLS the importance of strict confidentiality on the nature and scope of the services rendered by CLS. *See,* Am. Countercl. ¶¶3, 6, 8, 36. The relationship between CLS and Agusta was not a mere arms-length business relationship as in the case of sale of goods. Agusta's pleadings sufficiently describe the existence of the fiduciary relationship. After all, a plaintiff in a legal malpractice lawsuit need not plead every aspect of attorney-client relationship to plead the existence of a fiduciary relationship.

**CONCLUSION**

For the foregoing reasons, the CLS' Motion to Dismiss Defendant/Counterclaim

7

Plaintiff AgustWestland, Inc.'s Counterclaim should be denied.

Respectfully submitted,

By: _____/s/ David A. Holzworth_____
David A. Holzworth (D.C. Bar 322966)
Hiromi Maruyama (D.C. Bar 484098)
LEPON HOLZWORTH & KATO PLLC
1225 19th Street, N.W., #500
Washington, D.C. 20036
Tel: (202) 857-0242
Fax:(202) 857-0189

Counsel for Defendant/Counterclaim Plaintiff

Date:    February 16, 2006

8

CERTIFICATE OF SERVICE

I hereby certify that the foregoing Defendant/ Counterclaim Plaintiff's Surreply was filed electronically with the Clerk of the Court through the Electronic Case Filing System on February 16, 2006, and that the Court's Electronic Case Filing System will send a Notice of Electronic Filing to the following:

> Gregory B. Craig, Esq.
> Williams & Connolly, LLP
> 725 12th Street, N.W.,
> Washington, DC 20005
>
> Counsel for Plaintiff and Counterclaim Defendant

                              /s/ David A. Holzworth
David A. Holzworth
LEPON HOLZWORTH & KATO, PLLC
1225 19th Street, NW, Suite 500
Washington, DC 20036
Tel: 202-857-0242