**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHLOPAK, LEONARD, SCHECHTER AND ASSOCIATES, INC. | ) ) ) |
| Plaintiff | ) ) Civil Action No.: 05-2389 (GK) |
| v. | ) ) Judge Gladys Kessler ) |
| AGUSTAWESTLAND, INC., et al. | ) Next Scheduled Deadline: ) Requests for Admission |
| Defendants. | ) June 9, 2006 ) |

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1.      Chlopak, Leonard, Schechter and Associates, Inc. ("CLS") brings this civil action for breach of contract, tortious interference with a contract, civil conspiracy, and **civil fraud** against CLS's former client, AgustaWestland Inc. ("Agusta"), **its newly formed parent company, AgustaWestland North America, Inc. ("AWNA")**, and CLS's former employee, Daniel G. Hill ("Mr. Hill"). **Further, CLS brings this civil action for breach of the duty of loyalty against Mr. Hill.**

2.      This action arises out of Mr. Hill's departure from his employment at CLS and his subsequent employment at **AWNA**.

3.      By employing Mr. Hill, **Agusta and/or AWNA** have breached the anti-poaching covenant of **Agusta's** February 12, 2004 Agreement with CLS.

4.      By working as an employee for **AWNA**, Mr. Hill is in violation of the Non-Disclosure and Non-Competition Agreement executed by Mr. Hill, **effective as of** April 1, 2002, in favor of CLS.

5.      By inducing Mr. Hill to breach the non-competition covenant of his agreement with CLS, **Agusta and/or AWNA** have tortiously interfered with the agreement between Mr. Hill and CLS.

6.      By inducing **Agusta and/or AWNA** to breach the anti-poaching covenant of **Agusta's** agreement with CLS, Mr. Hill has tortiously interfered with the agreement between Agusta and CLS.

7.      By conspiring to enter into a prohibited employer-employee relationship with knowledge that each party was subject to a restrictive agreement with CLS, Mr. Hill and **Agusta and/or AWNA** engaged in a civil conspiracy.

8.      **By continuing to work for and on behalf of, and to accept salary and fees from CLS while at the same time secretly negotiating, accepting employment with and receiving salary from Agusta and/or AWNA, Mr. Hill breached his duty of loyalty to CLS.**

9.      **By knowingly and intentionally concealing his offer, acceptance and subsequent employment at AWNA, by secretly working for AWNA while pretending to be an employee of CLS, and by falsely portraying himself as a loyal employee of CLS while actually being in the pay of AWNA, Mr. Hill committed civil fraud against CLS.**

10.     **By knowingly and intentionally concealing from CLS the fact that it had offered employment to and was paying a salary to Mr. Hill while Mr. Hill still worked for CLS, Agusta and/or AWNA committed civil fraud against CLS.**

## THE PARTIES

11.     Plaintiff CLS is a corporation organized under the laws of the District of Columbia with its principal place of business in the District of Columbia.  CLS is in the business of performing communications and marketing services including public relations, advertising, public affairs issue management, research and lobbying on behalf of its clients.

12.     Defendant Agusta is a corporation organized under the laws of the State of Delaware with its principal place of business in the Commonwealth of Virginia. Agusta is in the business of designing, manufacturing and marketing helicopters, and is a former client of CLS.

13.     **Defendant AWNA is a corporation organized under the laws of the State of Delaware with its principal place of business in the Commonwealth of Virginia.**

14.     Defendant Mr. Hill is a resident and citizen of the Commonwealth of Virginia and a former employee of CLS.  Mr. Hill is currently employed at **AWNA**.

## JURISDICTION AND VENUE

15.     **This Court has jurisdiction over the defendants pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $100,000 and there is diversity of citizenship between CLS and defendants.  This Court also has supplemental jurisdiction under 28 U.S.C. § 1367.**

16.     **Venue is proper under 28 U.S.C. § 1391(a).**

## FACTS

3

17.    CLS is in the business of performing communications and marketing services including public relations, advertising, public affairs issue management, research and lobbying on behalf of its clients.

18.    In an effort to protect its own trade secrets and proprietary business methods as well as its clients' confidences, CLS requires its employees to execute a Non-Disclosure and Non-Competition Agreement (the "Agreement"), barring them from disclosing or making available any confidential and proprietary information made known to them during the course of their employment.

19.    The Agreement further bars employees from soliciting or handling "the event marketing, public relations, advertising, sales promotion, market research or government relations business" of any current CLS client or former CLS client who had been a client during the twelve months prior to the employee's termination.

20.    In a further effort to protect its clients and itself, CLS enters into contracts with its clients that prohibit the client from employing or offering employment to a CLS employee.  This prohibition extends twelve months after the end of an employee's affiliation with CLS, and for twelve months after a client has terminated its contract with CLS.

21.    Mr. Hill became an employee of CLS on April 1, 2002.

22.    Mr. Hill executed a Non-Disclosure and Non-Competition Agreement (the "Hill Agreement") with CLS **effective as of April 1, 2002**.  (A copy of the agreement between Mr. Hill and CLS is attached hereto as Exhibit A.)

23.    The Hill Agreement provides that for a period of twelve months from the date of his termination, Mr. Hill shall not "solicit or handle . . . on behalf of any other person, firm or corporation, the event marketing, public relations, advertising, sales promotion, market research or government relations business of any person or entity which is a client of [CLS] or has been a client of [CLS] during the twelve (12) month period prior to the date of the termination of employment with [CLS]." Exhibit A, ¶ 2.

24.    The Hill Agreement provides that CLS will be irreparably harmed should Mr. Hill violate either the covenant not to compete or the non-disclosure covenant, and that in the case of a breach or attempted breach, "a remedy at law for any breach or attempted breach of [the Agreement] will be inadequate, and [Mr. Hill agrees] that [CLS] shall be entitled to exercise all remedies available to it, including specific performance and injunctive and other equitable relief."  Exhibit A, ¶ 4.

25.    Agusta became a client of CLS in February, 2004.

26.    On February 13, 2004, Agusta entered into an Agreement (the "Agusta Agreement") with CLS to provide the terms of their business relationship.  (A copy of the Agusta Agreement is attached as Exhibit B.)

27.    The Agusta Agreement provides that Agusta will not "offer employment to, or employ, a CLS employee for its own or another's benefit, either directly or through affiliates, subsidiaries, agents, sub-contractors or other related parties, either while the employee is employed by CLS, or for a period of one year after the employee ceases to be employed by CLS."  Exhibit B, ¶ 8.

5

28.     The Agusta Agreement further provides that, should CLS or Agusta hire an employee of the other as prohibited by the agreement and the above provision be counter to employment laws, "the employing party agrees to pay the other, simultaneously with such employment, an amount equal to 1.5 times the employee's total annual compensation in respect of the prior calendar year." Exhibit B, ¶ 8.

29.     When Agusta became a client, **CLS assigned** Mr. Hill to work with Agusta. Using CLS's resources, following CLS's practices and employing CLS's business methods, Mr. Hill represented Agusta. Having learned the secrets of CLS's success and benefited from training from and experience working with CLS personnel, Mr. Hill's departure means that CLS has lost time and effort it invested in Mr. Hill's training and preparation. Agusta's **and/or AWNA's** decision to employ Mr. Hill harms CLS because (1) CLS has lost an employee – Dan Hill – that CLS has trained and prepared; and (2) Agusta **and/or AWNA** have access – through Dan Hill – to CLS's expertise and experience and to CLS's services without having to compensate CLS.

30.     **During his employment with CLS, Mr. Hill was an agent for CLS. CLS relied upon Mr. Hill to represent CLS, to manage the Agusta account, and to negotiate on CLS's behalf. These negotiations included discussions about fees and about the scope of the representation. CLS depended upon Mr. Hill to maintain the day-to-day relationship with Agusta.**

31.     **In late 2004, Agusta implemented a plan to create AWNA as its parent company.**

32.     On or before December 14, 2004, Agusta, through its President, Mr. Stephen Moss, entered into discussions with Mr. Hill about Mr. Hill's possible employment at AWNA.  At a meeting in December, 2004, Mr. Moss reviewed with Mr. Hill – and orally offered him – a position of employment at the soon-to-be-formed parent company of Agusta, AWNA.

33.     Mr. Hill concealed from CLS his employment discussions with Mr. Moss for the remainder of his term of employment with CLS.  Throughout this time period, Mr. Hill continued to manage CLS's relationship with Agusta.  Unaware that Mr. Hill had entered into employment discussions with Agusta and/or AWNA, CLS continued to rely on Mr. Hill to represent CLS's interests while working for Agusta on CLS's behalf.

34.     AWNA was formed in early 2005.  Stephen Moss currently serves as the CEO of AWNA and the President of Agusta.  AWNA and Agusta share the same offices and the same filing space.  Further, the use of certain formalities reflecting the names of each company (including letterhead and the employee paycheck system) show that the two companies are intertwined.

35.     On February 10, 2005, Mr. Moss made a formal, written offer of employment at AWNA to Mr. Hill.  Mr. Hill accepted the offer on the same day.

36.     On or around February 21, 2005, Mr. Hill began working for and receiving paychecks from AWNA.

37.    Agusta **and/or AWNA** terminated its business relationship with CLS on March 4, 2005. **In his letter terminating Agusta's relationship with CLS, Mr. Moss misled CLS and continued the charade that Mr. Hill still worked at and was a loyal employee of CLS. Knowing full well that AWNA had hired Mr. Hill, and further, knowing full well that Mr. Hill had already started working for AWNA, Mr. Moss addressed the termination letter to Mr. Hill and Mr. Schechter at CLS's office address. Mr. Moss stated within the letter that Mr. Hill and Mr. Schechter should contact Mr. Moss the next month to discuss resuming the CLS-Agusta relationship. At the time Mr. Moss wrote, signed, and sent this letter, Mr. Moss was fully aware of the fact that Mr. Hill was a paid employee of AWNA.**

38.    Mr. Hill resigned from his position with CLS on March 15, 2005, at which time CLS reminded Mr. Hill of his confidentiality and non-competition obligations under the Hill Agreement in a memorandum.

39.    **On multiple occasions during the time period of February, 2005 through September, 2005, Mr. Hill communicated with CLS employees – including Mr. Robert Chlopak, Mr. Peter Schechter, Mr. Charles Leonard, and Mr. Michael Fox – and falsely informed them that he was leaving CLS to take time off, possibly to move to New Mexico, to open his own consulting firm, and possibly to write a book. In May and June of 2005, Mr. Hill affirmatively told Mr. Fox, by telephone and e-mail correspondence, that he had started his own consulting business. That**

information was false.  At no time did Mr. Hill ever disclose to anyone at CLS that he had accepted a position with and begun working directly for AWNA.

40.    Mr. Hill continued to work as a consultant to CLS until June, 2005. During this time, he accepted payment from CLS for work – as an independent consultant – that he purported to have done on various projects.  Throughout the period from December 14, 2004 until June, 2005, Mr. Hill continued to hide from CLS the fact that he had engaged in employment discussions with Agusta and/or AWNA, that he had been offered a job with AWNA, and that he had accepted a permanent position of employment with AWNA.  During this period, CLS continued to rely on Mr. Hill as a loyal and unconflicted employee and counted on Mr. Hill to represent CLS's interests in his work with CLS clients.

41.    Throughout the period from January until June, 2005, CLS continued to rely on Mr. Hill to communicate with Agusta on its behalf with regard to various matters including questions about unpaid fees.  In early 2005, Mr. Hill advised CLS to waive certain fees and expenses associated with the Agusta account.  Mr. Hill represented to CLS that he would make efforts to collect outstanding fees that Agusta owed to CLS. Agusta never paid those fees.  CLS did not know and Mr. Hill never informed CLS that, at the time he was pretending – on behalf of CLS – to

collect fees that AWNA owed CLS, Mr. Hill was actually a paid and permanent employee of AWNA.

42.    Throughout this same period, Mr. Hill advised CLS to waive certain expenses associated with the Agusta account that CLS intended to collect. Mr. Hill represented to CLS that he would work with Agusta to arrange for payment of these expenses.  Not knowing that Mr. Hill was an employee of Agusta, CLS entrusted him with this assignment and expected him – on behalf of CLS – to press Agusta for payment of the outstanding expenses owed CLS.   Agusta never paid those expenses.

43.    By failing to inform CLS of Mr. Hill's employment at AWNA, Mr. Hill and Agusta and/or AWNA misled CLS into falsely believing (a) that Mr. Hill was making genuine efforts to collect from Agusta the money owed to CLS, and (b) that Mr. Hill and Agusta/AWNA were in compliance with their non-compete/non-poaching agreements with CLS.

44.    Mr. Hill is now employed at AWNA and knowingly engages in activities that are expressly prohibited by  the terms of the Hill Agreement, including the conduct of event marketing, public relations, advertising, sales promotion, market research and/or government relations business for AWNA.

45.    Because Mr. Hill is engaged in activities that are expressly prohibited under the terms of the Hill Agreement, and because he is doing so within twelve months of his resignation from CLS, Mr. Hill's

10

**employment at AWNA is in direct violation of Mr. Hill's obligations to CLS under that Agreement.**

46.    **In addition, because AWNA knowingly employed Mr. Hill within twelve months of Mr. Hill's resignation from his employment at CLS, AWNA** is in direct violation of its obligations under **the Agusta Agreement**.

47.    CLS notified both Mr. Hill and Agusta that Mr. Hill's employment by Augusta constituted a breach of both the Hill Agreement and the Agusta Agreement.  On September 29, 2005, counsel for CLS sent letters via certified mail to Mr. Hill and to Mr. Stephen Moss, the President of Agusta.  Each letter notified the recipients of CLS's objections to Mr. Hill's employment with Agusta.

48.    On October 25, 2005, counsel for Agusta and Mr. Hill informed counsel for CLS that Mr. Hill's employment at **Agusta/AWNA** would continue.

49.    **Based on information and belief,** Agusta **and/or AWNA** and Mr. Hill knowingly conspired to breach both the Agusta Agreement and the Hill Agreement by wrongfully arranging for Mr. Hill to become an employee of Agusta **before a twelve month period had elapsed after his resignation from CLS, and by wrongfully providing AWNA with services that were expressly prohibited under the terms of the Hill Agreement.**

50.    Agusta **and/or AWNA** offered an employment position to Mr. Hill despite knowledge that Mr. Hill had a valid and binding agreement with CLS that prohibited him **– for at least twelve months –** from accepting a position with a client or former client of CLS.  Agusta **and/or AWNA** intentionally and improperly

interfered with Mr. Hill's performance of the Hill Agreement, inducing Mr. Hill to fail to perform his obligations contained therein.

51.     Mr. Hill offered his services to Agusta **and/or AWNA** for a significantly lower rate than CLS charged for comparable services in exchange for employment at Agusta **and/or AWNA**, thereby intentionally and improperly interfering with the business relationship between CLS and Agusta.

52.     Mr. Hill accepted an employment position with **AWNA** despite his knowledge that Augusta had a valid and binding agreement with CLS that prohibited it from **either directly or indirectly** employing a current or former employee (whose termination was within the previous twelve months) of CLS.  Mr. Hill intentionally and improperly interfered with Agusta's performance of the Agusta Agreement, inducing Agusta to fail to perform its obligations contained therein.

53.     Mr. Hill's **gained knowledge of Agusta's and/or AWNA's business interests and needs during his tenure at CLS.  Such knowledge allowed Mr. Hill to provide services directly for Agusta and/or AWNA that previously had been provided by CLS.**   Mr. Hill's actions deprived CLS of the economic benefit of its arrangement with Agusta.

54.     In addition, Mr. Hill's employment at **AWNA** forced CLS to search for a replacement for Mr. Hill's position and engage in the expensive and lengthy process of training that individual.

## COUNT I
### (Breach of Contract – Mr. Hill)

55.    CLS repeats and incorporates by reference the allegations in paragraphs 1 through **54** as if fully set forth herein.

56.    Based on the foregoing allegations, Mr. Hill is in breach of the covenant not to compete and the non-disclosure covenant in the Hill Agreement.

57.    Mr. Hill's employment with **AWNA** has already damaged CLS, and his continued employment with Agusta will cause further irreparable harm to CLS.

58.    WHEREFORE, as to Count I, CLS prays for judgment against Mr. Hill for (i) **compensatory damages in an amount to be determined at trial**, (ii) reasonable attorneys fees incurred by CLS in seeking and obtaining relief herein, and (iii) any other and further relief this Court may deem just and proper.

## COUNT II
## (Breach of Contract – Agusta and/or AWNA)

59.    CLS repeats and incorporates by reference the allegations in paragraphs 1 through **54** as if fully set forth herein.

60.    Based on the foregoing allegations, Agusta **and/or AWNA** is in breach of the covenant not to hire CLS employees in the Agusta Agreement.

61.    **AWNA**'s employment of Mr. Hill has already damaged CLS, and his continued employment by **AWNA** will cause further irreparable harm to CLS.

62.    WHEREFORE, as to Count II, CLS prays for judgment against Agusta **and/or AWNA** for (i) liquidated damages as set forth in the Agusta Agreement, (ii) reasonable attorneys fees incurred by CLS in seeking and obtaining relief herein, and (iii) any other and further relief this Court may deem just and proper.

## COUNT III
### (Tortious Interference with Contract – Mr. Hill)

63.    CLS repeats and incorporates by reference the allegations in paragraphs 1 through **54** as if fully set forth herein.

64.    Based on the foregoing allegations, Mr. Hill has tortiously interfered with Agusta's **and/or AWNA's** performance of its obligations under the Agusta Agreement.

65.    **Actions taken by Mr. Hill to conceal the offer, acceptance, and subsequent employment with AWNA were malicious and in willful, wanton, or in reckless disregard of CLS's rights.**

66.    Mr. Hill's actions have resulted in damages to CLS in an amount to be determined at trial.

67.    WHEREFORE, as to Count III, CLS prays for judgment against Mr. Hill for (i) compensatory damages in an amount to be determined at trial, **(ii) punitive damages in an amount to be determined at trial, and** (iii) any other and further relief this Court may deem just and proper.

## COUNT IV
### (Tortious Interference with Contract – Agusta and/or AWNA)

68.    CLS repeats and incorporates by reference the allegations in paragraphs 1 through **54** as if fully set forth herein.

69.    Based on the foregoing allegations, Agusta **and/or AWNA** has tortiously interfered with Mr. Hill's performance of his obligations under the Hill Agreement.

70. **Actions taken by Agusta and/or AWNA to conceal the offer, acceptance, and subsequent employment of Mr. Hill were malicious and in willful, wanton, or in reckless disregard of CLS's rights.**

71. Agusta's **and/or AWNA's** actions have resulted in damages to CLS in an amount to be determined at trial.

72. WHEREFORE, as to Count IV, CLS prays for judgment against Agusta **and/or AWNA** for (i) compensatory damages in an amount to be determined at trial, **(ii) punitive damages in an amount to be determined at trial, and** (iii) any other and further relief this Court may deem just and proper.

## COUNT V
### (Civil Conspiracy to Breach Each Contract – Mr. Hill and Agusta and/or AWNA)

73. CLS repeats and incorporates by reference the allegations in paragraphs 1 through **54** as if fully set forth herein.

74. Based on the foregoing allegations, Agusta **and/or AWNA** and Mr. Hill have conspired to and combined to breach the valid and binding restrictive covenants in the Hill Agreement and the Agusta Agreement and deprive CLS of the benefits contained therein.

75. Mr. Hill's and Agusta's **and/or AWNA's** actions have resulted in damages to CLS in an amount to be determined at trial.

76. WHEREFORE, as to Count V, CLS prays for judgment against Mr. Hill and Agusta **and/or AWNA** for (i) compensatory damages in an amount to be determined at trial, and (ii) any other and further relief this Court may deem just and proper.

## COUNT VI
### (Breach of Fiduciary Duty – Duty of Loyalty – Mr. Hill)

77.     CLS repeats and incorporates by reference the allegations in paragraphs 1 through 54 as if fully set forth herein.

78.     Based on the foregoing allegations, Mr. Hill was an employee and agent of CLS.  As an employee and agent, Mr. Hill had fiduciary obligations to CLS and owed CLS a duty of undivided loyalty.  Mr. Hill had a duty to avoid conflicts of interest with CLS and to act in CLS's best interests.

79.     By continuing to work for and on behalf of CLS while he contemplated, negotiated, accepted and commenced working directly for Agusta and/or AWNA, Mr. Hill breached this duty.

80.     Mr. Hill's actions have resulted in damages to CLS in an amount to be determined at trial.

81.     WHEREFORE, as to Count VI, CLS prays for judgment against Mr. Hill for (i) compensatory damages in an amount to be determined at trial, and (ii) any other and further relief this Court may deem just and proper.

## COUNT VII
### (Civil Fraud – Mr. Hill)

82.     CLS repeats and incorporates by reference the allegations in paragraphs 1 through 54 as if fully set forth herein.

83.     Mr. Hill knowingly and intentionally made false representations to CLS about his employment plans and about his employment status, and he did so with the intent of deceiving CLS.  In the absence of knowledge as to

Mr. Hill's true employment status, CLS looked to Mr. Hill and relied upon him to collect outstanding debts – fees and expenses – owed to CLS by Agusta and/or AWNA.  In the absence of knowledge as to Mr. Hill's true employment status, CLS did not know about Mr. Hill's breach of his agreement with CLS and Agusta/AWNA's breach of its agreement with CLS until many months after the breaches occurred.  Mr. Hill's failure to disclose his true employment status to CLS and his false statements to CLS about that same matter prevented CLS from taking immediate action aimed at enforcing these agreements.

84.    Actions taken by Mr. Hill to mislead CLS and conceal the offer, acceptance, and subsequent employment with AWNA were malicious and in willful, wanton, or in reckless disregard of CLS's rights.

85.    Mr. Hill's actions have resulted in damages to CLS in an amount to be determined at trial.

86.    WHEREFORE, as to Count VII, CLS prays for judgment against Mr. Hill for (i) compensatory damages in an amount to be determined at trial, (ii) punitive damages in an amount to be determined at trial, and (iii) any other and further relief this Court may deem just and proper.

## COUNT VIII
### (Civil Fraud – Agusta and/or AWNA)

87.    CLS repeats and incorporates by reference the allegations in paragraphs 1 through 54 as if fully set forth herein.

88.    **Mr. Moss, acting on behalf of Agusta and/or AWNA, knowingly and intentionally made false representations to CLS regarding Mr. Hill's employment status with the intent of deceiving CLS. In the absence of knowledge as to Mr. Hill's true employment status during February through September 2005, CLS did not learn about Agusta/AWNA's breach of its Agreement with CLS and Mr. Hill's breach of his agreement with CLS until many months after the breaches occurred. Agusta/AWNA's false representations to CLS regarding Mr. Hill's employment status prevented CLS from taking immediate action aimed at enforcing these agreements.**

89.    **Actions taken by Agusta/AWNA to mislead CLS and conceal the offer, acceptance, and subsequent employment with AWNA were malicious and in willful, wanton, or in reckless disregard of CLS's rights.**

90.    **Agusta/AWNA's actions have resulted in damages to CLS in an amount to be determined at trial.**

91.    **WHEREFORE, as to Count VIII, CLS prays for judgment against Agusta and/or AWNA for (i) compensatory damages in an amount to be determined at trial, (ii) punitive damages in an amount to be determined at trial, and (iii) any other and further relief this Court may deem just and proper.**

## JURY DEMAND

92.    CLS hereby demands a trial by jury on its First Amended Complaint for Damages.

Respectfully Submitted,

Dated:  May 9, 2006          WILLIAMS & CONNOLLY LLP


By:    _____/s/ Gregory B. Craig_____
          Gregory B. Craig  (D.C. Bar  164640)
          Amanda M. MacDonald (*pro hac vice*)

          725 Twelfth Street, N.W.
          Washington, DC 20005
          Tel.: (202) 434-5000
          Fax: (202) 434-5029


          *Attorney for Plaintiff, Chlopak, Leonard,*
          *Schechter and Associates, Inc.*

# Exhibit A

# Hill Agreement

## NON-DISCLOSURE AND NON-COMPETITION AGREEMENT

AGREEMENT dated as of April 1, 2002  between Chlopak, Leonard, Schechter & Associates, Inc., a District of Columbia corporation with its principal office at 1850 M Street, N.W., Suite 550, Washington, D.C.  20037, its successors and assigns (collectively, the "Employer"), and Daniel Hill (the "Employee"), in consideration of the Employee's continuation of employment by the Employer.

1.  **Non-Disclosure of Confidential and Proprietary Information**.  The Employee acknowledges and agrees that his employment will involve exposure and access to highly confidential and sensitive areas of both the Employer's professional service business and the Employer's clients' ("Clients") businesses (collectively, "Confidential and Proprietary Information"), including, without limitation, proprietary information relating to the relationship between the Employer and Client, and their procedures and techniques which are used in the conduct of the Employer and Clients' businesses, intellectual property, costs and prices for providing services, client budgets and needs and other data and information regarding operations, assets, liabilities (absolute and contingent), business plans, personnel, prospects and other information which is known only by, and/or trade secrets proprietary to, the Employer, and Clients, their shareholders and affiliates.

Confidential and Proprietary Information shall not be deemed to include any information that: (i) is in the public domain at the time of the disclosure; or (ii) enters the public domain after the time of disclosure by any means other than breach of this Agreement or any other agreement binding the Employee.

1850 M Street NW  Suite 550  Washington, DC 20036     220 East 42nd Street  Suite 408  New York, NY 10017
Phone: (202) 289 5900  Fax: (202) 289 4141          Phone: (212) 515 1908  Fax: (212) 515 1976

*A Gavin Anderson Company*

The Employee shall use his best efforts to protect from disclosure to persons not authorized to receive such information all Confidential and Proprietary Information that comes to the attention of the Employee while employed by the Employer.  The Employee shall not at any time during employment or thereafter, regardless of the reason for which the Employee's employment terminates, disclose or make available directly or indirectly, or use for the benefit of the Employee or any person or entity other than the Employer any Confidential and Proprietary Information which the Employee has knowledge of or access to while employed by the Employer.  However, the Employee shall not be in breach of this Agreement in the event he discloses Confidential and Proprietary Information as required (i) by applicable law, (ii) by compulsory process, or (iii) in order to defend his legal rights, provided, however, that he shall, to the extent lawful and feasible, give prior notice of such anticipated disclosure to the Employer and reasonably cooperate in any effort by the Employer to prevent or limit such disclosure.

    2.    **Non-Solicitation**.  Following the termination of Employee's employment for any reason, Employee shall not for a period of twelve (12) months from the date of such termination, (a) solicit any employee of the Employer, to leave such employ to enter the employ of Employee or of any person, firm or corporation with which Employee is then associated or (b) solicit or handle on Employee's own behalf or on behalf of any other person, firm or corporation, the event marketing, public relations, advertising, sales promotion, market research or government relations business of any person or entity which is a client of Employer or has been a client of Employer during the twelve (12) month period prior to the date of the termination of employment with the Employer.

    3.    **Enforceability**.  If at the time of enforcement of any provision of this Agreement, a court shall hold that the duration or scope restriction of any provision hereof is

1850 M Street NW  Suite 550  Washington, DC 20036 2 - ⚘    220 East 42nd Street  Suite 408  New York, NY 10017
Phone: (202) 289 5900  Fax: (202) 289 4141        Phone: (212) 515 1908  Fax: (212) 515 1976

*A Gavin Anderson Company*

unreasonable under circumstances now or then existing, the parties hereto agree that the maximum duration or scope reasonable under the circumstances shall be substituted by the court for the stated duration or scope.

    4.    **Irreparable Harm**.  Employee acknowledges that any breach by him of the provisions of this Agreement shall cause irreparable harm to the Employer and that a remedy at law for any breach or attempted breach of this Agreement will be inadequate, and agrees that the Employer shall be entitled to exercise all remedies available to it, including specific performance and injunctive and other equitable relief, in the case of any such breach or attempted breach.

Employee represents and warrants that the execution and delivery of this Agreement will neither conflict with, nor result in a breach of, an agreement (including without limitation any employment agreement) to which Employee is a party or by which he may be bound or affected.  Employee further represents and warrants that he has full right, power and authority to enter into and carry out the provisions of this Agreement.

    5.    **Waiver of Breach**.  The waiver by the Employer of a breach of any provisions of this Agreement by the Employee shall not operate or be construed as a waiver of any subsequent breach by the Employee.  No waiver shall be valid unless in writing and signed by the Employer.

    6.    **Assignment.**  The rights and obligation of the Employer under this Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of the Employer.

1850 M Street NW  Suite 550  Washington, DC 20036 3 - 6    220 East 42nd Street  Suite 408  New York, NY 10017
Phone: (202) 289 5900  Fax: (202) 289 4141          Phone: (212) 515 1908  Fax: (212) 515 1976

*A Gavin Anderson Company*



7. **Entire Agreement**. This Agreement contains the entire understanding of the parties relating to the subject matter hereof. It may not be changed orally but only by an agreement in writing signed by both parties.

8. **Governing Law**. This Agreement has been made under and shall be governed by the Laws of the District of Columbia.

In witness whereof the parties have executed this Agreement as of the date first above written.

EMPLOYEE

By: _____

Name _Daniel G. Hill_____

CHLOPAK, LEONARD, SCHECHTER & ASSOCIATES, INC.

By: _____

Name _Robert D Chlopak_____

Title: _CEO_____

1850 M Street NW  Suite 550  Washington, DC 20036 4 - *     220 East 42nd Street  Suite 408  New York, NY 10017
Phone: (202) 289 5900  Fax: (202) 289 4141        Phone: (212) 515 1908  Fax: (212) 515 1976

*A Gavin Anderson Company*

# Exhibit B

## Agusta Agreement



www.clsdc.com

February 12, 2004

Stephen Moss
President
AgustaWestland Inc.
2231 Crystal Drive
Suite 1114
Arlington, VA 22202

Dear Mr. Moss:

This letter is designed to serve as an agreement between us as we begin working together on your strategic communications issues. We look forward to working with you on this project, and further developing the scope of work to be performed at our meeting on Friday.

This letter sets forth the terms of our 'Agreement':

1. Effective February 12, 2004 until May 12, 2004, AgustaWestland Inc. (hereafter, AW) will retain the professional services of Chlopak, Leonard, Schechter and Associates, Inc., in partnership with Bairds USA, LLC (hereafter, "CLS") as communications counselors. This contract can be extended beyond May 12, 2004, with a simple letter of agreement amending this contract between the parties.

2. During the period of this agreement, CLS will work closely with AW to provide strategic advice and counsel, create and produce communications materials as needed, distribute materials to and interface with the media, and provided communication services as directed by the client.

3. In consideration for the above described services, AW agrees to compensate CLS at a fixed fee of $60,000 per calendar month. Fees for partial months will be prorated accordingly. Fees shall be invoiced and are payable within 30 days

4. CLS will treat all documents as confidential. In the process of providing to AW the services encompassed by this contract, CLS may receive or may otherwise obtain confidential information, the disclosure of which beyond AW, its authorized agents, and CLS, is not authorized. CLS will not disclose or use any confidential information, in any form, for any purpose except with AW's express, written prior approval. Information that is or becomes available in the public domain through no fault of CLS

1850 M Street NW  Suite 550  Washington, DC 20036      •      220 East 42nd Street  Suite 408  New York, NY 10017
Phone: (202) 289 5900  Fax: (202) 289 4141              Phone: (212) 515 1908  Fax: (212) 515 1976

*A Gavin Anderson Company*

or any of CLS's employees, or is not acquired by CLS or CLS's employees from FPC or from sources known by CLS or CLS's employees to be in breach of a confidentiality agreement with AW, will not be deemed confidential information that is subject to the provisions of this paragraph. This provision will survive beyond the conclusion or termination of this contract.

5. CLS will be entitled to bill all reasonable out-of-pocket expenses each month. Fax service is provided for a fee of $.75 per page and copy service is provided for a fee of $.25 per page. Telephone service is provided at-cost, plus applicable taxes and administrative fees.

6. CLS will bill all collateral material, advertising production, and outsourced services at cost, plus a 17.65% industry standard management fee. CLS shall be entitled to receive a 50% deposit, in advance, for all approved collateral material and production expenses. For advertising placement, CLS will charge a commission based on the standard industry rate of 15%.

7. AW will indemnify and hold harmless CLS, its partners, principals, agents and employees (hereinafter "Indemnified Parties") from and against any losses, damages, claims, liabilities and expenses (including, without limitation, as a result of third party demands, legal proceedings or law suits, or requests or subpoenas served on any Indemnified Party for information, reports, data, or releases), including reasonable attorneys fees and expenses, suffered by Indemnified Parties as a result of the services rendered by Indemnified Parties in the course of this engagement or as a result of Indemnified Party's reasonable use of, or reasonable reliance upon, any information or materials (whether or not in writing) furnished or approved by AW or its specifically authorized representatives for use by any Indemnified Party, whether or not any Indemnified Party prepares or participates in the preparation of such materials, provided however, that this provision shall not apply to any losses suffered by Indemnified Parties that are determined in a final judgment by a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Party seeking indemnification hereunder. This provision shall survive the termination of this agreement and shall continue to bind both parties.

8. AW agrees it will not offer employment to, or employ, a CLS employee for its own or another's benefit, either directly or through affiliates, subsidiaries, agents, sub-contractors or other related parties, either while the employee is employed by CLS, or for a period of one year after the employee ceases to be employed by CLS. This obligation shall remain in effect during the life of this agreement and for one year after the end of this agreement. CLS agrees to be bound by an identical obligation with regard to employees of AW. In the event that this provision may be deemed to be counter to employment laws, and one party to this agreement directly or indirectly employs an employee of the other, the employing party agrees to pay the other, simultaneously with such employment, an amount equal to 1.5 times the employee's total annual compensation in respect of the prior calendar year.

9.  All notices, requests, demands and other communications which are required or may be given under this Agreement shall be in writing and shall be deemed to have duly been given if delivered personally or mailed, first class mail, postage prepaid, return receipt requested, or by any other express delivery technique calling for receipted delivery, as follows:

If to CLS:

Chlopak, Leonard, Schechter and Associates, Inc.
Attn: Robert A. Chlopak
1850 M Street, NW
Suite 550
Washington, DC 20036
(202) 289-5900
Fax: (202) 289-4141

If to AW:

AgustaWestland Inc.
Attn: Stephen Moss
AgustaWestland Inc.
2231 Crystal Drive
Suite 1114
Arlington, VA 22202

(703) 243-0885
Fax: (703) 243-7733

or to such other address as either party shall have specified by notice in writing to the other party. All such notices, requests, demands and communications shall be deemed to have been received on the date of delivery or on the next business day if sent by a nationally recognized overnight courier service.

10. This Agreement constitutes the entire agreement between the parties hereto and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter contained herein.

11. This Agreement shall be governed by, and construed in accordance with, the laws of the District of Columbia.

12. The terms and conditions of this contract may not be altered, changed or amended except by mutual written agreement of AW and CLS or as otherwise expressly provided for in this agreement.

13. This agreement may be terminated without cause by either CLS or AW upon receiving written notification at least 30 days prior to the intended date of termination, providing all fees and expenses have been paid in full through the 30 day termination period. Upon the termination of this Agreement, this Agreement shall cease to have any further effect (except as pertains to the provisions of this Agreement which specifically survive its termination).

Your signature and return to us of an original copy of this letter shall constitute acceptance of the terms defined herein.

Once again, thank you for this opportunity and your confidence in CLS.  We look forward to working with you.

Sincerely,

_____          _____
Robert A. Chlopak                               2-12-04    Date
President
Chlopak, Leonard, Schechter and
Associates, Inc.

Accepted:

_____          _____
Stephen Moss                                    2-13-04    Date
President
AgustaWestland, Inc.

CC: