UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHLOPAK, LEONARD,
SCHECHTER AND ASSOCIATES, INC.
      **Plaintiff and**
      **Counterclaim Defendant,**

v.

AGUSTAWESTLAND, INC.
      **Defendant and**
      **Counterclaim Plaintiff,**

and

DANIEL G. HILL
      **Defendant.**

_____

AGUSTAWESTLAND, INC.
      **Defendant and**
      **Counterclaim Plaintiff,**

v.

ROBERT CHLOPAK

and

CHARLES LEONARD

and

PETER SCHECHTER

      **Counterclaim Defendants.**

Civil Action No.: 1:05-cv-02389-GK
Judge Gladys Kessler
Next Scheduled Event:
    Request for Admissions Due
    June 9, 2006

_____

**ANSWER OF DEFENDANTS AGUSTAWESTLAND, INC.
AND DANIEL G. HILL AND SECOND AMENDED
COUNTERCLAIM OF AGUSTAWESTLAND, INC.**

Defendants AgustaWestland, Inc. (AgustaWestland) and Daniel G. Hill (Mr. Hill) answer the allegations of the complaint in the above captioned action as follows:

## BACKGROUND

1.  Does not require an admission or denial, but to the extent that an answer is required, the allegation is denied.

2.  Does not require an admission or denial, but to the extent that an answer is required, the allegation is denied.

3.  The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied.

4.  The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied. Denied as to the date of execution of the Agreement.

5.  The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied.

6.  The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied.

7.  The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied.

## THE PARTIES

8.  As to the first sentence, defendants do not have information sufficient to answer whether or not plaintiff Chlopak, Leonard, Schechter and Associates, Inc. (CLS) is organized under the laws of the District of Columbia. The remaining allegations are admitted.

2

9.  Admitted, except that Agusta is not in the business of designing and manufacturing helicopters.

10. Admitted, except that Mr. Hill is not employed at Agusta. Defendants affirmatively state that Mr. Hill is employed by Agusta's parent company, AgustaWesltand North America, Inc. (AWNA)

**JURISDICTION AND VENUE**

11. Denied that defendants caused any tortious acts in this jurisdiction and denied that either defendant derives substantial revenue from services rendered in the District of Columbia. The remaining allegations are admitted.

**FACTS**

12. Admitted.

13. Defendants do not have sufficient information to admit or deny the allegations as to the purposes that plaintiff had in mind when it required employees to sign the referenced agreements. The defendants also lack sufficient information to admit or deny any allegations as to contracts with employees other than Mr. Hill. To the extent that an answer is required, the allegations are denied.

14. Admitted that the paragraph correctly quotes part of the Agreement, but all allegations characterizing the Agreement are denied.

15. Defendants do not have sufficient information to admit or deny allegations as to the purposes that plaintiff had in mind when it required clients to sign the referenced agreements. The defendants also lack sufficient information to admit or deny any allegations as to contracts with clients other than Agusta. To the extent that an answer is required, the allegations are denied.

16.    Admitted.

17.    Denied as to the date of execution of the Agreement. Admitted that a copy of the
       Agreement is attached as Exhibit A.

18.    Admitted that the paragraph correctly quotes part of the Agreement, but allegations
       characterizing the Agreement are denied. The Agreement speaks for itself.

19.    Admitted that the paragraph correctly quotes part of the Agreement, but allegations
       characterizing the Agreement are denied. The Agreement speaks for itself.

20.    Admitted.

21.    Admitted.

22.    Admitted that the paragraph correctly quotes part of the Agreement, but allegations
       characterizing the Agreement are denied. The Agreement speaks for itself.

23.    Admitted that the paragraph correctly quotes part of the Agreement, but allegations
       characterizing the Agreement are denied. The Agreement speaks for itself.

24.    First sentence admitted. The remaining allegations in the paragraph are denied.
       Defendants affirmatively allege that Mr. Hill brought capability and experience to
       CLS that CLS did not have and that Mr. Hill received no new substantive training
       during the three years he worked with CLS.

25.    Admitted as to the date of termination of business relationship. Agusta
       affirmatively alleges that the contract at issue expired by its own terms on May 12,
       2004.

26.    Denied. Mr. Hill affirmatively states that he gave notice to CLS on February 17,
       2005. Admitted that CLS provided Mr. Hill with the memorandum. Mr. Hill

4

affirmatively states that CLS asked him to sign the memorandum, but he declined to do so.

27.    Denied that Mr. Hill is employed at Agusta. Mr. Hill is employed at AWNA. Defendants affirmatively allege that the duties performed by Mr. Hill in his position at AWNA are not now and never have been substantially the same as the services performed for Agusta when he worked with CLS. All other allegations of the paragraph are denied.

28.    The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied.

29.    The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied.

30.    Admitted as to the date of the notice, but denied as to all allegations contained in the notice.

31.    Admitted.

32.    The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied.

33.    The allegations are legal conclusions and do not require admission or denial, but to the extent that an answer is required, the allegations are denied.

34.    The allegation is a legal conclusion and does not require admission or denial, but to the extent that an answer is required, the allegation is denied. Defendants affirmatively allege that the duties performed by Mr. Hill in his position at AWNA are not now and never have been substantially the same as the services performed for Agusta when he worked with CLS.

35. The allegations are legal conclusions and do not require admission or denial, but to the extent that an answer is required, the allegations are denied.

36. Denied. Defendants affirmatively allege that the duties performed by Mr. Hill in his position at AWNA are not now and never have been substantially the same as the services performed for Agusta when he worked with CLS.

37. Denied.

## COUNT I

### (Breach of Contract – Mr. Hill)

38. Defendants repeat and incorporate herein by reference answers to paragraph 1 through 37.

39. Denied.

40. Denied.

41. The allegation does not require an admission or denial, but to the extent that an answer is required, the allegation is denied.

## COUNT II

### (Breach of Contract – Agusta)

42. Defendants repeat and incorporate herein by reference answers to paragraph 1 through 37.

43. Denied.

44. Denied.

45. The allegation does not require an admission or denial, but to the extent that an answer is required, the allegation is denied.

## COUNT III

6

**(Tortious Interference With Contract –  Mr. Hill)**

46.    Defendants repeat and incorporate herein by reference answers to paragraph 1

through 37.

47.    Denied.

48.    Denied.

49.    The allegation does not require an admission or denial, but to the extent that an

answer is required, the allegation is denied.

## COUNT IV

**(Tortious Interference with Contract –  Agusta)**

50.    Defendants repeat and incorporate herein by reference answers to paragraph 1

through 37.

51.    Denied.

52.    Denied.

53.    The allegation does not require an admission or denial, but to the extent that an

answer is required, the allegation is denied.

## COUNT V

**(Civil Conspiracy to Breach Each Contract -- Mr. Hill and Agusta)**

54.    Defendants repeat and incorporate herein by reference answers to paragraph 1

through 37.

55.    Denied.

56.    Denied.

57.    The allegation does not require an admission or denial, but to the extent that an

answer is required, the allegation is denied.

The remainder of the complaint does not require either admission or denial. To the extent that an answer is required, the allegations are denied.

## AFFIRMATIVE DEFENSES

FIRST AFFIRMATIVE DEFENSE

All of Plaintiff's claims seeking equitable relief are barred by laches.

SECOND AFFIRMATIVE DEFENSE

All of Plaintiff's claims are barred by the doctrine of unclean hands.

THIRD AFFIRMATIVE DEFENSE

All of Plaintiff's alleged damages, if suffered, were due solely to the acts or omissions of the Plaintiff for which Defendants have no responsibility.

FOURTH AFFIRTMATIVE DEFENSE

All of Plaintiff's alleged damages, if suffered, are barred for failure of the Plaintiff to mitigate damages.

FIFTH AFFIRMATIVE DEFENSE

All of Plaintiff's alleged damages, if suffered, are barred to the extent that Plaintiff is unable to establish harm caused by the Defendants' conduct.

SIXTH AFFIRMATIVE DEFENSE

Defendants affirmatively allege that any duties or obligations which Plaintiff claims were owed by Defendants have been performed, satisfied, and discharged.

SEVENTH AFFIRMATIVE DEFENSE

Each of Plaintiff's five causes of action fails to state a claim for which relief may be granted.

EIGHTH AFFIRMATIVE DENFENSE

The provisions of the Agreements that Plaintiff seeks to enforce are void as contrary to public policy.

Defendants demand strict proof of all claims against them, and declare that they intend to and do rely on all defenses, which are applicable or may become applicable or available herein including but not limited to any and all additional legal and equitable defenses determined during the course of discovery.

WHEREFORE, Defendants respectfully request that this Court dismiss the Complaint and grant to Defendants attorney's fees, costs, and such other relief as the Court deems just and proper.

**SECOND AMENDED COUNTERCLAIM BY AGUSTAWESTLAND, INC. AGAINST CHLOPAK, LEONARD, SCHECHTER AND ASSOCIATES, INC., ROBERT CHLOPAK, CHARLES LEONARD, AND PETER SCHECHTER**

## NATURE OF CLAIM

1.  This counterclaim is an action for recovery of compensatory and punitive damages from Counterclaim Defendant Chlopak, Leonard, Schechter and Associates, Inc. (CLS) **and newly-joined Counterclaim Defendants Robert Chlopak, Charles Leonard and Peter Schechter, individually and jointly and severally,** for breach of contract, unjust enrichment, intentional misrepresentation in billing for services, breach of fiduciary duty, **civil conspiracy.**

## THE PARTIES

2.  Counterclaim Plaintiff AgustaWestland, Inc. (Agusta**Westland**) is a Delaware corporation primarily engaged in marketing helicopters.  AgustaWestland's principal place of business was formerly in Arlington, Virginia and is currently located in Reston, Virginia.

3.  Counterclaim Defendant **Chlopak, Leonard, Schechter and Associates, Inc.** (CLS) is a corporation organized and existing under the laws of the District of Columbia and has its principal place of business in the District of Columbia. During the relevant period of time, CLS, **in partnership with Bairds USA, LLC (CLS-Bairds partnership)** solicited and performed consulting services for AgustaWestland in Arlington, Virginia.  **At all times relevant to the counterclaims, the CLS-Bairds partnership operated out of the CLS offices located at 1850 M Street, NW, Washington, DC.  No entity by the name of Bairds USA, LLC is licensed or registered to do business in the District of**

10

Columbia or in Virginia. An entity by the name of Baird's U.S., LLC is listed as a Virginia LLC. Francois L. Baird is the self-described founder and chairman of Baird's U.S., LLC, a communication management consultancy in association with Chlopak Leonard Schechter and Associates, Inc., a public relations firm in Washington D.C. Francois Baird is also the self-described founder of Baird's Renaissance (Pty) Ltd, a leading South African communication consultancy and an affiliate of Edelman Public Relations Worldwide.

4.    Counterclaim Defendant Robert Chlopak is a resident of Maryland and resides at 4919 Dorset Ave., Chevy Chase, MD. At all times relevant to the counterclaims, Robert Chlopak acted as the Chief Executive Officer of CLS.

5.    Counterclaim Defendant Charles Leonard is a resident of Colorado and resides at 140 Village Court, Basalt, CO.

6.    Counterclaim Defendant Peter Schechter is a resident of the District of Columbia and resides at 3021 O St., NW, Washington, DC.

**JURISDICTION AND VENUE**

7.    Jurisdiction of this Court arises from 28 U.S.C. §1332, in that the amount in controversy exceeds $100,000 and there is diversity of citizenship **among** Counterclaim Plaintiff **and all the Counterclaim Defendants.** This Court also has supplemental jurisdiction under 28 U.S.C.§ 1367.

8.    Venue is proper under 28 U.S.C. §1391(a).

## FACTUAL ALLEGATIONS

9.  In late 2003 or January of 2004, Francois Baird made one or more contacts with AgustaWestland President Stephen C. Moss for the purpose of arranging a meeting to pitch a proposal for opposition research related to a government procurement contract.

10. In January 2004, CLS in partnership with Bairds USA, LLC, made a slide presentation and sales pitch to AgustaWestland at its former offices in Crystal City, Arlington, Virginia.  The presentation was made by Peter Schechter, Francois Baird, Beau Phillips, and Daniel G. Hill.  Peter Schechter was, and still is, one of the three most senior level employees of CLS.  Francois Baird is, upon information and belief, the most senior person in all of his companies. Daniel G. Hill was a CLS Managing Director, a third tier employee below the three name "partners" in CLS and the senior vice-presidents.

11. In the pitch made by CLS in partnership with Bairds USA, LLC, Peter Schechter represented that a $60,000 monthly retainer fee was required because of the need for substantial senior level attention on the account.

12. The $60,000 monthly retainer amount pitched to AgustaWestland was in fact calculated by CLS and Baird on the assumption that Peter Schechter and Francois Baird would both spend a substantial amount of time on the AgustaWestland account.

13. At the time of the January 2004 pitch by CLS in partnership with Bairds USA, LLC and at all times relevant to the counterclaims, Baird advertised on his website that all fees were disclosed upfront to clients, that all billing for services

12

was completely transparent, that there were no hidden fees and that any client would be given a complete refund if not satisfied.

14.   During the January 2004 pitch, Peter Schechter represented to Stephen Moss that all matters for AgustaWestland would be handled in a confidential manner, even to the extent of keeping the business relationship between CLS-Bairds and AgustaWestland undisclosed.

15.   During the January 2004 pitch, CLS in partnership with Bairds USA, LLC presented several case studies on clients for which CLS had handled matters similar to the business that CLS in partnership with Baird was soliciting from AgustaWestland.  Mr. Moss remarked that he did not want AgustaWestland to appear in such pitches made to other prospective clients.  Peter Schechter represented to Mr. Moss that the Agreement between CLS in partnership with Bairds USA, LLC would contain a confidentiality provision that would address his concerns.

16.   On February 13, 2004, **Mr. Moss, as then President of AgustaWestland,** **executed** an agreement (the Agreement) with CLS to obtain consulting services on strategic communications matters, **a euphemism for opposition research,** related to a government procurement contract.  The term of the Agreement was three (3) months, from February 12, 2004 until May 12, 2004, at a fixed fee of $60,000 per month.  Exhibit A, attached, at ¶1 & 3.  **The Agreement was set to lapse at the expected time that the government procurement contract was to be awarded.**

17.   The Agreement provides that CLS will "treat all documents as confidential" and will "not disclose or use any confidential information, in any form, for any purpose

except with [AgustaWestland]'s express, written prior approval." The Agreement
further provides that the confidentiality provision will "survive beyond the
conclusion or termination of this contract." Exhibit A, at ¶ 4.

18.    During the negotiation of the terms of the Agreement, the subsequent provision **and
       invoicing** of services by CLS to AgustaWestland **for** the three-month term of the
       Agreement and **for several months after the Agreement expired, when services
       were provided and invoices were sent on a month-to-month basis subject to a
       budget,** Stephen C. Moss, as President of AgustaWestland, repeatedly emphasized
       the importance of complete confidentiality as to the nature and scope of CLS'
       services.

19.    On May 12, 2004, the Agreement lapsed by its own terms. Exhibit A at ¶ 1. **The
       date for awarding the government procurement contract was extended.**

20.    On April 6, 2004, CLS sought to renew and extend the Agreement **to the end of
       2004** under a new fee schedule. **CLS, in partnership with Bairds USA, LLC,
       prepared and presented a written document to extend the Agreement. Mr.
       Moss, as President of** AgustaWestland, declined to extend the Agreement beyond
       the termination date of May 12, 2004. **Mr. Moss, throughout the relationship
       with CLS, repeatedly reminded CLS that the business relationship would be
       terminated at the time the government procurement contract was awarded.**

21.    After the Agreement lapsed on May 12, 2004, CLS continued to provide services
       on a month-to-month basis. **The government procurement contract was awarded
       to AgustaWestland on January 28, 2005.** On March 4, 2005, AgustaWestland
       terminated its business relationship with CLS, **with the possibility of a future**

14

business relationship once AgustaWestland reorganized and had funding available. The termination letter expressly noted that the three month February 12, 2004 Agreement had long since lapsed, and that CLS was among the most expensive firms that AgustaWestland had hired to assist in its various public relations efforts.

22. On or soon after March 4, 2005, AgustaWestland also terminated contracts with its other outside consultants who had worked on various aspects of the government procurement contract.

23. In August 2004, Mr. Hill brought to the attention of Mr. Peter Schechter, and Mr. Michael Fox of CLS that the firm was over billing AgustaWestland for services rendered on a month-to-month basis. CLS, nevertheless, made no immediate fee adjustment, and failed to make an appropriate adjustment when a partial adjustment was finally made.

24. After the complaint was filed in this case, AgustaWestland learned that Francois Baird had received substantial hidden fees that were unearned given his lack of involvement in servicing the AgustaWestland account.

25. As a result of discovery, AgustaWestland learned that Francois Baird had received hidden fees of approximately $101,433.50, variously characterized as finder's fees, consulting fees and commissions, even though he failed to perform any work in servicing the AgustaWestland account.

26. As a result of discovery, AgustaWestland learned that Francois Baird received $12,000 per month of the fees invoiced for the three-month Agreement dated

February 12, 2004, of which half was characterized as a finder's fee and held as a consultant fee.

27.    As a result of discovery, AgustaWestland learned that Peter Schechter increased the amounts paid to Baird as a finder's fee to fifteen percent of revenues received from AgustaWestland after the February 12, 2004 Agreement expired on May 12, 2004 and through February or March 2005.

28.    As a result of discovery, AgustaWestland learned that Peter Schechter knew that Baird was splitting his unearned fees with an individual who became an employee of an AgustaWestland affiliate in late 2004 or early 2005.

29.    During the latter half of 2005, after all services to AgustaWestland had been terminated, CLS prepared and used a slide presentation to solicit several different clients that contained: (1) the AgustaWestland company logo; and (2) a description of the services rendered by CLS. Upon information and belief, principals of CLS who made the presentations also orally described in significant detail the actual services rendered to AgustaWestland and the ways in which the services were rendered. CLS did not notify AgustaWestland of its intention to solicit other clients by using the AgustaWestland name and case studies and did not obtain prior written approval from AgustaWestland to do so.

## COUNT I

### (Breach of Contract Against CLS)

30.    Counterclaim Plaintiff AgustaWestland re-alleges and incorporates by reference the allegations in paragraph 1 through 29.

16

31. On February 13, 2004, AgustaWestland executed the Agreement with CLS to obtain consulting services on strategic communications matters related to a government procurement contract for the term of three (3) months until May 12, 2004.

32. AgustaWestland remitted to CLS more than $180,000 in payment on invoices for services rendered during the three month term of the Agreement.

33. Among other relevant terms, the Agreement provided that CLS would "treat all documents as confidential" and would "not disclose or use any confidential information, in any form, for any purpose except with [AgustaWestland]'s express, written prior approval." The Agreement further provided that this provision would "survive beyond the conclusion or termination of this contract."

34. In the latter half of 2005, CLS used AgustaWestland's logo and name in soliciting several prospective clients, and disclosed the nature and scope of specific services rendered to AgustaWestland in detail, and the procedures or techniques employed by, or activities undertaken by, CLS on behalf of AgustaWestland.

35. By using and distributing the information about AgustaWestland in CLS's promotional presentations for its potential clients without AgustaWestland's express, written prior approval, CLS violated Paragraph 4, the confidentiality provision, of the Agreement.

WHEREFORE, Counterclaim Plaintiff AgustaWestland prays for compensatory damages in an amount to be proven at trial equal to or exceeding the total amount of fees paid to CLS under the three month Agreement and on a month-to-month basis after the termination of the Agreement, costs including reasonable attorney's fees, pre- and post-judgment interest at

the legal rate, and such other relief as this Court deems just and equitable, including an injunction **against the use of AgustaWestland's trademark and a CLS case study, and the recision of all fees paid by AgustaWestland to CLS.**.

## COUNT II

### (Unjust Enrichment Against CLS)

36.    Counterclaim Plaintiff Agusta**Westland** re-alleges and incorporates by reference the allegations in paragraph 1 through **35**.

37.    For the period of time from May 12, 2004 through March 4, 2005, Agusta**Westland** paid CLS a total of $553,800 for consulting services rendered by CLS to AgustaWestland in connection with one or more government procurement contracts.

38.    Based on a review of the billing invoices and the services rendered, CLS **over billed** AgustaWestland by an amount equal to or exceeding $250,000.

39.    In August 2004, Mr. Hill brought to the attention of Mr. Peter Schechter, and Mr. Michael Fox of CLS that the firm was over billing Agusta**Westland** for services rendered on a month-to-month basis. CLS, nevertheless, made no immediate fee adjustment, and failed to make an appropriate adjustment when a partial adjustment was finally made.

40.    The overpayment made by Agusta**Westland** to CLS conferred a benefit upon CLS in the amount equal to or exceeding $250,000, which is the difference between the amount of money that Agusta**Westland** actually paid to CLS and the amount of money that Agusta**Westland** should have paid to CLS based on the actual services

18

rendered by CLS to AgustaWestland for services related to the government procurement contracts.

41.    CLS knowingly billed and accepted the unearned benefits in the amount equal to or exceeding $250,000 **paid to** CLS by AgustaWestland during this period.

42.    CLS's retention of the overpayment made by AgustaWestland while CLS had knowledge of **over billing** makes it inequitable for CLS to retain the excessive charges billed to and paid by AgustaWestland.

WHEREFORE, Counterclaim Plaintiff AgustaWestland prays for compensatory damages in the amount equal to or exceeding $250,000, costs including reasonable attorney's fees, pre- and post-judgment interest at the legal rate, and such other relief as this Court deems just and equitable.

## COUNT III

### (Intentional Misrepresentation of Billing Statements Against CLS and Robert Chlopak, Charles Leonard and Peter Schechter Individually)

43.    Counterclaim Plaintiff AgustaWestland re-alleges and incorporates by reference the allegations in paragraph 1 through **42**.

44.    For the period of time from May 12, 2004 through March 4, 2005, CLS billed AgustaWestland a total of $553,800 for consulting services related to one or more government procurement contracts.

45.    Based on a review of the billing invoices and the services rendered, CLS **over billed** AgustaWestland by an amount equal to or exceeding $250,000.

46.    CLS knew that the invoices to AgustaWestland did not accurately reflect the amount of time and **value of** services that CLS actually rendered on one or more

19

projects for AgustaWestland. In fact, in August 2004, Mr. Hill brought to the attention of Mr. Peter Schechter, and Mr. Michael Fox of CLS that the firm was over billing AgustaWestland for services rendered on a month-to-month basis. CLS, nevertheless, made no immediate fee adjustment, and failed to make an appropriate adjustment when a partial adjustment was finally made.

47.    CLS intentionally misrepresented to AgustaWestland that CLS performed service as indicated on the statements submitted to AgustaWestland that CLS did not, in fact, provide.

48.    CLS knew that AgustaWestland would rely on the accuracy and truthfulness of the billing statements in making payments to CLS.

49.    AgustaWestland in fact relied upon the accuracy and truthfulness of the billing statements provided by CLS and paid to CLS $553,800.

50.    **Robert Chlopak, Charles Leonard and Peter Schechter, in their individual capacities, knew at the time that the invoices submitted to AgustaWestland were priced to include hidden unearned fees paid to Francois Bair and/or his companies and another individual.**

51.    **Robert Chlopak, Charles Leonard and Peter Schechter, in their individual capacities, knew at the time that invoices were submitted to AgustaWestland that the hidden unearned fees violated the Diversified Agency Services code of ethics in that such hidden and unearned fees did not meet the highest ethical or business standards which CLS, as part of the Diversified Agency Services division of Omnicom, was required to follow.**

52.    **Robert Chlopak, Charles Leonard and Peter Schechter, in their individual capacities, knew, or should have known, at the time that the invoices were submitted to AgustaWestland, that hidden unearned fees did not meet the advertised business or ethical standards of Baird's U.S., LLC or other companies affiliated with Baird and that such hidden and unearned fees were not completely transparent and that they were invoiced on the basis of the misleading representation that substantial work would be and was performed by senior consultants and no substitution of senior consultants for consultants at a junior level would occur once the business was won.**

53.    AgustaWestland has been damaged in the amount equal to or exceeding $250,000. The damages directly resulted from the intentional misrepresentations made in the billing statements.

WHEREFORE, Counterclaim Plaintiff AgustaWestland prays for compensatory damages **jointly and severally against all Counterclaim Defendants** equal to or exceeding $250,000, costs including reasonable attorney's fees incurred by AgustaWestland in seeking and obtaining relief herein, pre- and post-judgment interest at the legal rate and punitive damages in an amount to be proven at trial, and such other relief as this Court deems just and equitable.

## COUNT IV

### (Breach of Fiduciary Duty Against CLS)

54.    Counterclaim Plaintiff AgustaWestland re-alleges and incorporates by reference the allegations in paragraph 1 through **53**.

21

55.     During the terms of the Agreement and during the subsequent provision of services

        by CLS to AgustaWestland under the Agreement and afterwards, AgustaWestland

        was a client of CLS.  AgustaWestland retained CLS to obtain professional

        consulting services on strategic communications matters in connections with one or

        more government procurement contracts.

56.     Based upon the Agreement, CLS was accountable to AgustaWestland as a

        fiduciary.  As a fiduciary, CLS owed AgustaWestland a duty to act for the benefit

        of AgustaWestland with loyalty and good faith, without any self-interest or self-

        dealing.

57.     In August 2004, Mr. Hill brought to the attention of Mr. Peter Schechter, and Mr.

        Michael Fox of CLS that the firm was over billing AgustaWestland for services

        rendered on a month-to-month basis.  CLS, nevertheless, made no immediate fee

        adjustment, and failed to make an appropriate adjustment when a partial adjustment

        was finally made.

58.     In 2004 and 2005, CLS failed to disclose to AgustaWestland a "fee-sharing" or

        "referral fee" arrangement between CLS and its partner under the Agreement which

        provided no benefit to AgustaWestland.

59.     In November 2005, CLS used AgustaWestland's logo and name in soliciting a

        prospective client, and disclosed the nature and scope of specific services rendered

        to AgustaWestland in detail, and the procedures or techniques employed by, or

        activities undertaken by, CLS on behalf of AgustaWestland.

60.     CLS used and distributed confidential information about AgustaWestland in its

        promotional presentations for its potential clients without AgustaWestland's

express, written prior approval in violation of Paragraph 4, the confidentiality provision of the Agreement.

61.     CLS knowingly **over billed** AgustaWestland for services rendered by an amount equal to or exceeding $250,000.

62.     CLS breached its fiduciary duty to AgustaWestland by using confidential information about AgustaWestland for promotional purposes, by over billing AgustaWestland for services rendered, and by failing to disclose a fee sharing arrangement that conferred no benefit on AgustaWestland in willful disregard of its fiduciary duty towards AgustaWestland.

63.     By virtue of CLS's breach of its fiduciary duty owed to AgustaWestland, AgustaWestland suffered damages equal to or exceeding the total amount of fees paid to CLS .

WHEREFORE, Counterclaim Plaintiff AgustaWestland prays for compensatory damages in the amount equal to or exceeding $733,800, the total amount of fees paid to CLS under the three month Agreement and on a month-to-month basis after the termination of the Agreement, costs including reasonable attorney's fees, pre- and post judgment interest at the legal rate, punitive damages in an amount to be proven at trial, and such other relief as this Court deems just and equitable.

## COUNT V

### (Conspiracy – CLS and Robert Chlopak, Charles Leonard and Peter Schechter Individually)

64.     **Counterclaim Plaintiff AgustaWestland re-alleges and incorporates by reference the allegations in paragraph 1 through 63.**

65.     CLS, Robert Chlopak, Charles Leonard, Peter Schechter, and a non-party co-
conspirator Baird's U.S., LLC, each knowingly and willfully conspired and
agreed among themselves to mislead AgustaWestland that the invoices and
billing statements issued to AgustaWestland represented the actual work
performed on behalf of AgustaWestland.

66.     CLS, Robert Chlopak, Charles Leonard, Peter Schechter, and a non-party co-
conspirator Baird's U.S., LLC, pursuant to, and in furtherance of, the
conspiracy, misrepresented AgustaWestland that CLS, in partnership with
Baird's U.S., LLC, performed service as indicated on the invoices and billing
statements submitted to AgustaWestland when CLS did not, in fact, provide.

67.     CLS, Robert Chlopak, Charles Leonard, Peter Schechter, and a non-party co-
conspirator Baird's U.S., LLC, knew or should have known that
AgustaWestland would rely upon the accuracy and completeness of the invoices
and billing statements in paying CLS pursuant to the invoices.

68.     AgustaWestland has been damaged in the amount equal to or exceeding
$250,000.  The damages directly resulted from the intentional
misrepresentations made in the proposal and billing statements.

        WHEREFORE, Counterclaim Plaintiff AgustaWestland prays, against all the
Counterclaim Defendants, individually and jointly and severally, for compensatory
damages equal to or exceeding $250,000, costs including reasonable attorney's fees
incurred by AgustaWestland in seeking and obtaining relief herein, pre- and post-
judgment interest at the legal rate and punitive damages in an amount to be proven at
trial, and such other relief as this Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

The Defendant and **Defendant**/Counterclaim Plaintiff further demand a trial by jury of

all issues so triable as a matter of right.

Respectfully submitted,


By:    /s/ David A. Holzworth
David A. Holzworth  (D.C. Bar 322966)
Hiromi Maruyama (D.C. Bar 484098)
LEPON HOLZWORTH & KATO PLLC
1225 19th Street, N.W., #500
Washington, D.C. 20036
Tel: (202) 857-0242
Fax:(202) 857-0189
Counsel for the
**Defendant and**
Defendant/Counterclaim Plaintiff


Dated: May 9, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendants' Answer and Defendant/Counterclaim Plaintiff's Second Amended Counterclaim was served upon all counsel of record by the Court's Electronic Case Filing System on May 9, 2006 to the following:

> Gregory B. Craig, Esq.
> Williams & Connolly, LLP
> 725 12th Street, N.W.,
> Washington, DC 20005
>
> Counsel for Plaintiff/Counterclaim Defendant

_____ /s/ David A. Holzworth _____



www.clsdc.com

February 12, 2004

Stephen Moss
President
AgustaWestland Inc.
2231 Crystal Drive
Suite 1114
Arlington, VA 22202

Dear Mr. Moss:

This letter is designed to serve as an agreement between us as we begin working together on your strategic communications issues. We look forward to working with you on this project, and further developing the scope of work to be performed at our meeting on Friday.

This letter sets forth the terms of our 'Agreement':

1. Effective February 12, 2004 until May 12, 2004, AgustaWestland Inc. (hereafter, AW) will retain the professional services of Chlopak, Leonard, Schechter and Associates, Inc., in partnership with Bairds USA, LLC (hereafter, "CLS") as communications counselors. This contract can be extended beyond May 12, 2004, with a simple letter of agreement amending this contract between the parties.

2. During the period of this agreement, CLS will work closely with AW to provide strategic advice and counsel, create and produce communications materials as needed, distribute materials to and interface with the media, and provided communication services as directed by the client.

3. In consideration for the above described services, AW agrees to compensate CLS at a fixed fee of $60,000 per calendar month. Fees for partial months will be prorated accordingly. Fees shall be invoiced and are payable within 30 days

4. CLS will treat all documents as confidential. In the process of providing to AW the services encompassed by this contract, CLS may receive or may otherwise obtain confidential information, the disclosure of which beyond AW, its authorized agents, and CLS, is not authorized. CLS will not disclose or use any confidential information, in any form, for any purpose except with AW's express, written prior approval. Information that is or becomes available in the public domain through no fault of CLS



1850 M Street NW  Suite 550  Washington, DC 20036     •     220 East 42nd Street  Suite 408  New York, NY 10017
Phone: (202) 289 5900  Fax: (202) 289 4141                    Phone: (212) 515 1908  Fax: (212) 515 1976

A Gavin Anderson Company

or any of CLS's employees, or is not acquired by CLS or CLS's employees from FPC or from sources known by CLS or CLS's employees to be in breach of a confidentiality agreement with AW, will not be deemed confidential information that is subject to the provisions of this paragraph. This provision will survive beyond the conclusion or termination of this contract.

5.  CLS will be entitled to bill all reasonable out-of-pocket expenses each month. Fax service is provided for a fee of $.75 per page and copy service is provided for a fee of $.25 per page. Telephone service is provided at-cost, plus applicable taxes and administrative fees.

6.  CLS will bill all collateral material, advertising production, and outsourced services at cost, plus a 17.65% industry standard management fee. CLS shall be entitled to receive a 50% deposit, in advance, for all approved collateral material and production expenses. For advertising placement, CLS will charge a commission based on the standard industry rate of 15%.

7.  AW will indemnify and hold harmless CLS, its partners, principals, agents and employees (hereinafter "Indemnified Parties") from and against any losses, damages, claims, liabilities and expenses (including, without limitation, as a result of third party demands, legal proceedings or law suits, or requests or subpoenas served on any Indemnified Party for information, reports, data, or releases), including reasonable attorneys fees and expenses, suffered by Indemnified Parties as a result of the services rendered by Indemnified Parties in the course of this engagement or as a result of Indemnified Party's reasonable use of, or reasonable reliance upon, any information or materials (whether or not in writing) furnished or approved by AW or its specifically authorized representatives for use by any Indemnified Party, whether or not any Indemnified Party prepares or participates in the preparation of such materials, provided however, that this provision shall not apply to any losses suffered by Indemnified Parties that are determined in a final judgment by a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Party seeking indemnification hereunder. This provision shall survive the termination of this agreement and shall continue to bind both parties.

8.  AW agrees it will not offer employment to, or employ, a CLS employee for its own or another's benefit, either directly or through affiliates, subsidiaries, agents, sub-contractors or other related parties, either while the employee is employed by CLS, or for a period of one year after the employee ceases to be employed by CLS. This obligation shall remain in effect during the life of this agreement and for one year after the end of this agreement. CLS agrees to be bound by an identical obligation with regard to employees of AW. In the event that this provision may be deemed to be counter to employment laws, and one party to this agreement directly or indirectly employs an employee of the other, the employing party agrees to pay the other, simultaneously with such employment, an amount equal to 1.5 times the employee's total annual compensation in respect of the prior calendar year.

9. All notices, requests, demands and other communications which are required or may be given under this Agreement shall be in writing and shall be deemed to have duly been given if delivered personally or mailed, first class mail, postage prepaid, return receipt requested, or by any other express delivery technique calling for receipted delivery, as follows:

If to CLS:

Chlopak, Leonard, Schechter and Associates, Inc.
Attn: Robert A. Chlopak
1850 M Street, NW
Suite 550
Washington, DC 20036
(202) 289-5900
Fax: (202) 289-4141

If to AW:

AgustaWestland Inc.
Attn: Stephen Moss
AgustaWestland Inc.
2231 Crystal Drive
Suite 1114
Arlington, VA 22202

(703) 243-0885
Fax: (703) 243-7733

or to such other address as either party shall have specified by notice in writing to the other party. All such notices, requests, demands and communications shall be deemed to have been received on the date of delivery or on the next business day if sent by a nationally recognized overnight courier service.

10. This Agreement constitutes the entire agreement between the parties hereto and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter contained herein.

11. This Agreement shall be governed by, and construed in accordance with, the laws of the District of Columbia.

12. The terms and conditions of this contract may not be altered, changed or amended except by mutual written agreement of AW and CLS or as otherwise expressly provided for in this agreement.

13. This agreement may be terminated without cause by either CLS or AW upon receiving written notification at least 30 days prior to the intended date of termination, providing all fees and expenses have been paid in full through the 30 day termination period. Upon the termination of this Agreement, this Agreement shall cease to have any further effect (except as pertains to the provisions of this Agreement which specifically survive its termination).

Your signature and return to us of an original copy of this letter shall constitute acceptance of the terms defined herein.

Once again, thank you for this opportunity and your confidence in CLS.  We look forward to working with you.

Sincerely,

_____          2-12-04
Robert A. Chlopak                       Date
President
Chlopak, Leonard, Schechter and
Associates, Inc.

Accepted:

_____          2-13-04
Stephen Moss                            Date
President
AgustaWestland, Inc.


CC: